**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

Plaintiffs,

v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST
79TH STREET LLC, REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC., SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU) LOCAL 32BJ,
JACLYN PAGNOTTA AND DOES 1-20

Defendants

AMENDED COMPLAINT
(Proposed Class)

AND JURY DEMAND

INDEX: 1:25-cv-00330-AMD-JAM
Assigned: Magistrate Joseph A. Marutollo

_____

## **INTRODUCTION**

1. This is a civil rights wrongful discharge and discrimination action brought by Plaintiff John
Loiacono in his individual capacity and on behalf of any other class of private sector workers
(collectively Plaintiffs – individually and collectively) pursuant to 29 U.S.C. §660 Subsection
11(c)(1)&(2) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the Plaintiffs
discharge by Defendants Allied Partners Management LLC (APM), 200 East 79th Street LLC
(200E), Realty Advisory Board on Labor Relation, Inc. (RAB) and the Service Employees
International Union Local 32BJ (SEIU-32BJ) (hereinafter collectively "Defendants") who
conspired to deny Plaintiff his statutory and Constitutional right to object to taking the Covid-19
vaccine/immunization on religious grounds, which is a First Amendment Free Exercise and 14th
Amendment substantive right protected by OSH Act under 29 U.S.C. §669 Subsection 20(a)(5)
(collectively "Statutory & Constitutional Rights) for which Plaintiffs seeks monetary damages,
job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right
of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2. This action is also brought pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act against Defendants as private sector employers who conspired and/or agreed under color of government municipal law passed by the City of New York to deprive Plaintiff of his statutory and Constitutional Rights to choose his own medical treatment as declared by the U.S. Supreme Court in the Jacobson v. Massachusetts, 197 U.S. 11, 26 (1905)[1] and in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990).[2] Private actors are treated as "state actors," when private actors either: 1) conspire with state actors, in this case to commit the crime of fraudulently concealment of Plaintiffs rights; or 2.) state compels private action through fines, or 3) perform actions that are exclusively state/government sovereign powers to deprive citizens of fundamental rights – essentially private actors serve as "sock-puppets" to do what the government knows it cannot get away with.

3. This action is also brought pursuant to Section 301 of the National Labor Relations Act, 29 USC §185 for the SEIU Local 32BJ's failure to represent Plaintiff by entering into an agreement with Co-Defendants that bargained away Plaintiffs Statutory & Constitutional Rights and said bargained agreement is not an authorized bargainable matter by the SEIU Local 32BJ pursuant to National Labor Relation Act.

4. Plaintiff also seeks punitive damages against Defendants, including Jaclyn Pagnotta, for their willful disregard of the rights of Plaintiff Loiacono by fraudulently concealing Plaintiffs OSHA right to refuse the Covid-19 vaccine and right to file a claim against Defendants with the OSHA Secretary within the 30 days as permitted under the OSH Act under 29 USC §660 Sec. 11(c)(2) and pursuant to Section 1993. See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190

---

[1] Held: That every person has "the inherent right of every freeman to care for his own body and health in such way as to him seems best…. liberty secured by the Constitution of the United States to every person within its jurisdiction."
[2] Cruzon: held –("we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)

(1st Cir. 1994) (Held, in summary that punitive damages are available under the OSH Act) Defendants collectively agreed and conspired to pressure Plaintiffs to take the illegal Covid-19 vaccine by threatening their jobs, telling them they don't care about the health of the general public for refusing the Covid-19 vaccine, and ultimately collectively agreeing to terminate their respective Plaintiffs for refusing the Covid-19 vaccine and Defendants have agreed to maintain a policy to not hire new employees who are unable to provide proof of Covid-19 vaccination.

## JURISDICTION AND VENUE

### A. Jurisdiction

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccine Orders, as well as original jurisdiction pursuant to Section 11(c)(2)[3] of the OSH Act (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief" for the wrongful discharge of employees in violation of OSH Act Section 11(c)(1), which includes wrongful discharge of an employee who exercises their right to refuse immunization/vaccines, medical treatments or medical exams on religious grounds pursuant to Section 20(a)(5) of the OSH Act and violations pursuant to Section 1983;

6. Since this action deals with the violation of a CBA and seeks an interpretation thereof, subject matter jurisdiction is proper under § 301 of Labor Management Relations Act ("LMRA"). 29

---

[3] Prior decisions by the approximately 200 other federal courts, including decisions by the United States Court of Appeals for the Second Circuit, do no prohibit Plaintiffs claims under Section 11(c)(1) and (2) of the OSH Act because all of those cases involved claims for either: 1) personal injuries caused by an employer's violation of an OSHA safety standard or regulation promulgated by the OSHA Secretary; or 2) wrongful termination of an employee by an employer in retaliation for the employee reporting an employer's safety violation and none of the prior cases involved claims that an employer wrongly terminated an employee for exercising their OSHA congressionally enacted statutory right to refuse immunization, medical treatment or a medical exam on religious grounds pursuant to Section 20(a)(5) of the OSH Act at 29 U.S.C. ¶669, which statutory right was enacted to protect all employees fundamental First Amendment Free Exercise right to refuse or choose their own medical treatment based on their religious or belief practices.

U.S.C. § 185. Additionally, this action seeks recovery of costs and fees incurred due to the unfair labor practice committed by Local 150 in violation of § 8(b) of the National Labor Relations Act ("NLRA") 29 U.S.C. § 158(a)(3) and (b)(2).

7. Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely common law fraudulent concealment claim.

8. Alternatively, this Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations the First Amendment Free Exercise Clause and Fourteenth Amendment substantive Due Process clause as applied to private actors pursuant to Section 1983 who under color of law deprive citizens of their federal statutory or constitutional rights.

### B. <u>Venue</u>

9. The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, New York City and this case is properly brought in the Eastern District of New York under 28 U.S.C. §1391(b).

### C. <u>Exhaustion of Administrative Remedies</u>

10. Plaintiffs are not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section 11(c)(2) because the statue only states that an employee "may" file a complaint with the OSHA Secretary and does not contain any mandatory language for exhaustion of remedies with the Secretary.

11. Plaintiffs adversely affected by union agreements that impinge on their rights secured by the Constitution are not required to exhaust administrative or intraunion remedies before suing in federal court. See *Seay v. McDonnel Douglas Corp.,* 427 F. 2d 996 (9th Cir. 1970),

13. Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. 38(b).

**PARTIES**

**A. PLAINTIFFS**

14. Plaintiff Loiacono lives in the Bronx and was an employee for many years of 200 East 79 Street LLE ("200 East") and who was involuntarily placed on indeterminate leave without pay (LWOP) and/or "constructively discharged" or "locked out" from his job[4] for exercising his fundamental right to refuse to submit to the New York City's ("City") Covid-19 Vaccine Order issued December 13, 2021 (hereinafter the "NYC Vaccine Order") (See Order attached as Exhibit 1) that required 200 East and its officers and employees, and affiliates, agents or contractual partners including Allied Partners Management LLC ("Allied"), Realty Advisory Board on Labor Relations, Inc. ("RAB") and SEIU Local 32BJ ("Union") (hereinafter collectively "Defendants") to lockout Plaintiff Loiacono from his job for exercising his right to object to taking the Covid-19 vaccine on religious grounds.

**B**. **DEFENDANTS**

16. Defendant 200 East 79th Street, LLC ("200East"), a Section 203 domestic Limited Liability Company registered in the State of New York that owns and manages real estate in the City with

---

[4] Under New York law an unlawful "lock out" is defined as an employee who is denied access to their workplace which forces the employee to cease their work activity pursuant to *McGinnis v. Bankers Life Co., Des Moines Iowa*, 334 N.Y.S. 2nd 270 (N.Y. App. Div. 1972)

a process office service located at 13-15 West 54ᵗʰ Street, New York, New York 10019, who is the direct employer of Plaintiff.

17. Defendant Allied Partners Management LLC ("Allied") a Section 802 Foreign Limited Liability Company registered in the State of New York that manages real estate and in particular the real estate that is owned by 200 East that Plaintiff worked in the City with offices for service of process located at 770 Lexington Ave, 17ᵗʰ Fl. New York, New York 10065 and has a service contract with 200East regarding building management and/or security services.

18. Realty Advisory Board on Labor Relations, Inc., ("RAB"), a foreign non-for-profit corporation that provides labor relations services with service of process offices located at 12 East 41ˢᵗ Street, New York, New York 10017. RAB represents the labor relation interest of commercial and residential real estate owners, including specifically RAB has a contract with Allied and 200East to provide labor relations negotiations with Unions that represent employees of Allied and 200East.

19. SEIU Local 32BJ ("Union") is an employee union with union Headquarters located at 25 West 18 Street, New York, NY 1001. Plaintiff was a member of the Union who represented his employee interest with Allied and 200East regarding labor relation negotiations and claims.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**A. FACTS RELEVANT TO ALL CAUSES OF ACTION**

20. In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 2

21. The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

22. Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018).

23. The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter OSHA Standards) See collectively 29 U.S.C. §652 Section 3(8) (Emphasis added).  See Exhibit 3- the entire OSH Act

24. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See United *Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

25. According to 29 U.S.C. §655 Sec. 6(a), the Secretary shall:

> "promulgate the standard which assures the greatest protection of the safety or health of the affected employees."

26. Pursuant to 29 U.S. §652 Sec. 3 (5), Defendants are "employers" that engage in business affecting commerce who are mandated to comply with OSHA standards, rules and regulations and guides or rules pursuant to 29 U.S.C. §654(a).

27. The OSH Act places a duty on all employers as regulated entities pursuant to General Duty Clause at 29 USC 654 Sec 5(a)(1), to provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

28. The OSHA standards, rules and regulations instruct employers on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

29. The basic safety principle of the OSHA General Duty Clause is to place on regulated entities (hereinafter "Regulated Employers") the duty to remove "hazards" from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death.

30. Regulated Employers are mandated by the OSHA Act standards to only use safety "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations.

31. Each employee of a Regulated Employer also has the duty according to 29 U.S.C. §654 Sec. 5(b) of the OSH Act, which state and include as follows:

> "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

30. Employees are not mandated to comply with occupational safety and health standards or rules or regulations and orders that do not meet the minimum standards, safety methods, rules, regulations or orders approved by the OSHA Secretary.

31. 29 U.S.C. §654 Sec. 5(b) also expressly confers the right to any employee to object to any employer mandated rule, order and requirement that obligates an employee to comply with any

safety measure, method or medical treatment, like vaccines including the Covid-19 vaccine, that is not an OSHA approved or authorized standard, rule or regulation established to control recognized hazards in the workplace.

32. According to the OSHA Training Requirements in OSHA Standards manual, employers have a duty and responsibility to pay for training employees on the OSHA safety standards and regulations and they have a duty to inform employees of their OSH Act rights and responsibilities to "comply" with OSHA's standards, rules, regulations, guidelines or orders. See Exhibit 4

33. OSHA approved specific safety standards, and regulations to mitigate any and all "recognized airborne hazards" that cause serious injury or death that can appear in a workplace atmosphere that employers, under the General Duty Clause, are mandated to remove from the atmosphere or shield workers from exposure to and those standards, regulations and guidelines are generally referred to as the Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards); See Exhibit 5

34. In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. See Exhibit 6 (Ventilation, In-door Air Quality collectively with the Respiratory Standards shall hereafter be referred to collectively as the "Respiratory Safety Method Standards")

32. These approved Respiratory Safety Method Standards have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global

9

Pandemic, See <u>Exhibit 7</u> and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola.

33. On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19"). See <u>Exhibit 8</u>

34. According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them. See <u>Exhibit 9</u>

35. According to Dr. Peter McCullough, world renown medical physician, scientific researcher and Public Health PhD, the airborne virus that causes the Covid-19 infection that is recognized in the workplace is a workplace illness covered by the OSH Act because the Covid-19 airborne virus can be transmitted into the workplace atmosphere by any employee infected with the Covid-19 virus when the infected employee talks to co-workers or the general public as part of the employees daily job responsibilities and the employee while talking and coughing or sneezing while talking in the workplace atmosphere emits the Covid-19 airborne hazard vapors, droplets or fluids into the atmosphere from the infected person and another employee or someone from the public inhales the airborne Covid-19 virus into their mouth or nose and through that exposure and inhalation of the airborne Covid-19 virus an infection can result in another employee or public person in the workplace. See <u>Exhibit 10</u>

36. All Defendants as Regulated Employers have a duty, pursuant to the OSHA General Duty Clause and the Respiratory Safety Method Standards, to remove any recognized airborne hazard, including the recognized airborne viral hazards that causes a Covid-19, emitted into the workplace atmosphere by infected employees or the public and, Defendants have a duty to prevent employee exposure – through their nose, mouth, hands, ears - to any recognized airborne hazards in the workplace that can cause an serious injury or death, which hazardous airborne infectious diseases include, SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and the airborne Covid-19 virus. See Exhibit 11- OSHA Hygienist expert Bruce Miller, Affidavit

37. Federal courts have held that pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

38. The primary objective of the OSHA Respiratory Safety Method Standards is to instruct employers on their statutory duty to implement safety methods that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

39. The OSHA Respirator Safety Method Standards also mandate employers to provide "remote work from home" as an additional safety method that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

40. For over two decades, OSHA has had "remote work" regulations, and "remote work" is an approved method for preventing employee exposure to workplace airborne hazards. Exhibit 11

41. On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines has not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. Exhibit 12

42. The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards in general.[5]

43. The OSHA Department of Labor Solicitor stated in their Response to an Emergency Petition brought by various private sector hospital employers (who were lobbying to mandate vaccines for hospital employees), that OSHA would not promulgate a new standard that would allow employers to mandate the Covid-19 vaccine to serve as a new method that employers can use to meet their duty under the General Duty Clause. See Exhibit 13

44. No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can immunizations or vaccines shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease. See Affidavits at Exhibit 10 and Exhibit 11

45. According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the

---

[5] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19, that can cause serious injury or death as required to be an OSHA approved safety minimum safety method that protects employees in the workplace. (See <u>Exhibit 14</u> Dr. Montgomery Affidavit)

46. According to Dr. Montgomery and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

47. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

48. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

49. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

50. The FDA does not provide approval of any vaccine for to be used to remove airborne hazards or to shield employees from exposure to airborne hazards, neither does the Center for Disease Control (CDC) claim that the Covid-19 vaccine is "safe and effective" automatically make the Covid-19 vaccine, an OSHA approved "safety method" that employers can use to prevent employee and the public exposure to any the recognized airborne hazard in the atmosphere of any private or public workplace.

51. The OSH Act does not authorize the OSHA Secretary nor Regulated Employers to prescribe the FDA "medical treatments" of a Covid-19 vaccine as a medical treatment to prevent the transfer or spread of a communicable disease, including Covid-19, and to eliminate or control recognized airborne workplace hazards.

52. It is a felony in New York for any unauthorized person or employer to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine to an employee. See New York Education Law §6520& §6521 and §6512.

53. The NYC Vaccine Order violates New York Education Law §6520& §6521 and §6512, which banns the prescribing of medical treatments, including the Covid-19 vaccine, by non-licensed medical professionals, including Defendants, not authorize to prescribe drugs and vaccines for the treatment of any disease.

54. Defendants mandate that Plaintiff Loiacono, and all employees provide proof of taking the Covid-19 vaccinations is an unauthorized prescribing of a medical treatment to mitigate or prevent in Defendants' workplace atmosphere the spread of the virus that causes a Covid-19 infection.

55. Vaccines/immunizations are not an OSHA authorized or approved workplace safety method that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

56. If a Regulated Employer desires to use a new and unapproved safety method to prevent employee exposure to any recognized airborne hazard in the workplace, the employer has to seek a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

57. None of the Defendants have applied for a variance from OSH Act to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

58. All Regulated Employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

59. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services (HHS) in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

60. Sometime after the World Health Organization publicly declared the existence of the Covid-19 hazardous virus a global Pandemic, which is a physical/biological agent that is a threat to the global health security, in 2021 the Secretary of HHS through the FDA authorized the use of various manufactured Covid-19 vaccines for human consumption under an "emergency use" authorization (EUA).

61. The FDA EUA allows the use of an unapproved medical product or an unapproved use of an approved medical product in emergencies to diagnose, treat, or prevent serious or life-threatening diseases when there is no alternative adequate and approved drug treatment for a hazardous physical agent and the public emergency poses a threat to national security.

62. The OSH Act under 29 USC §669 Sec. 20(a) also provides the HHS Secretary in collaboration with the OSHA Secretary authority to conduct experiments and demonstrations to promulgate new occupational and safety regulations for employers to report on employee exposure to new

15

physical agents, like the Covid-19 hazardous airborne virus, and the HHS Secretary can authorize medical exams and tests to determine incidences of new occupational illnesses.

63. However, 29 USC §669 Sec. 20(a)(5) expressly grants employees the right to object to any OSHA, HHS or employer proposed mandated immunization/vaccine, medical treatment or medical exams based on religious grounds.

64. The OSH Act also under 29 USC §660 Sec. 11(c)(1) expressly bans employer wrongful discharge of employees who exercise their right to reject vaccines, medical treatments or medical exams on religious grounds, which right is protected under the OSH Act at Sec. 20(a)(5).

65. All Regulated Employers, including Defendants, must comply with the anti-discrimination and wrongful discharge clause under 29 USC §660 Sec. 11(c)(1) of the OSH Act, which bans employers from discharging employees who exercise any right under the OSH Act, which includes the employee right to object on religious grounds to any government mandated or private employer mandated vaccine, which right is protected under 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act (hereinafter the "Right to Object" ).

66. The Right to Object to vaccines is a statutory right in the OSH Act provided by Congress as a provision of Sec 20(a)(5) of the OSH Statute, and it is not a standard or regulation promulgated by the OSHA Secretary subject to administrative review if violated.

67. The plain language of the Right to Object to vaccines is in Sec. 20(a)(5) provides employees with an automatic exemption from any employer mandated vaccines wherein employees are not required to prove that he or she has a "sincerely held belief" nor does the plain language of Section 29(a)(5) give employers discretion to deny any employees exercise of their Right to Object to vaccines mandated by government or private employers.

68. Vaccines, in general, including the Covid-19 vaccine, are medical treatments that are funded by HHS through the Administration of Strategic Preparedness & Response (ASPR) designed to

support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics. See Exhibit 15

69. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace. See Exhibit 7

70. Between 2009 and 2020, the City has never issued an Order mandating employers within the City to provide proof of employee vaccinations subject to fines for failure to do so.

71. Between 2009 and 2020, Defendants have never mandated any employee to provide proof of taking any vaccine on penalty of job loss for failure to do so, in order to prevent the spread of any recognized airborne workplace hazard, which includes the period when the H1N1 virus was declared a "recognized" Global Pandemic, which could cause serious injury or death to any employee or public persons exposure to the recognized H1N1 airborne hazard.

72. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See Exhibit 16

73. The HHS/FDA EUA approval of the Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

74. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make vaccines, in general, freely available to the general

public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See Exhibit 17

75. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment within any state, federal or municipal agency or for the private sector.

76. No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" to either remove recognized airborne hazards from the workplace atmosphere or to shield employees from exposure to any recognized airborne hazard in the workplace, including for the recognized airborne Covid-19 hazardous virus.

77. Neither immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not meet the OSH Act minimum safety standard for respiratory methods because vaccines are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccines shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See Exhibit 14 - Affidavit of Expert Dr. Baxter Montgomery

78. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to reject an employer vaccine mandate.

79. The OSH Act at 29 USC §660 Sec. 11(c)(1) expressly prohibits employers from discharging employees who exercise their right to reject employer mandated immunizations/vaccines, medical

treatments or medical exams on religious grounds, which right is provided under Section 20(a)(5) of the OSH Act.

**B. FACTS APPLICABLE TO PLAINTIFF LOIACONO CLAIMS AND SIMILARLY SITUATED PLAINTIFFS**

80. On June 23, 2022, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

81. Notwithstanding the end of the state of emergency, on August 2, 2021, former New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

82. On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers to require their employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. ("NYC Vaccine Order")See <u>Exhibit 1</u>

83. The purpose of the NYCDOH Vaccine Order states as follows:

> "the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17109(b) of Administrative Code, the Department may adopt vaccination measures to effectively **prevent the spread of communicable diseases**;"

> "do hereby exercise the power of the Board of Health **to prevent, mitigate, control** and abate the current emergency"

84. The NYC Vaccine Order required, in summary, that all employers located in the City to mandate that their employees provide proof of vaccination against Covid-19 by December 27, 2021 and if

an employee failed to provide proof of Covid-19 vaccination, the employer was required to "exclude from the workplace any worker".

85. The City's order to exclude workers who failed to provide proof of Covid-19 vaccination was an unauthorized employee "lock-out" from their jobs in violation of Plaintiffs and Regulated Employers Collective Bargaining Agreement (CBA).

86. An employer's violation of the NYC Vaccine Order was subject to a fine of not more than $1,000 dollars per violation per day per employ by the NYC Health Commissioner pursuant to the New York Health Code Chapter 22, Section 555.

87. On September 21 and 27, 2021, Plaintiff Loiacono received a work email from the Defendant 200East Board of Managers titled "Important Covid-19 Compliance" in summary requiring employees to where masks and that no masks were required on the 2nd Floor roof deck.

88. On or around October 14, 2021, SEIU Delegate Scott Cohen called Plaintiff Loiacono to verbally explain that a Covid-19 vaccination mandate could be implemented in the future and that there would be options available to him regarding his employment under the mandate. At no time during the call did Mr. Cohen disclose that the Union had entered into any previous agreements regarding any potential Covid-19 vaccine mandate.

89. Unbeknownst to Plaintiff Loiacono, on September 30, 2021 the Union Defendant and RAB Defendant  entered into an agreement on behalf of Plaintiff Loiacono's employer 200East that required all Defendant members of the RAB to either: 1) place all employees who do not provide proof of vaccination by the Defendant's determined deadline on leave without pay (LWOP) for a period of months until they get vaccinated or obtain a religious exemption, if the Defendant approves of the exemption, or 2) be "separated" from their jobs if the employee does not elect a voluntary LWOP, but the separation would not be deemed voluntary nor a termination for misconduct. See Exhibit 18

90. Sometime on or around December 22, 2021, Plaintiff's workplace builiding Resident Manager, Joe Saljanin (Saljanin) inform Plaintiff Loiacono verbally that he was mandated to be vaccinated by December 27, 2021 in order to continue to work due to the City's Vaccine Order that set the December 27, 2021 deadline.

91. Joe Saljanin told Plaintiff Loiacono to get vaccinated to "make my life easier."

92. On December 22, 2021, Plaintiff Loiacono asked Saljanin and Union Del. Cohen how to make a religious exemption request and he was told to make the request to 200East's HR Department.

93. On December 22, 2021, Allied and or 200East Board Member Bruce Gutkin asked Plaintiff Loiacono to leave the building to speak with him and told him to take the vaccine "for the greater good of society".

94. Allied and/or 200East Board President Alex Freedman asked Plaintiff about his hesitation about getting the vaccine and gave his personal experience with getting the vaccine to coerce Plaintiff Loiacono to take the Covid-19 vaccine.

95. On December 22, 2021, Plaintiff Loiacono requested via separate emails to Union Delegate Cohen and Saljanin instructions on how to submit a religious exemption request and Union Delegate Cohen responded on December 24, 2021 that the City's Vaccine Order was law and that he could be terminated if Plaintiff Loiacono did not provide proof of vaccination by December 27, 2021. See Exhibit 19

96. On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Allied Resident Manager Saljanin dated December 22, 2021 providing notice for the first time that under the New York City Department of Health Vaccine Order, Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 and that religious exemptions did not change the mandate and that religious exemptions would only be granted based on Allied policy that required employees first provide a religious exemption letter from a

religious institution on the organizations letterhead signed by the head of the religious institution. See Exhibit 20

97. On Friday, December 24, 2021, Plaintiff Loiacono submitted via email to 200East's Jaclyn Pagnotta, VP of Human Resources and to the Union Delegate Scott a request for a religious exemption from the City's Vaccine Order enforced by 200East but the request was not on the letterhead of a religious institution because federal law does not require it in order for him to receive an exemption.

98. On December 24, 2021, Plaintiff Loiacono received an automatic reply email from Ms. Pagnatta stating that she was out of the office until Tuesday, December 28, 2021.

99. On or around December 28, 2021, the Resident Manager called Plaintiff Loiacono back to the building to give him a form from the New York City Legal Department with instructions from the City Legal Department regarding religious exemptions and when exemptions were granted that the Resident Manager required Plaintiff Loiacono to sign. See Exhibit 22

100. On January 11, 2022, Plaintiff Loiacono spoke by telephone with Ms. Pagnotta wherein she explained that Plaintiff Loiacono was instructed to leave his job.

101. Around January 18, 2022, Plaintiff Loiacono received a letter from Ms. Pagnotta at Allied stating that effective January 18, 2022, that Plaintiff Loiacono was placed on leave without pay and locked out of his job due to the New York City mandate and that Allied could not provide any other solution that would permit Plaintiff Loiacono to continue to work in the Allied building without providing provide that Plaintiff had taken the Covid-19 vaccine. See Exhibit 23

102. Because Plaintiff Loiacono was locked out of his job, unable to work and his request for a religious exemption from the City Covid-19 mandate was denied, Loiacono applied for unemployment benefits because he was effectively discharged.

103. Defendant 200East objected to Plaintiff Loiacono's claim for unemployment benefits by reporting that he was terminated for "cause," which prevented him from receiving unemployment benefits despite the fact that 200East entered into an agreement with RAB that any employee locked out from their job for refusing to take the Covid-19 vaccine would not be terminated for cause so that said employees could receive unemployment benefits.

104. Allied and 200East continued the coercive tactics by terminating Plaintiff Loiacono's MetLife Insurance around March 2, 2022, which should have been maintained since he was on leave without pay and not yet terminated.

105. During the New York State Unemployment Benefit hearing on July 15, 2022, Ms. Pagnatta VP for Allied admitted that Allied and/or 200East were responsible for complying with OSHA standards, regulations and statutory requirements and that Allied and 200East Board ignored the OSHA statutory requirements. See Exhibit 24

106. In April 2020, near the start of the Covid-19 Pandemic, Ford Motor Corporation increased the manufacture of Powered Air Purifying Respirators (PAPR) to national distribution to employers to provide as OSHA approved safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne virus that causes the Covid-19 disease. See Exhibit 25

107. OSHA along with NIOSH and the CDC approved of PAPRs as a method to shield employees from recognized airborne hazards. Exhibit 26

108. On April 18, 2022, Plaintiff Loiacono received an email from Allied stating that he was involuntarily placed on leave without pay ("LWOP") until April 21, 2022 and Defendants failed to provide Plaintiff with a PAPR so he could continue to work unvaccinated. See Exhibit 27

109. Under information and belief, other Allied employees were allowed to remain on their jobs in Defendants workplaces even after they objected to taking the Covid-19 vaccine, but Plaintiff was told to leave his workplace.

110. Sometime after October 2022, all Defendants failed to automatically reinstate Plaintiff Loiacono to his job after the Covid-19 Pandemic and New York City Covid state of emergency was declared over.

111. Plaintiff Loiacono is still on indeterminant leave without pay or discharged and has not been recalled or reinstated to his job.

112. Plaintiff Loiacono has suffered mental and emotional distress from the intentional wrongful discharge, and discrimination and has been unable to sleep, concentrate and has suffered depression over the last four years trying to seek employment but having no success.

113. According to Federal public records published by FederalPay.org from data provided by the Small Business Administration as of June 30, 2023, Defendant Allied Partners Residential Management LLC received $1,435,500 in Covid-19 Pandemic Federal Paycheck Protection Program (PPP Funds) funds for the purpose of saving 103 jobs, yet Plaintiff Loiacono was locked out and terminated from his job for exercising his fundamental federal and constitutional right protected by the OSH Act.

114. Defendant Allied Partners Residential Management received additional Pandemic PPP Funds in the amount of $1,213,578 for the purpose of preserving 63 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

115. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,200 to preserve 25 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

116. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,345 to preserve 17 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his rights under the OSH Act and the Constitution.  See Exhibit 28

**FIRST CAUSE OF ACTION**
**(Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1)&(2) &**
**Federal Preemption)**

117. Plaintiffs realleges and incorporates by reference Paragraphs 1-121 of this Complaint as if fully set forth herein.

118. Defendants, and each of them, are "employers" as defined by 29 USC §652 Sec. 3 (5) of the OSH Act.

119. Defendants and each of them are agents or affiliates of the other through contracts entered into by each Defendant to provide services to the other Defendants.

120. Defendants are jointly liable for damages caused to Plaintiffs as a result of their affiliation and/or contract to provide services related to the employment of Plaintiffs.

121. Defendants knew that as a Regulated Employers that the OSH Act General Duty Clause under 29 USC §654(a)(2) only mandates Defendants to comply with OSHA authorized and approved workplace safety standards, methods, measures, rules, regulations or Orders and that Defendants were not required to comply with the NYC Covid-19 Vaccine Mandate Order because the City did not have authority to mandate employers to violate the OSH Act standards, methods or regulations.

122. Defendants knew that they had the right under 29 USC §654(a)(2) to object to and not comply with the NYC Covid-19 Vaccine Mandate Order because the City's order was not authorized by

the OSHA Secretary and the Order conflicted with the OSHA minimum standards, rules and regulations that governs how to control of recognized airborne hazards in the workplace.

123. Plaintiff Loiacono and similarly situated employees had the right under 29 USC §660 Sec. 11(c)(1) to be free to wrongful discharge by Defendants for exercising any right afforded by the OSH Act as set forth below:

> (1) **No person shall discharge or in any manner discriminate against any employee** ………**because of the exercise by such employee** on behalf of himself or others **of any right afforded by this Act.** (Emphasis added)

124. The OSH Act expressly provides all employees with the right to object based on religious grounds to immunization, medical examinations and medical treatments as stated in 29 USC §669 Sec. 20(a)(5) below:

> **Nothing in this or any other provision of this Act** shall be deemed to authorize or require medical examination, immunization, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others.

125. The OSHA General Duty Clause at 29 USC §654(b) also only authorizes employees to comply with approved and authorized standards, methods, orders, rules or mandated by employers or any government municipality that are "applicable to [the employees] own actions and conduct.

126. 29 USC §654(b) also provides an employee, including Plaintiff Loiacono, the right to object to unauthorized or unapproved standards, methods, rules or regulations mandated by employers and not approved by the OSHA Secretary.

127. On December 24, 2021, Defendants informed Plaintiff that he and all employees were mandated to take the Covid-19 vaccine due to the NYC Covid-19 Order.

128. On December 24, 2021, Plaintiff Loiacono informed Defendants via email that he objected to taking the Covid-19 vaccine based on religious grounds and requested an exemption so that he would not be discharged by being locked out of his job.

129. On January 18, 2025, Defendants discharged Plaintiff Loiacono by telling him to leave his job post and by locking him out of his job and Defendants placed him on involuntary leave without pay, LWOP until April 21, 2025

130. Defendants have not reinstated Plaintiff Loiacono to his job with backpay or any other compensation.

131. Every employee has an express and/or implied "private right of action" pursuant to 29 USC §660 Sec. 11(c)(2) against any person, including a private or government employer, that causes an employee to be discharged for exercising an employee's rights under the OSH Act as stated below:

> (2) Any employee who **believes that he has been discharged or otherwise discriminated against** by any person in violation of this subsection **may**, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination…..….**In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.**

132. Under information and belief, Defendants, let other employees remain in Defendants workplaces and keep working their jobs after other employees objected to taking the mandated Covid-19 vaccine, which amounted discrimination against Plaintiff Loiacono in violation of the OSH Act under 29 USC §669 Sec. 11(c)(1).

133. Defendants refusal to allow Plaintiff Loiacono to remain on his job unvaccinated after having had received written a request from Plaintiff Loiacono outlining his religious grounds and Defendants subsequent discharge of Plaintiff Loiacono by forcing him to leave his job post violated Plaintiffs two statutory rights in the OSH Act at 29 USC §660 Sec. 11(c)(1) and 29 USC §669 Sec. 20(a)(5)

134. Due to Defendants violations of the above two statutory provisions of the OSH Act, Plaintiffs also have an implied right of action based on the US Supreme Court opinion in the *Whirlpool*

*Corp. v. Marshall*, 445 U.S. 1, (1980) because the Supreme Court interpreted Sec. 11(c)(1)&(2) to provide employees an implied right of action holding that "nothing in the [OSH] Act suggest that…. employees… must rely exclusively on the remedies expressly set forth in the Act" through the OSHA Secretary and that OSH Acts administrative remedies are not "exclusive."

135. The enforcement authority provided to the OSHA Secretary in Sections 8, 9, 10, and 11 of the OSH Act are exclusively for the investigation and sanctioning of employers for OSHA regulatory or standards violations and nothing else.

136.  Defendants' violations of Plaintiffs statutory rights to object to vaccines in Sec. 20(a)(5) and Sec.5(b) of the OSH Act are not regulatory violations subject to administrative review by the Secretary of OSHA.

137. The redress for Defendants violations of Plaintiffs statutory rights can only be accomplished through an implied private right of action consistent with the *Whirlpool* decision.

138. The holdings in *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F. 2d, 918, 926 (2nd Cir. 1983) and *Quirk v. Difiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) regarding the non-existence of a "private right of action" under the OSH Act do not apply to Plaintiffs rights and Defendants violations in this case because the holdings in *Donovan* and *Quirk*  along with the other 218 other similar cases, only apply to OSHA cases involving violations of OSHA standards, regulations rules or guidelines for which the OSHA Secretary has administrative authority to provide a remedy.

139. The *Donovan* and *Quirk* do not bar Plaintiffs express or implied private right of action because Plaintiffs rights in tis care are not regulatory rights promulgated by the OSHA Secretary and the OSHA Secretary does not have authority under the OSH Act to fine, sanction or sue for non-standard or regulations violations. See <u>Exhibit</u>  list of 218 cases involving only OSHA regulatory violations.

140. The United States district courts have jurisdiction to hear Plaintiffs OSHA claims under Sec. 11(c)(2) because the word "any" in the phrase "[i[n any such action" in the Sec. 20(c)(2) of the OSHA statute is plainly and liberally interpreted to include "any" action brought by an employee who has no remedy through the OSHA Secretaries administrative process and so that all rights provided an employee under Sec. 20(a)(5) and Sec. 5(b) of the OSH Act are not rendered meaningless and without enforcement according to the U.S. Supreme Court ruling in the case *United States v. Alpers*, 338 U.S. 680, 682, (1950).

## SECOND CAUSE OF ACTION
**Conspiracy Claim under 42 U.S.C. §1983 to Deprive Plaintiffs Rights Under OSH Act and the First Amendment Free Exercise Clause and Fourteenth Amendment Substantive Due Process Clause**

141. Plaintiffs realleges and incorporates by reference Paragraphs 1-142 of this Complaint as if fully set forth.

142. Plaintiffs right to object to the NYC Vaccine Order has been a fundamental substantive common law right of every U.S citizen since first recognized by the U.S. Supreme Court in 1905 in the case *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) when it was held that:

> "the inherent right of every freeman to care for his own body and health in such way as to him seems best…… the liberty secured by the Constitution of the United States to every person within its jurisdiction….." Jacobson at 26

143. The U.S. Supreme Court further recognized the fundamental right to refuse medical treatment in 1990 in the case *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (holding – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.")

144. Congress codified the *Jacobson* decision when it enacted 29 USC §669 Sec. 20(a)(5) of the OSH Act thereby giving all employees the right to object, on religious grounds, to employer, government or private sector mandated immunizations or vaccines, medical treatments and medical exams (hereinafter the Right to Medical Freedom) which religious grounds protected by the First Amendment Free Exercise clause and the 14th Amendment substantive due process clause referenced in both *Jacobson* and *Cruzan*.

145. To prevail on a cause of action under 42 U.S.C. §1983, a plaintiff must establish, by a preponderance of the evidence, that (1) defendant deprived Plaintiff of a right secured by the Constitution or the laws of the United States and (2) in doing so, the defendant acted under color of state law. See, e.g., Byng v. Delta Recovery Servs. LLC, No. 13 Civ. 2958, 2014 WL 2493779, at *1 (2d Cir. June 4, 2014) (citing West v. Atkins, 487 U.S. 42, 48 (1988).

146. "The conduct of private actors can be attributed to the State/or municipal government for § 1983 purposes if: "(1) the State compelled the conduct, …. or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed.Appx. 627, 629 (2d Cir. 2009).

147. Plaintiffs also specifically alleges a §1983 under a conspiracy claim, wherein Plaintiff can show that: (1) an agreement between a state actor and a private entity occurred; (2) that the agreement or act in concert caused a deprivation of or inflicted an unconstitutional injury; and (3) that an overt act was done in furtherance of that goal causing damages. See *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) citing Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y.1999); see, e.g., Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996) (setting forth elements)).

148. "[C]conspiracies are by their very nature secretive operations," and can be proven by circumstantial, rather than direct, evidence. *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994).

149. Malice may be inferred from a finding that defendants lacked probable cause to initiate criminal proceedings, which in this case Defendants as OSHA Regulated Entitles lacked "cause" to lock out and terminate Plaintiff in violation of Sec. 11(c)(1) of the OSH Act. See, e.g., *Maxwell v. City of New York,* 156 A.D.2d 28, 34–35, 554 N.Y.S.2d 502, 505–06 (1st Dep't 1990).

150. The issue of malice is a jury question." See *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir 1994)

A. **Section 1983 Conspiracy To Deprive**

151. Defendants knew or should have known that the City's was not authorized to enforce the NYC Vaccine Order because the Order was preempted and precluded by the Federal OSH Act under 29 USC §667 Sec. 18(a) because OSHA already had established standards and methods – the Respiratory Standards and General Duty Clause to prevent the spread of any and all recognized airborne hazards, including the Covid-19 airborne hazard and Defendants knew that the NYC Order requiring Defendants to remove unvaccinated employees from the workplace directly violated OSHA and the First Amendment Free Exercise clause.

152. Despite this knowledge, Defendants SEIU and RAB on behalf of the other Defendants, entered into that certain agreement titled "Memorandum of Agreement" (MOA) dated September 20, 2021, wherein, the Defendants - and each of them individually and collectively - through their agents and affiliates agreed to mandate that Plaintiff and all other employees take the Covid-19 vaccination in violation of 29 USC 669 Sec. 20(a)(5). See Exhibit _____, MOU

153. The MOA states, in summary, that if Plaintiff Loiacono or any employee failed to take the Covid-19 vaccine that Defendants agreed to follow the instructions of the NYC Vaccine Order that instructed private employers to agree to "separate" Plaintiff and other employees from their jobs for failure to take the Covid-19 vaccine, which the Agreement declared was a separation for non-disciplinary purposes.

154. Defendants even used their employees and or board members, namely Resident Manager Mr. Saljanin, Alex Freedmand and Bruce Gutkin to threaten Plaintiff Loiacono to convince him to take the Covid-19 vaccine to "make life easier" for himself.

155. Defendants notice letter made clear that the Covid-19 vaccine Mandate Defendants were enforcing came from the City and that the Defendants enforcement was on behalf of the City's Vaccine Order demanding all employers to remove unvaccinated workers for the "good of the public."

156. Defendants further agreed through the written MOU to deprive Plaintiff Liocano of his right to report Defendants to the OSHA Secretary for violating his statutory rights by failing to disclose that he had the right to report Defendants to OSHA and instead Defendants directed Plaintiff to follow the process under Title VII and the Disability Act to request an accommodation that Plaintiff was never going to be granted.

157. Defendants knew that they were not going to allow Plaintiff Loiacono to remain in his job unvaccinated, but Defendants gave Plaintiff a letter from the NYC General Counsel See Exhibit _____, informing him that he could seek resolution under those federal laws that were not applicable, but not under OSH Act which was applicable to Plaintiffs case.

158. Defendants failed to "advise" Plaintiff of his OSHA right to refuse the Covid-19 vaccine and Defendants refused to "advise" Plaintiff of his OSHA right to also make a claim for

159. Defendants, therefore, agreed, cooperated, participated, and conspired to enforce the City's illegal Vaccine Mandate that Defendants knew or should have known were invalid.

160. While the City was acting under color of city law, Defendants enforced an invalid illegal law amounts to conspiracy with the City to deprive Plaintiffs of their right to object to the Covid-19 vaccine and right to remain in their jobs unvaccinated protected by the OSH Act and First Amendment Free Exercise Clause and the 14th Amendment substantive due process clauses.

161. Defendants knew that they are not a licensed physicians with the power to prescribe medical treatments and Defendants knew that it is a crime to practice medicine, which includes the "treating or prescribing" of regulated drugs, without a license and that mandating Plaintiff or any employee to take the medical treatment of a Covid-19 vaccine to retain their job is the act of prescribing a medical treatment which is a crime punishable as a felony under Education Law §6512.

162. Defendants acting jointly with the City to deprive Plaintiffs of their rights based on the sworn testimony of Dr. McCullough, Dr. Montgomery and Expert Bruce Miller, that explains that all vaccines, including the Covid-19 vaccine, are never medically necessary to prevent or mitigate the spread of any airborne communicable hazard in the workplace and therefore, neither the City nor Defendants had the right to compel compliance with the Covid-10 mandatory vaccination.

163. The Covid-19 vaccine could never meet the City's public policy objective of slowing the rates of Covid-19 infections because the Covid-19 vaccine cannot prevent the transmission of the disease because vaccines cannot shield employees from exposure to the airborne hazard in the workplace and neither can the vaccine remove the Covid-airborne virus from the atmosphere in the workplace.

164. Defendants knew or should have known that the Covid-19 vaccine did not meet the OSHA Respiratory standard method that requires workplace safety methods to either remove an airborne hazard from the air or shield workers and the public from exposure to any airborne hazard in the workplace.

165. Under information and belief, Defendants the Union, RABLR, Ms. Pagnatta, Howard Rothschild, Hector Figueroa, Eric Hadar and Alex Freedman knew or should have known that: 1.) the Vaccine Orders were preempted by the OSH Act; 2) the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was

an unauthorized safety method; 3) Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations.

166. Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act standards, regulations and statutory rights for employees under Section 20(a)(5) and knew the OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid-19 vaccine – pursuant to Section 20(a)(5) of the act.

167. Defendants failure to reinstate Plaintiffs into their jobs or similar job since the City's Vaccine Order was repealed and continued denial of other employment benefits constitutes willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed against all Defendants and individual Defendants joint and severally.

## B. Section 1983 Coercion

168. Defendants' termination of Plaintiffs was exclusively due to the "coercive power" of City's NYC Vaccine Orders because the City's Order came with the threat of costly monetary fines if Defendants refused to comply with the Order to remove unvaccinated employee from Defendants workplace.(

169. Chapter 22 of New York City Charter, Section 555(b)(2) gives the City's Health Commissioner the authority to fine Defendants up to $1,000 a day for failing to remove every unvaccinated employee from Defendants workplace.

170. The City's coercive power also caused Defendants to enter into the illegal MOA, which violated the National Labor Relation Act ban on negotiating the civil rights of employees, in order to comply with the NYC Vaccine Order.

171. Defendants knew or should have know that MOA's approval of the remove of Plaintiffs from their jobs because Plaintiffs objected to taking the Covid-19 vaccine on religious grounds violated the

34

NLRA and yet Defendants entered into the illegal agreement just to comply with the City Vaccine Orders.

172. Defendants were willful participants in joint and significant activity with the City by enforcing the illegal NYC Vaccine Order to also avoid huge fines from the City. See *Bruette v. Human Society of Ventura County*, 294 F.3rd 1205 (9th Cir. 2002), see *Lee v. Katz*, 276 F3d 550,554 (9th Cir. 2002) and see *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)

173. The City and Defendants had a "meeting of the minds" to violate Plaintiffs OSH Act rights along with Plaintiffs rights under the First Amendment Free Exercise and Fourteenth substantive due process clause which provide Plaintiffs the right to be to refuse and choose Plaintiffs own medical treatment. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F2d 1539, 1546-47 (9th Cir. 1989)

174. As are result of Defendants agreement to enforce the City's Vaccine Orders all Plaintiffs were locked out of all jobs in the City as Plaintiffs could not find any job in the City because of this conspiracy to coerce Plaintiffs to take the Covid-19 vaccine.

### C. Section 1983 Enforcement of Exclusive Power of the City

175. The New York City Charter at Chapter 22, Section 556(c)(2) provides the City Department of Health (DOH) with exclusive power and responsibility to control, monitor, supervise services regarding communicable diseases within the City, specifically requiring the City's DOH to "control .. communicable.. disease hazardous to the life and health ……effecting public health. See Exhibit _____ Article – Federal and State Isolation and Quarantine Authority

176. The NYC Vaccine Order of December 13, 2021 expressly declares that the City has exclusive authority to "control" communicable diseases for public health as follows:

>**"NOW THEREFORE,** …. .finding that …..it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency…."

177. The NYC Vaccine Order was a public function of the City under the City's law.

178. Defendants cooperation with - through the MOA - and enforcement of the NYC Vaccine Order caused Defendants to operate under color of the law of the City to violate Plaintiff OSHA and Constitutional right to object to the City's Covid-19 vaccine mandate on religious grounds and to remain on Plaintiffs jobs unvaccinated. See *Blum v. Yaretsky*, 457 U.S. 991 (1982)

179. Defendants enforcement of the NYC Vaccine Order was an exercise of the sovereign power of the City that is attributable to Defendants as "state action" that deprived Plaintiffs of their federal and constitutional rights.

### THIRD CAUSE OF ACTION
**Common Law Fraudulent Concealment**

180. Plaintiffs realleges and incorporates by reference Paragraphs 1-182 of this Complaint as if fully set forth herein.

181. Without waiving the validity of Plaintiffs other claims, Plaintiff makes a claim for fraudulent concealment claim under New York law for Defendants concealment of Plaintiff's right to refuse the Covid-19 vaccine without fear of discharge and Defendants failure to disclose and concealment of Plaintiffs "optional right" to report Defendants discharge for exercising his right to refuse the Covid-19 vaccine to the OSHA Secretary within the 30 day period contained in Sec. 11(c)(2) so that the Secretary could have, at minimum, filed an injunction, to stop Defendants discharge of Plaintiff and those similarly situated.

182. The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure

to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages, which can be proved by circumstantial evidence.

183. Each Defendant has a duty and are mandated under OSHA 29 CFR §1904.35(b)(1)(iii) to inform their employees of all their rights under the OSH Act, including specifically the right to be free from discrimination and retaliation for exercising their rights provided under 29 U.S.C. §660 Section 11(c)(1), including specifically Plaintiffs right to object to vaccines under OSH Act 29 USC §669 Section 20(a)(5) and 29 USC §654(b).

184. Plaintiffs and specifically, Plaintiff Loiacono was never informed while working for Defendants, trained or told by Defendants or by Defendants employees, agents, contractors on human resource director that he had a right under the OSH Act 29 USC §660 Sec. 11(c)(1) and (2) to be free from discrimination and wrongful discharge and that Plaintiffs had a right to object to any immunization or vaccine, including the Covid-19 vaccine or object to any medical treatment or medical exam that includes Covid-19 testing that was provided by the OSH Act at 29 USC §669 Sec. 20(a)(5).

185. Defendants by and through their employees, agents or partners, Joclyn Pagnotta head of Human Resources, Resident Manager Saljanin and Union Delegate Scott Cohen (collectively Defendants Employees) all had a duty under the OSHA Act to disclose to Plaintiffs their right to object to the NYC Covid-19 vaccine and each time Plaintiff Loiacono spoke to Ms. Pagnaotta, or Mr. Saljanin or Mr. Cohen by email, phone or in person not one of them disclosed to Plaintiff that he had a right to object on religious grounds the Covid-19 vaccine, that Plaintiffs had a right to remain on his job unvaccinated and that Plaintiffs had an "optional right" to report to the OSHA Secretary Defendants wrongful discharge and discrimination set forth above.

186. While the OSHA Secretary does not have full authority to fine and sue Defendants under the Secretaries powers in the OSH Act because Plaintiffs rights under Sec. 20(a)(5) are not a regulation

or rule promulgated by the Secretary, the OSH Act under 29 USC §660 Sec. 11(c)(2) provides the Secretary with at minimum injunctive power as stated below:

> "Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection **may**…. file a complaint with the Secretary……the Secretary….. shall bring an action in any appropriate United sates district court against any such person….to <u>restrain violations</u> of paragraph (1)….."

187. Plaintiffs right to report Defendants wrongful discharge and discrimination is an "optional right" because Sec. 11(c)(2) above only states that an employee "may file" a complaint with the Secretary which is not mandatory.

188. Because Plaintiffs did not know that they had the "optional right" to report the discharge to the Secretary because Defendants never disclosed - as was their duty – to Plaintiffs that they had the right.

189. Each Defendants Employee wrongly told Plaintiff Loiacono  - either via email or verbally  -that he had to submit a Title VII or Disability Act request for religious accommodation letter explaining in detail his religious practice of refusing the Covid-19 and requiring a clergy letter before he could exercise his right to refuse the Covid-19 vaccine and remain in his job unvaccinated.

190.  Defendants and Defendants Employees, and each of them, knew or should have known that Plaintiff had an OSH Act right to refuse the Covid-19 vaccine and that Plaintiff Loiacono had no duty to submit a specific request for an "religious accommodation" under VII in order to exercise his right to object on religious grounds the Covid-19 vaccine and to exercise his right to remain on his job unvaccinated and their failure to disclosed was a fraudulent concealment.

191. Defendants and Defendants Employees further concealed Plaintiffs rights under OSHA by delivering to Plaintiff a letter from the NYC General Counsel explaining that he had to go through a Title VII process and that the Defendants had the right to refuse any accommodation.

192. Defendants Pagnatto in the January 18, 2021 letter misrepresented to Plaintiff that Defendants had the right to discharge him by removing him from his workplace based on Title VII standards which was false.

193. Because Defendants willfully refused to disclose to Plaintiffs and Plaintiff Loiacono that they had a right to object to the Covid-19 on religious grounds and that they had the right to remain at his workplace unvaccinated and that Plaintiffs had a right to report any discrimination and wrongful discharge to the OSHA Secretary, Plaintiffs and Plaintiffs Loiacono failed to report Defendants to the OSHA Secretary for their violations of his right to "know" their OSHA rights within the 30 day period stated in the OSH Act at 29 USC §660 Sec. 11(c)(2).

194. Plaintiff Loiacono reasonably relied on Defendants Employees instruction to submit a "religious accommodation" request, and as a result of relying on that process, Plaintiffs did not know and he failed to exercise his "option" to submit a claim to the OSHA Secretary within 30 days of his wrongful discharge and denial of his right to object to the Covid-19 vaccine to obtain any remedy the Secretary could have provided.

195. Defendants failure to disclose Plaintiffs' OSHA rights resulted in Defendants refusal to grant Plaintiffs both their rights under Sec. 20(a)(5) and Section 11(c)(1) which includes the "optional right" to report and be free from discrimination and discharge.

196. Defendants omission was intentional and a blatant disregard for Plaintiffs' rights giving rise to punitive damages for said fraudulent acts because the duty to disclose was statutory for which Defendants are strictly liable.

197. Defendants willful refusal to disclose to Plaintiffs their right to report Defendants wrongful and discriminatory discharge deprived Plaintiff of their "optional right" to at minimum obtain an injunction through the Secretary who could have "restrained" Defendants wrongful discharge of Plaintiffs in violation of Sec. 11(c)(1) and Sec. 20(a)(5).

198. Because Defendants and its employees concealed Plaintiffs OHSA rights listed above, Defendants have caused Plaintiff to be discharged and locked out of his job without "cause" for over three years, because Plaintiffs did not know that they could have reported Defendants to the Secretary of OSHA who could have filed sooner an action to restrain Defendants from locking Plaintiffs out of their jobs.

199. Due to the willful concealment of Plaintiffs OSHA rights that Defendants have a non-delegable duty to comply with, Plaintiffs were not able to mitigate their own damages and Plaintiffs suffered a four year lock out from their jobs, which was far longer than what the Secretary could have obtained but for Defendants failure to disclose Plaintiffs their right to report.

200. The fact that Defendants supplied Plaintiffs with the letter from the NYC General Counsel representing that the Title VII law applied to Plaintiffs OSHA rights is evidence that Defendants willfully concealed Plaintiffs OSHA right to report to the OSHA secretary and is evidence of Defendants wrongful discharge and discrimination.

201. But for Defendants failure to disclose Plaintiffs right to file a claim with the OSHA Secretary within 30 days of Defendants decision to discharge Plaintiff on January 18, 2021, Plaintiff would have filed a claim and the Secretary could have at least stopped the long-term discharge and Plaintiff could have been reinstated sooner than later and could have avoided the longer term losses.

202. Plaintiff, therefore, has to rely on the implied private right of action also provided under 29 USC §660 Sec. 11(c)(2) that allows Plaintiff to file this complaint for Defendants discharge and discrimination.

203. Common law fraud has a 4-year statute of limitations which all Plaintiffs claims meet the statute of limitations period.

## FOURTH CAUSE OF ACTION
### Unfair Labor Practices

204. Plaintiffs realleges and incorporates by reference Paragraphs 1-202 of this Complaint as if fully set forth herein.

205. As a direct and proximate result of the conduct of UNION, its officers, agents and employees hereinabove set forth, the Union engaged in unfair labor practice of discrimination in violation of 29 USC §158(a)(3) and (b)(2) by entering into an agreement with Defendants that violated the federal OSH Act at 29 USC §660 Sec. 11(c)(1) by denying Plaintiffs their fundamental First Amendment, 14th Amendment and federal OSH Act right to object to taking the Covid-19 vaccine as provided under 29 USC §669 Sec. 20(a)(5) of the OSH Act.

206. The Union also conspired and agreed to the discriminatory acts of Defendants when it agreed to allow some employees to receive an exemption and not Plaintiff Loiacono who was denied his right to object to the Covid-19 vaccine protected by the Constitutional and the OSH Act.

207. The Union conspiracy to discriminate also violated the NLRA because it is an unfair labor practice to negotiate away the fundamental and federal protected rights of employee members of the Union.

208. By reason of the foregoing, Plaintiff is entitled to a permanent injunction enjoining UNION, its officers, agents and employees from violating Section 158(a)(3) & (b)(2) of the NLRA now or in the future and declare the all agreements between Defendants and the Union regarding the discriminatory acts are declared void and invalid along with other relief outlined in the prayer for relief.

## CLASS ALLEGATIONS

209. Plaintiffs realleges and incorporates by reference Paragraphs 1-167 of this Complaint as if fully set forth herein.

210. Class representative Plaintiff Loiacono, seeks class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of himself and all private sector employees who worked or works for employers within the City similarly situated (hereinafter the "Class")

211. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

212. The Class claims raise numerous common questions of fact or law, including, but not limited to:

    a.    Whether the Vaccine Orders are preempted by the OSH Act because the Vaccine Order specifically violates the OSHA minimum standard for preventing exposure to airborne communicable diseases;

    b.    Whether the wrongful discharge and/or lockout of Plaintiffs for refusing to take the Covid-19 vaccine based on religious and non-religious grounds violates the OSH Act, Title VII, the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

207. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy because there are no material issues of fact in dispute and only issues of law predominate the claims. There is no dispute that all Defendants terminated and/or locked out their respective Plaintiffs employees due to their unvaccinated status based on religious and/or non-religious grounds in violation of the OSH Act and Section 1983.

208. The claims of the named Plaintiff are typical of the claims of the class in that the named Plaintiffs and class members claim that their right refuse to comply with the Covid-19 Vaccine Order or Covid-19 vaccine mandated enforced by Defendants and subsequent termination or lock out of their jobs was willful or a reckless disregard for their rights protected by federal and constitutional law warrantying punitive damages against the Defendants jointly and severally.

209. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

210. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as class members and there is no need to a review of the individual facts or circumstances around each Plaintiffs job and the facts regarding each Plaintiffs termination or lock-out because the conclusions of law are determinative for each cause of action and not the facts surrounding the terminations or lockouts.

**PRAYER FOR RELIEF**

211. Plaintiff Loiacono individually and for those similarly situated claims the following relief:

    a. Permanent injunction against Defendants precluding future discharge of any employees who objects to any employer or government mandated immunization, medical treatment or medical exam pursuant to 29 USC §669 Sec. 20(a)(5) of the OSH Act;

    b. reinstatement to Plaintiffs jobs with title and seniority;

    c. backpay from the date Plaintiffs were either formally terminated in writing or permanently locked out of their jobs with interest;

    d. compensatory damages;

    e. punitive damages to be determined by a jury;

f. loss payments into any retirement fund since Plaintiffs were either formally terminated or permanently locked out of their jobs;

g. reinstatement of loss time into retirement calculation;

h. expungement of discipline codes from each employee's personnel file and records;

i. mental and emotional distress damages;

j. punitive damages;

k. interest on any compensation pursuant to applicable law;

l. attorney fees and costs; and

m. any other remedies allowed by law

Dated: April 18, 2025                                      Respectfully submitted,

By: /s/ *Jo Saint-George*
Jo Saint-George, Esq.
4435 E. Chandler Blvd, Suite 200
Phoenix, Arizona 85048
Phone: (602)326-8663
Email: jo@woc4equaljustice.org


Law Office of
Tricia S. Lindsay, PC
531 E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552


**Mailing Address:**
P.O. Box 88
White Plains, NY 10602
Phone: (347) 386-4604
(347) 349-5433
Email: Tricialindsaylaw@gmail.com
attorney@tricialindsaylaw.com
www.tricialindsaylaw.com


*Counsel for Plaintiffs*