**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

Plaintiffs,

v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST
79TH STREET LLC, REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC., SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU) LOCAL 32BJ, AND
DOES 1-20

Defendants

**THIRD AMENDED COMPLAINT**
**(Fed. R. Civ. P. 15 – Missing Exhibits)**

**Case No.: 25-cv-00330-AMD-CHK**
Hon. Ann M. Donnelly, U.S.D.J. (AMD)
Hon. Clay H. Kaminsky, U.S.M.J. (CHK)

Plaintiff John Loiacono, individually and on behalf of similarly situated individuals, by
and through undersigned counsel, respectfully submits this Third Amended Complaint to
make the following corrections to the Amended Complaint ECF No. 16 filed on May 5,
2025, as follows:

1. Attach missing **Exhibits #8- #14** referenced in the Amended Complaint but
   inadvertently not electronically filed.

2. Add the reference "See **Exhibit 18"** to the end of the paragraph ¶88 on Page 20
   to reference the "previous agreements" referenced in the paragraph as attached
   and incorporated and add **Exhibit 18** to ¶ 152, Page 31.

3. Add the following list of documents to **Exhibit 18** referenced in the Amended
   Complaint at ¶ 88 and ¶ 89, Page 20:

   a. 9-30- 2021- MOA - Covid-19 - Recall & Vaccination

b.   3-24-2020 - MOA - Re: Covid-19 - Temporary Employees

c.   4-2-2020  - MOA - Covid-19 - Incentive Pay

d.   4-8 -2020 - MOA - Covid -19 - Pay Increases by July 1, 2020

e.   4-11-2020 - MOA - Covid-19 - Additional Work by Employees

f.   5-29-2020 - MOA - Covid-19 pandemic -Recall, Bumping and Termination Pay

g.   6-22-2020 - MOA - Covid-19 - Voluntary Early Retirement Incentive Program

h.   1-25-2021 - MOA - Covid-19 - Recall Bumping rights

i.   7-11-2021 - MOA - Covid-19 - HERO ACT Final

j.   9-30- 2021- MOA - Covid-19 - Recall & Vaccination

k.   12-27-2021- MOA - Covid-19 - Vaccine Mandate

l.   2018 Resident Managers and Superintendents Agreement with RAB & SEIU

4.  Add and attach to the list of exhibits **Exhibit 22** in the blank  "See Exhibit _____" in paragraph ¶157, Page 32.

5.  Add, attach and incorporate by reference **Exhibit 29**, which is a copy of New York Code Public Health §552 the Duties of Commissioners filed herewith.

6.  This Third-Amended Complaint also realleges and incorporates by this reference the entire Complaint filed on January 18, 2025 under ECF #1 attached hereto as **Exhibit A**, the Amended Complaint filed under ECF #16 attached hereto as **Exhibit B**,  and the Second Amended Complaint – name correction filed under ECF #36 attached hereto as **Exhibit C**, all without prior exhibits.

7. To correct the docket to reflect the corrected exhibits, **<u>Exhibits 1-29</u>** are hereby attached and refiled with this Third Amended Complaint so that the docket has a complete correct set of all the exhibits referenced in the Amended Complaint and this Third Amended Complaint.

This amendment is permitted under Federal Rule of Civil Procedure Rule 15. No defendant has served a responsive pleading. In the alternative, leave to amend is freely given under Rule 15(a)(2). The correction of insertion of the missing exhibits outlined herein relates back under Rule 15(c)(1)(C) because defendants were served with the paper copies of the exhibits and/or all of the missing exhibits are already in the possession of all Defendants and the refiling herein is no pre-judice to the Defendants.


Dated: August 18, 2025                                  Respectfully submitted,

                                                                /s/ *Jo Saint-George, Esq.*
                                                                Jo Saint-George, Esq.
                                                                Women of Color For Equal Justice
                                                                4435 E. Chandler Blvd, Suite 200
                                                                Phoenix, Arizona 85048
                                                                Phone: (602)326-8663
                                                                Email: jo@woc4equaljustice.org

                                                                Tricia S. Lindsay, PC
                                                                531 E. Lincoln Ave., Ste. 5B
                                                                Mount Vernon, NY 10552
                                                                <u>Mailing Address:</u>
                                                                P.O. Box 88
                                                                White Plains, NY 10602
                                                                Phone: (347) 386-4604
                                                                (347) 349-5433
                                                                Tricialindsaylaw@gmail.com
                                                                attorney@tricialindsaylaw.com

                                                                *Counsel for Plaintiff*

<strong>CERTIFICATE OF SERVICE</strong>

I certify that a copy of this SECOND AMENDED COMPLAINT was: (  X  ) e-mailed and e-filed (X  ) mailed (    ) faxed (    ) hand delivered to the person(s) listed below on:

ALLIED PARTNERS MANAGEMENT, LLC
770 Lexington Avenue, 17th Floor
New York, New York, 10065
Authorized Agent

Daniel Ryan Axelrod
Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith
7 World Trade Center
Ste Floor 11
New York, NY 10007
Phone: (212)232-1300
daniel.axelrod@lewisbrisbois.com
Peter.Shapiro@lewisbrisbois.com

Attorney of Record for:
Realty Advisory Board on Labor Relations, Inc.
*Defendant*

Geoffrey Leonard
Lyle Douglas Rowen
SEIU Local 32BJ
Office of the General Counsel
25 W18th Street
New York, NY 10011
Phone: (212)388-2131
        (212)388-3452
gleonard@seiu32bj.org
lrowen@seiu32bj.org
Attorney of Record for:
Service Employees International Union (SEIU) Local 32 BJ
*Defendant*

Dated: August 18, 2025          /s/ *Jo Saint-George, Esq.*
                                      Jo Saint-George, Esq.

# EXHIBIT A

Complaint – ECF #1

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Loiacono, individually and on behalf of similarly situated individuals

## DEFENDANTS

Allied Partners Mangaement LLC, 200 East 79th Street, LLC, Realty Advisory Board On Labor Relations, Inc. Service Employees Internatio

**(b)** County of Residence of First Listed Plaintiff   Bronx
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Tricia S. Lindsay, Esq.    - Tricialindsaylaw@gmail.com
531 E. Lincoln Ave., Ste 5B, Mount Vernon, NY- Ph: 347-386-4604

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❑ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❑ 2  U.S. Government Defendant
- ❑ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*  *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - Product Liability | ❑ 690 Other | ❑ 423 Withdrawal 28 USC 157 | ❑ 376 Qui Tam (31 USC 3729(a)) |
| ❑ 130 Miller Act | ❑ 315 Airplane Product Liability | ❑ 367 Health Care/ | | | ❑ 400 State Reapportionment |
| ❑ 140 Negotiable Instrument | ❑ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| ❑ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' Liability | ❑ 368 Asbestos Personal Injury Product Liability | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❑ 340 Marine | | | ❑ 835 Patent - Abbreviated New Drug Application | ❑ 460 Deportation |
| | ❑ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❑ 840 Trademark | ❑ 470 Racketeer Influenced and Corrupt Organizations |
| ❑ 153 Recovery of Overpayment of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❑ 480 Consumer Credit |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle Product Liability | ❑ 371 Truth in Lending | ❑ 710 Fair Labor Standards Act | ❑ 861 HIA (1395ff) | ❑ 485 Telephone Consumer Protection Act |
| ❑ 190 Other Contract | ❑ 360 Other Personal Injury | ❑ 380 Other Personal Property Damage | ❑ 720 Labor/Management Relations | ❑ 862 Black Lung (923) | ❑ 490 Cable/Sat TV |
| ❑ 195 Contract Product Liability | ❑ 362 Personal Injury - Medical Malpractice | ❑ 385 Property Damage Product Liability | ❑ 740 Railway Labor Act | ❑ 863 DIWC/DIWW (405(g)) | ❑ 850 Securities/Commodities/ Exchange |
| ❑ 196 Franchise | | | ❑ 751 Family and Medical Leave Act | ❑ 864 SSID Title XVI | |
| | | | | ❑ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❑ 891 Agricultural Acts |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | ❑ 791 Employee Retirement Income Security Act | ❑ 870 Taxes (U.S. Plaintiff or Defendant) | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | | | ❑ 895 Freedom of Information Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate Sentence | | ❑ 871 IRS—Third Party 26 USC 7609 | |
| ❑ 240 Torts to Land | ❑ 443 Housing/ Accommodations | ❑ 530 General | | | ❑ 896 Arbitration |
| ❑ 245 Tort Product Liability | ❑ 445 Amer. w/Disabilities - Employment | ❑ 535 Death Penalty | | | ❑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❑ 290 All Other Real Property | ❑ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ❑ 950 Constitutionality of State Statutes |
| | ❑ 448 Education | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | |
| | | ❑ 550 Civil Rights | ❑ 465 Other Immigration Actions | | |
| | | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❑ 2 Removed from State Court
- ❑ 3 Remanded from Appellate Court
- ❑ 4 Reinstated or Reopened
- ❑ 5 Transferred from Another District *(specify)*
- ❑ 6 Multidistrict Litigation - Transfer
- ❑ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §660 Subsection 11(c)(1)&(2) of the Occupational Safety and Health Act of 1970 ("OSH Act")

Brief description of cause:
Employee discharge for exercising 1st Amendment Free Exercise right to refuse vaccine protected by the OSHA

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
01/18/2025

SIGNATURE OF ATTORNEY OF RECORD
Tricia S. Lindsay

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

                     Plaintiffs,

          v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST
79TH STREET LLC, REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC., SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU) LOCAL 32BJ, AND
DOES 1-20

                     Defendants

| |
|---|
| **COMPLAINT (Proposed Class)** |
| **AND JURY DEMAND** |
| INDEX:_____ |

_____

## INTRODUCTION

1. This is a civil rights wrongful discharge action brought by Plaintiff John Loiacono in his individual capacity and on behalf of any other class of private sector workers (collectively Plaintiff) pursuant to 29 U.S.C. §660 Subsection 11(c)(1)&(2) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the discriminatory discharge of Plaintiff by Defendants Allied Partners Management LLC and 200 East 79th Street LLC (hereinafter collectively "Allied200") for Plaintiff's exercising his right to object to taking the Covid-19 vaccine/immunization on religious grounds, which is a First Amendment Free Exercise right protected under 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2. Alternatively, this action is also brought pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act against Defendants "Allied200" and Realty Advisory Board on Labor Relations, Inc. and

Service Employees International Union (SEIU) Local 32BJ (collectively "Defendants") as private sector employers who conspired and/or agreed under color of government municipal law passed by the City of New York to deprive Plaintiff of his fundamental right to refuse the Covid-19 vaccine pursuant to the OSH Act, pursuant to the First Amendment Free Exercise clause and the right 14th Amendment substantive due process fundamental right choose chose his own medical treatment as declared by the U.S. Supreme Court in the Jacobson v. Massachusetts, 197 U.S. 11, 26 (1905)[1] and in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990).[2]

3. This action is also brought pursuant to Section 301 of the National Labor Relations Act, 29 USC §185 for the SEIU Local 32BJ's failure to represent Plaintiff by entering into an agreement with Co-Defendants that bargained away Plaintiffs Constitutional First Amendment Free Exercise Right that is also protected by the OSH Act and 14th Amendment Substantive Due Process right and said bargained agreement is not an authorized bargainable matter by the SEIU Local 32BJ.

4. Finally, this action also includes a claim for common law fraud against Defendants on behalf of similarly situated employees of Defendants who complied with Defendants mandate to be injected with a Covid-19 vaccine and who suffered injury due to their reliance on Defendants fraudulent representation that taking the Covid-19 vaccine was "necessary" to prevent the spread, and transmission of the Covid-19 airborne various in the workplace.

5. The wrongful termination was caused in part by the City of New York ("City") issuance of the December 13, 2021 Covid-19 Vaccine Order ("Covid Vaccine Orders" or "Vaccine Orders") issued through the New York City Department of Health and Mental Hygiene ("NYCDOH")

---

[1] Held: That every person has "the inherent right of every freeman to care for his own body and health in such way as to him seems best…. liberty secured by the Constitution of the United States to every person within its jurisdiction."
[2] Cruzon: held –("we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)

former Commissioner Dave. A Chokshi, MD and enforced by previous NYC May Bill de Blasio and further enforced by the current City Mayor Eric Adams and Commissioner Ashwin Vasan mandating Plaintiffs to provide proof of having received the Covid-19 vaccine enforced by City private section employer Defendants, which mandate was in violation of the OSH Act Section 18 express preemption clause which prohibits municipalities governed by an OSHA Plan from enacting unauthorized workplace safety methods that do not meet existing OSH Act minimum safety standards  and which precludes under OSH Act employers from refusing automatic vaccine/immunization exemptions based on religious grounds. see OSH Act 29 U.S.C. §667 Section 18(a)  and 20 U.S.C. §660 Section 11(c)(1)

6.    Plaintiffs also seek punitive damages against their specific employer Defendant, specifically against board members of Defendants, including but not limited to Howard Rothschild, Hector Figueroa, Eric Hadar and Jaclyn Pagnotta, and Alex Freedman, for their willful and/or reckless disregard of the rights of Plaintiff Loiacono and those similarly situated who refused the Covid-19 vaccine medical treatment as outlined above and who have the right to be free from "quid pro quo" religious harassment under the NYCHRL and alternatively Title VII.  See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994) (Held, in summary that punitive damages are available under the OSH Act)  Defendants collectively agreed and conspired to pressure Plaintiffs to take the illegal Covid-19 vaccine by threatening their jobs, telling them they don't care about the health of the general public for refusing the Covid-19 vaccine, and ultimately collectively agreeing to terminate their respective Plaintiffs for refusing the Covid-19 vaccine and Defendants have agreed to maintain a policy to not hire new employees who are unable to provide proof of Covid-19 vaccination.

## JURISDICTION AND VENUE

### a.    Jurisdiction

7.    This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccine Orders, as well as original jurisdiction pursuant to Section 11(c)(2)[3] of the OSH Act (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief" for the wrongful discharge of employees in violation of OSH Act Section 11(c)(1), which includes wrongful discharge of an employee who exercises their right to refuse immunization/vaccines, medical treatments or medial exams on religious grounds pursuant to Section 20(a)(5) of the OSH Act and violations pursuant to Section 1983;

8.    Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely the New York City Human Rights Law ("NYCHRL") codified in Administrative Code §8-109(a) and (f)(i), in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9.    Alternatively, this Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations of Title VII §2000e-2(a)(1)&(2) as well as for violations the First Amendment Free Exercise Clause and Fourteenth Amendment substantive Due Process clause as

---

[3] Prior decisions by the approximately 200 other federal courts, including decisions by the United States Court of Appeals for the Second Circuit, do no prohibit Plaintiffs claims under Section 11(c)(1) and (2) of the OSH Act because all of those cases involved claims for either: 1) personal injuries caused by an employer's violation of an OSHA safety standard or regulation promulgated by the OSHA Secretary; or 2) wrongful termination of an employee by an employer in retaliation for the employee reporting an employer's safety violation and none of the prior cases involved claims that an employer wrongly terminated an employee for exercising their OSHA congressionally enacted statutory right to refuse immunization, medical treatment or a medical exam on religious grounds pursuant to Section 20(a)(5) of the OSH Act at 29 U.S.C. ¶669, which statutory right was enacted to protect all employees fundamental First Amendment Free Exercise right to refuse or choose their own medical treatment based on their religious or belief practices.  See Exhibit 1

applied to private actors pursuant to Section 1983 who under color of law deprive citizens of their

federal statutory or constitutional rights.

### b.    Venue

10.    The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction

of the Eastern District of New York, specifically, Brooklyn, NY and this case is properly brought

in the Eastern District of New York under 28 U.S.C. §1391(b).

### Exhaustion of Administrative Remedies

11.    Plaintiff is not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section

11(c)(2) because the statue only states that an employee "may" file a complaint with the OSHA

Secretary and does not contain any mandatory language.

12.    Plaintiffs adversely affected by union agreements that impinge on their rights secured by the

Constitution are not required to exhaust administrative or intraunion remedies before suing in

federal court. See *Seay v. McDonnel Douglas Corp.,* 427 F. 2d 996 (9th Cir. 1970),

### JURY DEMAND

13.    Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to

Fed.R.Civ.P. 38(b).

### PARTIES

### A.    PLAINTIFFS

### i.    Terminated or Constructively Discharged/Locked Out Plaintiffs

5

14. Plaintiff Loiacono lives in the Bronx and was an employee for many years of Allied200 who was involuntarily placed on indeterminate leave without pay (LWOP) and/or "constructively discharged" or "locked out" from his job[4] by Allied200 for exercising his fundamental right to refuse to submit to the City's Vaccine Order that Allied200 and its officers and employees conspired amongst themselves and agreed and conspired with Realty Advisory Board on Labor Relations, Inc. ("RABLR") and its officer Howard Rothchild along with the SEIU Local 32BJ (the "Union") and SEIU's officer Hector Figueroa to enforce in violation of the OSH Act and Allied200 failed to provide Plaintiff Loiacono an automatic exemption from the Vaccine Order and locked out Loiacono from performing his job as prohibited by the OSH Act Section 11(c)(1), the NYCHRL and alternatively prohibited by Title VII pursuant to Section 1983.

15. Plaintiffs include other similarly situated employees who worked for private sector employers/Defendants with offices in the City who were also either terminated, placed on LWOP or locked out of their jobs for exercising their fundamental right to refuse to comply with the City's Vaccine Order enforced by Defendants who also failed to either provide the OSH Act automatic exemption and/or who refused to allow Plaintiffs to continue to work their jobs unvaccinated in their workplace located in the City.

### ii.      Coerced Plaintiff Class

16. Plaintiffs also include employees who worked for private sector employers/Defendants with offices in the City who were also terminated or placed on LWOP  for exercising their fundamental right to refuse to comply with the City's Vaccine Order enforced by Defendants who also failed to either provide the OSH Act automatic exemption and/or who refused to allow Plaintiffs to

---

[4] Under New York law an unlawful "lock out" is defined as an employee who is denied access to their workplace which forces the employee to cease their work activity pursuant to *McGinnis v. Bankers Life Co., Des Moines Iowa*, 334 N.Y.S. 2nd 270 (N.Y. App. Div. 1972)

continue to work their jobs unvaccinated in their workplace located in the City, but these Plaintiffs later went against their beliefs due to the fear of or actual financial hardship of either being denied an automatic exemption or being illegally locked out of their jobs and they took the mandated Covid-19 vaccine against their conscious beliefs. These Plaintiffs represent the "Coerced Class" who also suffered emotional distress damages from the coercion and harassment from their respective Defendant employers who wrongly enforced the illegal City Vaccine Order and threatened their jobs.

B. **DEFENDANTS**

17.    Defendant Allied Partners Management LLC a Section 802 Foreign Limited Liability Company registered in the State of New York that manages real estate in the City with offices for service of process located at 770 Lexington Ave, 17th Fl. New York, New York 10065.

18.    Defendant 200 East 79th Street, LLC, a Section 203 domestic Limited Liability Company registered in the State of New York that owns and manages real estate in the City with a service of process office located at 13-15 West 54th Street, New York, New York 10019 c/o WIL Law Firm.

19.    Realty Advisory Board On Labor Relations, Inc., (RABLR), a foreign non-for-profit corporation that provides labor relations services with service of process offices located at 12 East 41st Street, New York, New York 10017.  RABLR represents the labor relation interest of commercial and residential real estate owners including specifically the interest of Allied200 in labor negotiations with Unions that represent employees of commercial real estate owners.

20.    SEIU Local 32BJ ("32BJUnion") is an employee union with union Headquarters located at 25 West 18 Street, New York, NY 1001.  The 32BJUnion represents employees of commercial and residential real estate owners in labor relation negotiations.

7

21. Does 1-5,000+ represent employers with offices in the City who also denied employees the OSHA automatic exemption and either terminated, placed on LWOP or locked out employees from the performance of their jobs because employees remained unvaccinated and/or exercised their right to refuse the Covid-19 Vaccine pursuant to the employers internal policy or in agreement with the City's illegal Vaccine Order, when those employers had an independent duty to comply with the OSH Act.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

#### A. Facts Relevant to All Causes of Action

22. In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 2

23. The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

24. Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. §

651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018).

25. The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter OSHA Standards) See collectively  29 U.S.C. §652 Section 3(8) (Emphasis added).

26. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See  *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

27. The OSH Act places a duty on all regulated entities defined in the OSH Act that must be complied with that is contained in the General Duty Clause at 29 USC 654 Sec 5(a)(1), which mandates that all regulated entities shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees. Exhibit 4

28. The OSHA Standards, which includes additional regulations promulgated by the OSHA Secretary instruct employers on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

29. The City of New York as a public employer is a regulated municipal entity that must comply with the OSH Act minimum safety standards and regulations pursuant to the OSH Act 29 USC 667, Section 18 through the New York OSHA State Plan. See Exhibit 3

30. Defendants, as "employers" are entities that have employees and engage in business affecting commerce who must also comply with the OSH Act General Duty Clause as well as standards and regulations pursuant to the OSH Act at 29 U.S.C. §652 Section 3 and U.S.C. §654 Section 5.

31. The basic safety principle of the OSHA General Duty Clause is to place on regulated entities (hereinafter "employers") the duty to remove "hazards" from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death.

32. Employers are mandated by the OSHA Act to only use OSHA approved safety standard "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations that support the standards.

30. To protect employees and the general public that are present in workplaces from serious injury or death that could be caused by recognized airborne hazards in the workplace, including airborne infectious communicable diseases like Covid-19,  OSHA approved specific safety standard, regulations referred to generally as Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards);  See Exhibit 11

31. In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. See Exhibit 8

32. These approved safety methods have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic, See Exhibit 1 and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit 12, Page 1)

33.   On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19"). See <u>Exhibit 5</u>

34.   According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.  See <u>Exhibit 6</u>

35.   The airborne virus that causes the Covid-19 infection that is recognized in the workplace is workplace illness covered by the OSH Act because the Covid-19 airborne virus can be transmitted into the workplace atmosphere by employees infected with the Covid-19 virus when the infected employee talks to co-workers or the general public as part of the employees daily job responsibilities and the employee  while talking and coughing or sneezing while talking in the workplace atmosphere the Covid-19 airborne hazard vapors, droplets or fluids emit into the atmosphere from the infected person and another employee or someone from the public inhales the airborne Covid-19 virus into their mouth or nose that results in an infection of the other employee or public person in the workplace. See Exhibit _____

36.   Pursuant to the OSHA General Duty Clause and the Respiratory Standards, Defendants have a duty to remove any recognized airborne hazards emitted into the workplace and prevent employee exposure to any recognized airborne hazards in the workplace, that includes airborne infectious diseases recognized in the atmosphere of the workplace, including but not limited to the airborne

infectious diseases of SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and the airborne Covid-19 virus. See Exhibit 6

37. Pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

38. The primary objective of the OSHA Respiratory Standards is to implement methods that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See Exhibit 9, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

39. OSHA Respiratory regulations also mandate employers to provide "remote work from home" as an additional safety method that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 9, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

40. For over two decades, OSHA has had "remote work" regulations, and "remote work" is an approved method for preventing employee exposure to workplace airborne hazards. Exhibit 10

41. On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines has not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. Exhibit 11

42.    The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards.[5]

43.    The OSHA Department of Labor Solicitor stated in their Response to the Emergency Petition brought by various private sector employers that the OSH Act standards and regulations for preventing exposure to any hazardous virus that causes serious physical injury and/or death are sufficient to deal with new Covid-19 airborne hazard and, in summary, that OSHA would not promulgate a new standard that would allow any Covid-19 vaccine to serve as a new method that employers can use to meet their duty under the General Duty Clause.   See Exhibit 12

44.    All Employers, including Defendants, are mandated to comply with the OSHA minimum Respiratory standards by using only the authorized methods approved by OSHA to keep employees safe during an outbreak of any recognized airborne virus in the workplace, including the airborne virus that causes a Covid-19 infection in the workplace.

45.    No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can immunizations or vaccines shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease. See Exhibit 9 and Exhibit 13

46.    According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19, that can cause serious injury or death as required to be an OSHA

_____

[5] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

approved safety minimum safety method that protects employees in the workplace. (See Exhibit 13 Dr. Montgomery Affidavit)

47. According to Dr. Montgomery and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

48. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

49. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

50. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

51. Neither does FDA approval of any vaccine for use, nor does any claim from the Center for Disease Control (CDC) that the Covid-19 vaccine is "safe and effective" automatically make the Covid-19 vaccine, an OSHA approved "safety method" that employers can use to prevent employee and the public's exposure to the recognized airborne communicable disease called Covid-19.

52. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act and regulations to prescribe FDA "medical treatments" to eliminate recognized airborne workplace hazards like Covid-19 that can cause serious injury or death.

53. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

54. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

55. If an employer desires to use a new and unapproved safety method to prevent employee exposure to any airborne hazard recognized in the workplace, the employer has to seek a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

56. Neither the City nor Defendants applied for a variance from OSHA to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

57. All employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

58. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

59. All employers, including Defendants, must comply with 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act which bans employers from requiring employees to submit to medical examinations,

immunizations or vaccines, or treatments that have been funded by HHS research or innovative methods investments pursuant to 29 U.S.C. §669(a)(1) when the employee objects on religious grounds and provide any employee with an "automatic exemption" from any immunization,

60. The Covid 19 vaccine is a medical treatment or immunization/vaccine that was funded by HHS through the Rapid Response Partnership Vehicle (RRPV) Consortium designed to support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics.

61. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  See Exhibit 14

62. Between 2009 and 2020, neither the City nor Defendants have ever mandated any private sector employee to submit to any vaccine to prevent the spread of the H1N1 airborne communicable disease during the H1N1 Global Pandemic.

63. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See Exhibit 15

64. The HHS/FDA EUA approval of the experimental Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

65. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make any vaccines, in general, freely available to the general

public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See <u>Exhibit 16</u>

66. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment within any state, federal or municipal agency or for the private sector.

67. No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" to either remove recognized airborne hazards from the workplace atmosphere or to shield employees from exposure to any recognized airborne hazard in the workplace, including for the airborne Covid-19 hazard.

68. Immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not and are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccine shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See <u>Exhibit 13</u>  Affidavit of Expert Dr. Baxter Montgomery

69. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to obtain an exemption from any employer vaccine mandate.

70. Section 20(a)(5) of the OSH Act requires Defendants to provide an "automatic exemption" to employees who object to any immunization, medical treatment or examination on religious grounds.

**B. Facts Applicable to Plaintiff Loiacono Claims and Similarly Situated Plaintiffs**

71.    On June 23, 2022, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

72.    Notwithstanding the end of the state of emergency, on August 2, 2021, former New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of New York City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

73.    On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers to require private sector employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. (hereafter the Vaccine Order) See Exhibit 15

74.    The purposed of the NYCDOH Vaccine Order states as follows:

> "the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17109(b) of Administrative Code, the Department may adopt vaccination measures to effectively **prevent the spread of communicable diseases**;"

> "do hereby exercise the power of the Board of Health **to prevent, mitigate, control** and abate the current emergency"

75.    The Vaccine Order required, in summary, that all employers located in the City to mandate that their employees provide proof of vaccination against Covid-19 by December 27, 2021 and if an employee failed to provide proof of Covid-19 vaccination, the employer was required to "exclude from the workplace any worker".

76. On September 21 and 27, 2021, Plaintiff Loiacono received a work email from the Defendant Allied200 Board of Managers titled "Important Covid-19 Compliance" in summary requiring employees to where masks and that no masks were required on the 2nd Floor roof deck.

77. On or around October 14, 2021, SEIU Delegate Scott Cohen called Plaintiff Loiacono to verbally explain that a Covid-19 vaccination mandate could be implemented in the future and that there would be options available to him regarding his employment under the mandate. At no time during the call did Mr. Cohen disclose that the Union had entered into any previous agreements regarding any potential Covid-19 vaccine mandate. Exhibit 16

78. Unbeknownst to Plaintiff Loiacono, on September 30, 2021 the Union Defendant and Defendant Realty Advisory Board on Labor Relations, Inc. entered into an agreement on behalf of Plaintiff Loiacono's employer Allied200 that required all Defendant members of the RABLR to either: 1) place all employees who do not provide proof of vaccination by the Defendant's determined deadline on leave without pay (LWOP) for a period of months until they get vaccinated or obtain a religious exemption, if the Defendant approves of the exemption, or 2) be "separated" from their jobs if the employee does not elect a voluntary LWOP, but the separation would not be deemed voluntary nor a termination for misconduct. See Exhibit 17

79. Sometime on or around December 22, 2021, Allied200 Resident Manager, Joe Saljanin (Saljanin) inform Plaintiff Loiacono verbally that he was mandated to be vaccinated by December 27, 2021 in order to continue to work due to the City's Vaccine Order that set the December 27, 2021 deadline.

80. Joe Saljanin told Plaintiff Loiacono to get vaccinated to "make my life easier."

81. On December 22, 2021, Plaintiff Loiacono asked Saljanin and Union Del. Cohen how to make a religious exemption request and he was told to make the request to Allied200's HR Department.

82.    On December 22, 2021, Allied200's Board Member Bruce Gutkin asked Plaintiff Loiacono to leave the building to speak with him and told him to take the vaccine "for the greater good of society".

83.    Allied200's Board President Alex Freedman asked Plaintiff about his hesitation about getting the vaccine and gave his personal experience with getting the vaccine to try coerce Plaintiff Loiacono to take the Covid-19 vaccine.

84.    On December 22, 2021, Plaintiff Loiacono requested via separate emails to Union Delegate Cohen and Saljanin instructions on how to submit a religious exemption request and Union Delegate Cohen responded on December 24, 2021 that the City's Vaccine Order was law and that he could be terminated if Plaintiff Loiacono did not provide proof of vaccination by December 27, 2021. See Exhibit 18

85.    On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Allied200 Resident Manager Saljanin dated December 22, 2021 providing notice for the first time that under the New York City Department of Health Vaccine Order Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 and that religious exemptions did not change the mandate and that religious exemptions would only be granted based on Allied200 policy that required employees first provide a religious exemption letter from a religious institution on the organizations letterhead signed by the head of the religious institution. See Exhibit 19

86.    Also on Friday, December 24, 2021, Plaintiff Loiacono submitted via email to Allied200's Jaclyn Pagnotta, VP of Human Resources and to Union Delegate Scott a request for a religious exemption from the City's Vaccine Order enforced by Allied200 but the request was not on the letterhead of a religious institution because federal law does not require it in order for him to receive an exemption. See Exhibit 20

87. On December 24, 2021, Plaintiff Loiacono received an automatic reply email from Ms. Pagnatta stating that she was out of the office until Tuesday, December 28, 2021. See Exhibit 21

88. Shortly after receiving the "auto reply" email from Ms. Pagnatta, Plaintiff Loiacon called the number in the auto reply email to Amanda in her office and he called the Resident Manager and there was no answer.

89. On December 27, 2021, Plaintiff Loiacono showed up for work unvaccinated but wearing the required safety masks, believing that he would be notified that his religious exemption request would be granted; but instead Plaintiff Loiacono was verbally told by the Resident Manager Saljanin to leave the workplace because he was not vaccinated and did not have a religious exemption which he complied with.

90. Also, on December 27, 2021, Plaintiff Loiacon handed his Resident Manager Saljanin written document titled "Notice of Discrimination" just before he was instructed to leave his workplace building. See Exhibit 22

91. Allied200 did not grant Plaintiff Loiacono the OSHA "automatic exemption".

92. Plaintiff was notified by Ms. Pagnotta in a short phone conversation later on December 27, 2021 that his religious exemption was denied and she said that his request was denied because the request was not on a religious organization letterhead and "even if it where, because the job requires contact with the general public the only accommodation that could be given is a "leave without pay".

93. On or around December 28, 2021, the Allied200 Resident Manager called Plaintiff Loiacono back to the building to give him a form from the New York City Legal Department with instructions from the City Legal Department regarding religious exemptions and the circumstances when religious exemptions would be denied that the Resident Manager required Plaintiff Loiacono to sign. See Exhibit 28

94.    On January 11, 2022, Plaintiff Loiacono had another conversation with Ms. Pagnotta wherein she explained that Plaintiff Loiacono was instructed to leave his job. See telephone transcript of call at Exhibit 23

95.    Around January 18, 2022, Plaintiff Loiacono received a letter from Ms. Pagnotta at Allied200 that explained that Plaintiff Loiacono was placed on leave without pay and locked out of his job due to the New York City mandate and that Allied200 could not provide any other solution that would permit Plaintiff Loaicono to continue to work unvaccinated. See Exhibit 24

96.    Because Plaintiff Loiacono was locked out of his job, unable to work and his exemption from the City Covid-19 mandate agreed to be enforced by Allied200 was denied, Loiacono applied for unemployment benefits because he was locked out his job and effectively discharged.

97.    Defendant Allied200 objected to Plaintiff Loiacon's claim for unemployment benefits by reporting that he was terminated for "cause," which prevented him from receiving unemployment benefits despite the fact that Allied200 entered into an agreement with RABLR that any employee locked out from their job for refusing to take the Covid-19 vaccine would not be terminated for cause so that said employees could receive unemployment benefits. See Exhibit 25

98.    Rather than allow Plaintiff Loiacono to receive unemployment, Allied200 continued to coerce Plaintiff Loiacono to take the Covid-19 vaccine by sending him letters offering to allow him to return to his job if he takes the Covid-19 vaccine. See Exhibit 26

99.    Allied200 continued the coercive tactics by terminating Plaintiff Loiacono's MetLife Insurance around March 2, 2022, which should have been maintained since he was not yet terminated. See Exhibit 27

100.    During the July 15, 2022 New York State Unemployment Benefit hearing, Ms. Pagnatta VP for Allied admitted that Allied200 is responsible for complying with OSHA standards, regulations

and statutory requirements and that Allied200 Board ignored the OSHA statutory requirements. See  Exhibit 29Page 24

101.   In April 2020, near the start of the Covid-19 Pandemic, Ford Motor Corporation increased the manufacture of Powered Air Purifying Respirators (PAPR) to national distribution to employers to provide as OSHA approved safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne virus that causes the Covid-19 disease. See Exhibit 30

102.   OSHA along with NIOSH and the CDC approves of PAPRs as a method to shield employees from recognized airborne hazards.  Exhibit 31

103.   Under information and belief, Defendant Allied200 knew or should have known that the mandated Covid-19 vaccine did not meet the OSHA Respiratory standard method that requires workplace safety methods to either remove an airborne hazard from the air or shield workers and the public from exposure to any airborne hazard in the workplace and yet Allied200 still enforced the City's Covid-19 vaccine mandate despite the fact that the vaccine violated OSHA's minimum standards.

104.   Under information and belief, Defendants Allied200 and the City knew or should have known that the EEOC/Title VII and NYCHRL "undue burden" standard/regulation does not provide Defendant Allied with an exemption from complying with the requirement in OSH Act Section 20(a)(5), which provides an automatic exemption to any employee who refuses to take any immunization, including the new Covid-19 vaccine, treatment or examination administered through the research activities of the Secretary of Health and Human Services under 29 U.S.C. §669 Section 20(a)(1) based on religious grounds.

105.   Under information and belief, Defendant the City and Allied200 knew or should have known that the Vaccine Orders and Allied200's policy of enforcing an illegal Vaccine Order and

terminating employees for exercising OSHA rights violated the OSH Act and were preempted by the OSH Act pursuant to 29 U.S.C. §667 Section 18(a).

106. Under information and belief, Defendants the Union, RABLR, Ms. Pagnatta, Howard Rothschild, Hector Figueroa, Eric Hadar and Alex Freedman knew or should have known that: 1.) the Vaccine Orders were preempted by the OSH Act; 2) the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method; 3) Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations.

107. Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act standards, regulations and statutory rights for employees under Section 20(a)(5) and knew the OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid-19 vaccine – pursuant to Section 20(a)(5) of the act.

108. Under information and belief, all Defendants similarly situated to Allied200, the Union, RABLR, knew or should have known that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act  standards, regulations and statutory provision pursuant to Section 20(a)(5) of the act.

109. All Plaintiffs similarly situated to Plaintiff Loiacono were denied their request for exemption from the Vaccine Order and were either terminated, put on LWOP and/or locked out or prevented from entering their workplaces to perform their jobs because they exercised their right to refuse the Covid-19 vaccine.

110. Under information and belief, some Plaintiffs were granted exemptions from Defendants from complying with the Vaccine Order from their respective employers,

111. Under information and belief, all Locked Out Plaintiffs and some Coerced Plaintiffs were "locked out" of their jobs by their respective Defendants when they were told not to return to their jobs and prevented from returning to their jobs to perform their jobs because they refused to be vaccinated based on religious or non-religious grounds for abstaining from the Covid-19 or based on a medical reason. See *Fownes Bros. & Co., Application of*, 204 N.Y.S.2d 998, 25 Misc.2d 349 (N.Y. Sup. Ct. 1960) (held that: Lockout is defined as, a proceeding by an employer of labor the purpose of which is to bring his employees to his terms by shutting off their employment and persuading other employers engaged in a similar business not to employ them thereby forcing them to return to work for him on his terms.")

112. Under New York law, Plaintiffs on LWOP are deemed to be discharged from employment because they ceased to be able to engage in work activity according to the New York Court of Appeals in the case *McGinnis v. Bankers Life Co., Des Moines, Iowa*, 334 N.Y.S.2d 270 (N.Y. App. Div. 1972)

113. Sometime after October 2022, all Defendants failed to automatically reinstate their respective Plaintiffs to their jobs after the Covid-19 Pandemic and New York City state of emergency was declared over.

114. All Defendants knew or should have known that the enforcement of the City's Vaccine Orders and terminations and/or lock outs without pay of their respective Plaintiffs also violated the New York City Human Rights Law which bans "quid pro quo" illegal conditions of employment, wherein Plaintiffs were coerced by Defendants to submit the Covid-19 vaccine by threats of t job terminations.

115. The acts complained of herein were carried out by the aforementioned individual defendants in their official capacity with actual/or apparent authority and in their individual capacity.

116. According to Federal public records published by FederalPay.org from data provided by the Small Business Administration as of June 30, 2023, Defendant Allied Partners Residential Management LLC received $1,435,500 in Covid-19 Pandemic Federal Paycheck Protection Program (PPP Funds) funds for the purpose of saving 103 jobs, yet Plaintiff Loiacono was locked out and terminated from his job for exercising his fundamental federal and constitutional rights.

117. Defendant Allied Partners Residential Management received additional Pandemic PPP Funds in the amount of $1,213,578 for the purpose of preserving 63 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

118. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,200 to preserve 25 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

119. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,345 to preserve 17 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

## FIRST CAUSE OF ACTION

**(Federal Declaratory Judgement Act 28 U.S.C. §2201)**
**Permanent Injunctive Relief**

120. Plaintiffs realleges and incorporates by reference Paragraphs 1-118 of this Complaint as if fully set forth herein.

121. 28 U.S.C. §2201(a) provides that "in a case of actual controversy …..in any civil action …..any court of the court of the United States…..may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought….

122. Plaintiffs has a controversy with Defendants regarding their rights to: 1) refuse pursuant to the OSH Act, the First Amendment Free Exercise Clause and the Fourteenth Amendment substantive due process clause to submit to and/or provide proof of vaccination against the virus that causes the Covid-19 disease which causes serious injury or death; and 2) Plaintiffs' right to obtain remedy pursuant to the OSH Act under 29 U.S.C. §660 Section 11(c)(1)&(2).

123. Defendants have mandated and enforced either: 1) their own requirement that their respective Plaintiff employees submit to and provide proof of vaccination against the virus that causes the disease called Covid-19, and/or 2) the Defendant City's Vaccine Orders and have either terminated, locked out or placed on LWOP their respective Plaintiffs because Defendants all believe that Plaintiffs have no right to refuse to provide proof of Covid-19 vaccination or that Plaintiffs right to refuse is preempted by Defendants right to deny providing Plaintiffs an automatic based on Defendants egregiously erroneous application of Title VII "undue burden" case law to a workplace safety matter exclusively governed by the OSH Act.

124. Plaintiffs request this Court pursuant to the Federal Declaratory Judgement Act 28 U.S.C. §2201 to declare Plaintiffs rights, specifically the right to refuse immunizations and vaccines, including the Covid-19 vaccine on religious grounds under Section 20(a)(5) and the right to be free from wrongful termination pursuant to Section 11(c)(1)&(2) of the OSH Act along with the right for all Plaintiffs to choose one's own medical treatment for religious and non-religious grounds under the Constitutions Fourteenth Amendment substantive due process clauses.

125. Plaintiffs seek a declaration that state, municipal and private sector employers must grant any employee who requests an "automatic exemption" from any immunization/vaccines, medical

treatment, or medical exam pursuant to Section 20(a)(5) of the OSH Act or for non-religious reasons under the substantive due process clause of the Fourteenth Amendment, or pursuant to the OSHA preemption clause in Section 18 , so long as an employees right to refuse is not declared a crime by the any state or the federal government.

126. Plaintiffs further requests the Court to declare Plaintiffs right to sue Defendants pursuant to Section 11(c)(1)&(2) under the OSH Act and to obtain all appropriate relief available.

127. The federal government regulates employee safety through the Occupational Safety and Health Act of 1970 (OSH Act), which is administered by Occupation Safety and Health Administration (OSHA). See 29 U.S.C. §§651-78.

128. The OSH Act authorizes the Secretary of Labor to promulgate federal occupational safety or health standards, id. § 655, that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment. § 652(8).

129. OSH Act §18b expressly pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan, or any state or private employer can seek a variance to an existing standard for an experimental proposed standard, so long as the experimental variance is as effective as the existing standard. See 29 U.S.C. 655-Section 6(b)(6).

130. The OSH Act provides a standard and regulation for airborne hazards, specifically for communicable diseases through the Personal Protective Equipment standard (29 CFR 1910.132) and Respiratory Protection standard (29 CFR 1910.134) which provide protection for workers when exposed to contact, droplet and airborne transmissible infectious agents; and OSHA's TB compliance directive which protects workers against exposure to TB through enforcement of

existing applicable OSHA standards and the General Duty Clause of the OSH Act (collectively "Infectious Disease Standards").

131. The existing OSHA Infectious Disease standards apply to the City through the approved New York State Plan approved in 1984.

132. The New York State Plan does not cover standards for Infectious Respiratory Diseases and therefore the State of New York has not taken responsibility for setting standards for any infectious disease including respiratory diseases. See State Plan Standards at 12 NYCRR Part 800.6, 800.7, 800.5, 801 and 820.[6]

133. Because the Respiratory Standard and General Duty Clause are broadly written, they apply to the Covid-19 virus because it is an airborne hazard in the workplace and the existing Respiratory Standards applies specifically to Covid-19, including all variants and new novel airborne diseases.

134. The City's Vaccine Order expressly states that it directly, substantially, and specifically regulates occupational safety and health for City and private employees, and therefore, the Order is an occupational safety and health standard, albeit an illegal standard that violates the OSH Act, within the meaning of the OSH Act despite the fact that the Order says it is for the benefit of the general public.

135. The City's Vaccine Order also conflicts with the methods by which the OSHA standards control airborne infectious diseases because the Covid-19 vaccine does not eliminate an employee's exposure to nor remove the Covid-19 airborne viral contaminant from the atmosphere in the workplace, which is the sole objective and method of the OSHA Respiratory standard which is a workplace environmental protocol to works on the outside of the employees' body to keep them

---

[6] See New York State Plan Codes, Rules and Regulations at https://dol.ny.gov/system/files/documents/2021/03/part801-805.pdf

safe. See *International Paper Co. v. Ouellette*, 479 U. S. 481, 494 (1987). (Held that "state law is pre-empted when it conflicts with the method by which the federal statute was designed….").

136. The Vaccine Order implement a "medical treatment" that is injected into the body of employees that effects the employee's natural immune system but does nothing to shield the employee from exposure to any airborne viral contaminant, specifically the airborne virus that causes Covid-19.

137. The Covid-19 vaccine as a medical treatment does not meet the "minimum safety standard" requirements to be an approved "method" that can prevent the exposure to airborne respiratory communicable diseases under the OSHA regulations and is therefore preempted by the OSH Act standards and regulations.

138. The Vaccine Orders also conflict with general scheme of the OSHA Act, which was to place a non-delegable duty on employers to create safe workplaces to retain employees.

139. On May 18, 2021, a New York State agency adopted the OSHA Respiratory standard 29 CFR 1910.134, and lists Powered Air Purifying Respirators (PAPRs) as an engineering safety device, which could have been adopted and implemented by all Defendants in order to provide PAPRs to employees who refused to take the Covid-19 on religious grounds or to employees who could not perform their jobs remotely. See Exhibit 32  - Directive 4068 dated 5/18/2021[7]

140. Based on the foregoing, Plaintiffs seek a declaratory judgement pursuant to 28 U.S.C. §2201 based on the jurisdiction granted this United States District Court in Section 11(c)(2) to "order all appropriate relief" which shall include determining that City's Vaccine Orders are preempted by the OSHA Act and are therefore void and Plaintiffs seek a permanent injunction prohibiting the City from enacting any future Vaccine Mandates applicable to private sector employers in violation of the OSH Act.

---

[7] See May 18, 2021 New York State Directive 4068 at https://doccs.ny.gov/system/files/documents/2021/05/4068.pdf

141.    Plaintiffs seek permanent prospective injunction against all Defendants to forever ban private sector Defendant employers from ever enforcing any future vaccine/immunization, medical treatments or medical exams implemented by any state or municipality or pursuant to a Defendants own internal policy that violates the strict prohibition against denying an employee's right under Section 20(a)(5) of the OSH Act.

142.    Plaintiffs also seeks a declaratory determination that the *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) decision regarding the power of states and municipalities to mandate vaccines or immunization under its police power has also been overruled by federal regulations that decriminalized the act of refusing state compulsory vaccine, specifically by the OSH Act and 1944 Public Health & Welfare Act, and declare that all employees have the right to choose and refuse their medical treatment under the substantive Due Process Clause of the Fourteenth Amendment and as held by the U.S. Supreme Court in *Jacobson* court and the *Cruzan.*[8]

143.    Plaintiffs also seek a declaration that "remote work" is an OSHA authorized safety method that protect employees from exposure to airborne hazards in the workplace, including the airborne hazard of the Covid-19 virus.

144.    Plaintiffs also seek a prospective injunction that requires all Defendants to provide written notice, approved by this Court, to all employees of their right to refuse immunization/vaccines, medical treatment and medical exams pursuant to 29 U.S.C. §669 Section 20(a)(5) of the OSH, , so long as the right to refuse is not criminalized by any federal or state law,  and provide all employees written notice of the right to bring a private right of action or an action with the Secretary of

---

[8] *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (held – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process) *Jacobson* (held that "the inherent right of every freeman to care for his own body and health in such way as to him seems best……But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint…….This court has more than once recognized it as a fundamental principle….")

OSHA pursuant to 29 U.S.C. §660 Section 11(c)(1)&(2) of the OSH Act (collectively "OSHA Rights") and said notice shall be provided to all employees within 15 business days of any Court order to this effect.

**SECOND CAUSE OF ACTION**
**(Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1)&(2)**

145.  Plaintiffs realleges and incorporates by reference Paragraphs 1-135 of this Complaint as if fully set forth herein.

146.  Plaintiffs have a federal statutory right under the OSH Act 29 U.S.C. §669 Section 20(a)(5) to refuse any examination, treatment or immunization, which includes the Covid-19 vaccine and to be free from wrongful discharge for exercising that right pursuant to 29 U.S.C. §660 Section 11(c)(1).

147.  Defendants denied their respective Plaintiffs the OSH Act right to an automatic exemption when an exemption was requested by each Plaintiff and each Defendant subsequently terminated their respective Plaintiff employees for refusing to provide proof of Covid-19 vaccination or placed Plaintiffs on LWOP or locked out Plaintiffs from their jobs and pay for refusing to provide proof of vaccination.

148.  Some Defendants granted some Plaintiffs an automatic exemption, but still locked them out of their jobs as instructed by the Vaccine Order and refused to pay these Plaintiffs while they were locked out.

149.  Some Plaintiffs requested an exemption from Defendants enforcement of the Vaccine Order or from Defendants own internal Covid-19 vaccine mandate, but when Defendants denied the exemption, certain Plaintiffs feared the loss of income and subsequently provide proof of Covid-19 vaccination after being coerced and harassed by the threat of loosing their pay.

150. The City by and through the Mayor and NYC-DHMH Commissioner in their official capacity caused Plaintiffs to be wrongly discharged by mandating that Defendant Allied200 and other Defendants to either terminate or locked out Plaintiffs from their jobs pursuant to the Vaccine Orders in violation of the OSH Act Section 11(c)(1) for exercising Plaintiffs right refuse the Covid-19 immunization/vaccine guaranteed by OSH Act Section 20(a)(5), the First Amendment Free Exercise and Fourteenth Amendment due process clauses and alternatively by Title VII.

151. Defendants agreed with and enforced the City's Vaccine Order mandate based on each Defendants policy to comply with the City's illegal workplace safety Vaccine Order and to ignore the OSHA mandates and each Defendant terminated and/or locked out their respective Plaintiffs from their jobs in violation of Section 11©(1) of the OSH Act.

152. As a result of the foregoing, Plaintiffs are entitled - pursuant to 29 U.S.C. §660 Section 11(2) of the OSH Act - to reinstatement to the positions Plaintiffs held before the discharge or to a similar position with the same title and job description and seniority and tenure, backpay from the date Plaintiffs were locked out, compensatory damages including, but not limited, emotional distress injury, to lost monetary retirement benefits, unemployment benefits and lost retirement years, vacation, sick and personal leave pay, removal of negative report in their employee file other consequential damages sustained by each of the Plaintiffs as determined by a jury.

153. Plaintiffs are further entitled to punitive damages pursuant to Section 11(c)(2) of the OSHA Act jointly and severally against Defendants plus reasonable attorney's fees, costs and interest under the appropriate federal or state interest rate. See *Reich v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187, 1190 (1st Cir. 1994)

**SECOND CAUSE OF ACTION**
**(Wrongful Discharge in Violation of Title VII of the 1964 Civil Rights Act – 42 U.S.C. §20000(d) + (e) et. seq. Under Color of Law pursuant to 42 U.S.C. §1983)**

**Alternative Claim**

154. Plaintiffs realleges and incorporates by reference Paragraphs 1-144 of this Complaint as if fully set forth herein.

155. Plaintiffs have a federal statutory right under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §20000(e-2) et. seq. ("Title VII") to be free from unlawful discharge with respect to compensation, terms, conditions, privileges of employment because of Plaintiffs religious practice, including the practice of refusing immunization, including the Covid-19 vaccine based on religious grounds.

156. The conduct by and through the City of enacting the illegal Vaccine Order that was agreed to and enforced by all Defendants deprived Plaintiffs of the rights, privileges and immunities guaranteed under Title VII to be free from wrongful discharge for exercising their First Amendment Free Exercise right of refusing Covid-19 vaccination.

157. By reason of the wrongful discharge of Plaintiffs for exercising their religious practice of refusing the Covid-19 vaccine, Plaintiffs are entitled to compensatory, consequential and equitable relief available under Title VII.

158. Defendants, the City, collectively and individually, while acting under color of municipal law, which included, but not limited, to the enactment of Vaccine Order that violates the OSH Act standards and which resulted in the wrongful discharge of Plaintiffs pursuant to a custom, usage, practice, procedure, or rule of the City to fine private sector employers for failing to comply with a City order, which threat of a civil fine against the private sector employer Defendants resulted in Defendants either terminating or locking out employees who refused to provide proof of Covid-19 vaccination.

159. The custom, policy, usage, practice, procedure and rule of the City included the instruction employers in the City to deny religious exemption requests and to block or lock unvaccinated employees from their physical workplaces which resulted in the unlawful discharge of Plaintiffs. See Exhibit____, page 18 of the Transcript)

160. The Commissioner for the City's Department of Health is responsible for issuing public health regulations for the City through the Commissioner's power authorized under N.Y. Public Health Law 206 – Commissioner; General Powers and Duties.

161. The Commissioner is the final policymaker for the issuance of public health regulations for the City.

162. The City's previous Commissioner in 2021 in his official capacity under color of law pursuant to PHL §206 issued the Vaccine Orders that caused Defendants to terminate or lock out Plaintiffs starting December 27, 2021 for refusing to submit to the Covid-19 Vaccine Orders based on religious grounds in violation of the First Amendment. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (Held in summary that government officials performing discretionary functions are not shielded from liability for civil damages if their conduct "violate clearly established …. constitutional rights which a reasonable person would have known".)

163. The City is, therefore, liable for the acts of the Commissioner in the issuance of the Vaccine Orders that caused Plaintiffs to be place on involuntary leave without pay (discharged) for exercising their right to refuse to take the Covid-19 vaccine for religious ground in violation of the First Amendment, the Fourteenth Amendment substantive Due Process clauses and the OSH Act Section 11(c)(1)&(2) and Section 20(a)(5).

164. Defendants had no compelling reason for requiring its employees to disclose details of their religious beliefs, or for requiring a clergy letter in order to grant Plaintiffs automatic exemption from the Covid-19 Vaccine Order provided under OSH Act Section 20(a)(5).

165. Defendants enforcement of the City's illegal Covid-19 Vaccine Order along with Defendants practice of refusing the OSHA automatic exemption and the termination and/or lock out of Plaintiffs for refusing to submit to the City's Vaccine Orders based on religious grounds interferes and places a substantial burden on the religious practices of Plaintiffs, specifically their Free Exercise right to abstain from taking the Covid-19 vaccine and remain working based on religious grounds.

166. Defendants practice and conduct violates Plaintiff's right to the free exercise of religion, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment and protected by the OSH Act at Section 20(a)(5) and Section 11(c)(1).

167. Defendants, including individually named Defendants, practice of denying any other request for exemption from the Covid-19 vaccine be it medical or non-religious grounds from Plaintiffs and discharging Plaintiffs or any employee for refusing to take the Covid-19 vaccine or provide proof of vaccination violates Plaintiffs and all employee's right to choose or refuse their medical care which is guaranteed to all competent U.S. citizens under the Fourteenth Amendment substantive Due Process Clause and held by the U.S. Supreme Court in the *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) and in the *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990) cases.

168. RABLR knew or should have known that the agreement it entered into with the Defendants and Union violated the OSH Act.

169. The City's Vaccine Order was invalid on the date it was executed because it was preempted by the OSHA Act; and, therefore, the City had absolutely no government interest for enforcing the Vaccine Orders on Allied200 and other Defendant private sector employers and all Defendants should have and could complied with the existing OSH Act Respiratory standards and regulations

36

that would have allowed Plaintiffs to either continue to work remote or provide Plaintiffs with the appropriate PAPR safety equipment so that Plaintiffs could continue to work in a safe workplace .

170. Neither the City nor any Defendants have obtained a variance from OSHA approving the Covid-19 vaccine as a necessary method for the safety of others.

171. As a direct and proximate result of the City's enforcement of its preempted, invalid and unauthorized workplace safety standard in violation of the OHA Act, Plaintiffs have suffered injuries and damages, including loss of pay since December 27, 2021, lost of retirement credits, for some of Plaintiffs and other class members, loss of unemployment benefits, damage to their employment record and emotional distress damages.

172. Defendant Allied200 and other Defendants knew or should have known that the City's Vaccine Orders were illegal yet Defendants agreed to enforce the City's Vaccine Orders and failed to provide the automatic exemption or even a Title VII exemption when Allied200 and all Defendants knew and should have known that Defendants have a strict duty to comply with the OSHA Respiratory Standards by providing Plaintiffs either remote work or a PAPR in order to continue to work and that the Title VII "undue burden" exception did not provide an excuse for Defendants' compliance with the OSHA Respiratory standards and regulations.

173. Defendants failure to reinstate respective Plaintiffs into their jobs or similar job since the City's Vaccine Order was repealed and continued denial of other employment benefits constitutes willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed against all Defendants and individual Defendants joint and severally.

174. Defendants were willful participants in joint and significant activity with the City by enforcing an illegal mandate, which the City threated to fine and/or sanction Defendants for non-compliance with the City's Vaccine Order which joint activity caused Defendants to use "compulsion and coercion" against the Plaintiffs by terminating or locking out Plaintiffs from their jobs pursuant to

37

the City's Vaccine Order. See  *Bruette v. Human Society of Ventura County*, 294 F.3rd 1205 (9th Cir. 2002), see *Lee v. Katz*, 276 F3d 550,554 (9th Cir. 2002) and see *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)

175.    The City and Allied200 along with all Defendants had a "meeting of the minds" to violate Plaintiffs OSH Act rights along with Plaintiffs rights under the First Amendment Free Exercise and Fourteenth substantive due process clause which provide Plaintiffs the right to be to refuse and choose Plaintiffs own medical treatment. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F2d 1539, 1546-47 (9th Cir. 1989)

176.    As are result of Defendants agreement to enforce the City's Vaccine Orders all Plaintiffs were locked out of all jobs in the City as Plaintiffs could not find any job in the City because of this conspiracy to coerce Plaintiffs to take the Covid-19 vaccine.

177.    Under information and belief, the City sent to Defendant Allied200 and all Defendant employers in the City instructions on how to deny employees their OSHA and First and Fourteenth Amendment rights to refuse to take or provide proof of Covid-19 vaccination. See Exhibit _____

### THIRD CAUSE OF ACTION
**(Religious Coercion Discrimination)**
**New York City Human Rights Law - Administrative Code §8-107(3) & §8-109(a)(f)(i)**

178.    Plaintiffs realleges and incorporates by reference Paragraphs 1-168 of this Complaint as full set forth herein.

179.    Because the City's Order was preempted by the OSHA Act, the City had no authority to require Allied200 or any other Defendants to enforce to the City's Vaccine Orders.

180.    Defendants agreement and/or meeting of the minds with the City to violate Plaintiffs rights protected by the City's Human Rights Law (CHRL) constituted discrimination pursuant to the NYCHRL

Administrative Code § 8-107 Subdivision (3)(a), which states that, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer …… to:

> impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage," CHRL § 8-107 [1] [a] [3].

181. Defendant Allied200 and all other similarly situated Defendants had no authority to refuse any respective Plaintiffs their automatic exemption under the OSH Act nor to require Plaintiffs to disclose the details of their religious practices or require a clergy letter as a pre-condition for them receiving an exemption from the illegal Vaccine Order or as a pre-condition for receiving the OSH Act right to either work remotely or to receive safety equipment, like the PAPR, violated the NYCHRL.

182. Defendants investigation into Plaintiffs religious practices and denial of their request for an exemption from the Vaccines Orders was intended to unlawfully harass and coerce Plaintiffs to violate or forego their religious practice of abstaining from taking the Covid-19 vaccine, when the OSHA Act provided more than adequate safety provisions that did not require Plaintiffs compliance Vaccines Orders.

183. Defendants also intentionally failed to train and inform Plaintiffs of their OSH Act right to work remote or to receive safety equipment, like the PAPR, so that Plaintiff would not file complaints with OSHA and so that Defendants could continue to harass and coerce Plaintiffs to violate their religious practice of abstaining from taking the Covid-19 vaccine.

184. Defendant Allied200 and other Defendants act of either terminating or placing Plaintiffs on involuntary leave without pay and/or locking them out of their jobs because of Plaintiffs religious practice of abstaining from taking the Covid-19 vaccine was for the purpose is coercing and harassing

Plaintiffs to give up on their religious practices was extreme and outrageous conduct intentionally or with reckless indifference to Plaintiffs to right to practice their religious practice.

185. Defendant Allied200's act of denying Plaintiff Loiacono his unemployment benefits also amounts to intentional harassment and extreme and outrageous conduct in reckless disregard for Loiacon's right to refuse to take the illegal Covid-19 vaccine.

186. Defendants intentional harassment and discriminatory adverse action listed above have caused Plaintiffs severe emotional distress in violation of New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled "Unlawful Discriminatory Practices."

187. On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[9] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

> Employers must **not discriminate against** or **harass employees** with actual or perceived infection with COVID-19, or based ……..on the presumption that they …….are more likely to contract COVID-19 due to …..**religion** or another protected status.    (See "Guidelines attached Exhibit 27)

188. Even after the City's Human Rights Commission issued the anti-harassment and discrimination guidance, Defendants failed to reinstate Plaintiffs and/or kept Plaintiffs on involuntary leave without pay, locked out and, and/or denied Plaintiffs unemployment benefits.

189. Under information and belief, Plaintiffs were not given the opportunity to engage in "Cooperative Dialogue" with the Defendants as required by CHRL §8-102, wherein the City made a "good faith" effort either in writing or oral dialogue to discuss with Plaintiffs the available rights to remote work or receive safety equipment pursuant to OSH Act standards.

190. Because the City's Vaccine Orders violated the OSH Act and all Defendants had a duty to provide either remote work or provide OSHA approved safety equipment to Plaintiffs so they could continue

---

[9] See all amendments to the CHRL at https://www1.nyc.gov/site/cchr/law/amendments.page

to work, the Defendants could not claim "undue hardship" as an excuse for failing to comply with the existing OSH Act standards as permitted under the NYCHRL.

## CLASS ALLEGATIONS

191.    Plaintiffs realleges and incorporates by reference Paragraphs 1-167 of this Complaint as if fully set forth herein.

192.    Class representative Plaintiff Loiacono, seeks class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of himself and all private sector employees who worked or works for employers within the City similarly situated (hereinafter the "Class")

193.    The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

194.    The Class claims raise numerous common questions of fact or law, including, but not limited to:

   a.    Whether the Vaccine Orders are preempted by the OSH Act because the Vaccine Order specifically violates the OSHA minimum standard for preventing exposure to airborne communicable diseases;

   b.    Whether the wrongful discharge and/or lockout of Plaintiffs for refusing to take the Covid-19 vaccine based on religious and non-religious grounds violates the OSH Act, Title VII, the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

195.   Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy because there are no material issues of fact in dispute and only issues of law predominate the claims.  There is no dispute that all Defendants terminated and/or locked out their respective Plaintiffs employees due to their unvaccinated status based on religious and/or non-religious grounds in violation of the OSH Act, or alternative in violation of Title VII and pursuant to the NYCHRL.

196.   The claims of the named Plaintiff are typical of the claims of the class in that the named Plaintiffs and class members claim that their right refuse to comply with the Covid-19 Vaccine Order or Covid-19 vaccine mandated enforced by Defendants and subsequent termination or lock out of their jobs was willful or a reckless disregard for their rights protected by federal and constitutional law warrantying punitive damages against the Defendants jointly and severally.

197.   The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

198.   Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as class members and there is no need to a review of the individual facts or circumstances around each Plaintiffs job and the facts regarding each Plaintiffs termination or lock-out because the conclusions of law are determinative for each cause of action and not the facts surrounding the terminations or lockouts.

## CLASS ALLEGATIONS

11. Plaintiffs realleges and incorporates by reference Paragraphs 1-284 of this Fourth Amended Complaint as if fully set forth herein.

12. Class representative Plaintiffs, seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

13. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

14. The Class claims raise numerous common questions of fact or law, including, but not limited to:

15. Whether the Vaccine Orders are preempted by OSHA standards because the Vaccine Orders specifically targets City employees and not a larger public health goal;

16. Whether the Wrongful Discrimination of Plaintiffs for refusing to take the Covid-19 vaccine based on religious grounds violates the OSH Act, the First Amendment Free Exercise and Fourteen Amendment substantive Due Process liberty right pursuant to  42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

17. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3). The common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

18. The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by City's reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards and subsequent denial of their right to exercise their religious practice of abstaining from the Covid-19 vaccine and keep their job in violation of the First Amendment and the New York City Human Rights Law.

19. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

20. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay due to their refusal to submit to the Vaccine Orders

## PRAYER FOR RELIEF

199. Declaratory judgement and prospective injunctive relief pursuant to 28 U.S.C. § 2201(a), declaring that:

    a. All Defendant employers, including but not limited, to private employers as well as the City are precluded from mandating immunizations/vaccines, including the Covid-19 vaccine, now and in the future, as a condition or pre-condition of employment or as condition for receiving employment benefits and all Defendants are enjoined from discharging or locking out any employee for refusing any immunization/vaccine, medical treatment or medical exam, including the Covid-19 vaccine pursuant to Section 20(a)(5) and Section 11(c)(1), so long as the refusal of any immunization/vaccine, medical treatment or medical exam is not a crime under state or federal law;

    b. all competent citizens have the right to choose their own medical treatment to reduce the risks associated with any communicable disease, including but not limited to the right to choose plant-based lifestyle medical treatments, herbal or plant-based or non-pharmacological medical intervention so long as the medical intervention is not a crime under state or federal law; and

c. declaration that the Vaccine Order is preempted and is void and all agreements obtained by a Defendant any Plaintiff employee related to the Vaccine Order or any Defendant's Covid-19 vaccine mandate, like employee waivers of their rights to backpay or compensatory damages are also void; and

d. pursuant to 29 U.S.C §669 Section 20(a)(5) all employees have an absolute right to obtain a religious exemption from an employer who requires any immunization, medical examination or medical treatment so long as the refusal does not violate any state or federal criminal law.

200. Injunctive relief ordering that the Defendants are barred from:

a. continuing to withhold compensation from Plaintiffs owed to them or which should have been paid to Plaintiffs since the date that each Plaintiff was placed on leave without pay until the day Plaintiffs return to work as ordered herein;

b. continuing to withhold or preventing Plaintiffs from receiving that portion of unemployment benefits paid by Plaintiffs that should have been paid to Plaintiffs while on leave of absence our locked out without pay;

c. withholding OSHA authorized safety precautions, including but not limited to "remote work" at home, safety engineering precautions like class room air purification systems, safety equipment like Powered Air Purifying Respirators (PAPR) or any other safety method authorized by the OSHA regulations to prevent employee exposure to airborne viral hazards in the workplace, if necessary; and

d. Defendants shall pay Plaintiffs all backpay owed from the date they were placed on leave without pay or locked out, to Plaintiffs counsel of record within 21 business days of any Court order to pay backpay.

201. Pursuant to Plaintiffs OSH Acct Section 11(c)(2), claim, Section 1983 claims, 29 USC §185  and

New York City Human Rights Claims, Plaintiffs also seek damages in the form of:

a. loss payments into any retirement fund and reinstatement of loss time into retirement calculation;

b. expungement of discipline codes from each employee's personnel file and records;

c. mental and emotional distress damages;

d. punitive damages against Defendants and individual Defendants as appropriate an amount to

e. interest on any compensation pursuant to applicable law;

f. attorney fees and costs; and

g. any other remedies allowed by law

Dated: January 18, 2025                                  Respectfully submitted,


/s/ *Tricia S. Lindsay, Esq.*
Law Office of
Tricia S. Lindsay, PC
531 E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552

**Mailing Address:**
P.O. Box 88
White Plains, NY 10602
Phone: (347) 386-4604
(347) 349-5433
Email: Tricialindsaylaw@gmail.com
attorney@tricialindsaylaw.com
www.tricialindsaylaw.com

# EXHIBIT B

Amended Complaint – ECF #16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

       Plaintiffs,

   v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST
79TH STREET LLC, REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC., SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU) LOCAL 32BJ,
JACLYN PAGNOTTA AND DOES 1-20

       Defendants

| |
|---|
| AMENDED COMPLAINT (Proposed Class) |
| AND JURY DEMAND |
| INDEX: 1:25-cv-00330-AMD-JAM Assigned: Magistrate Joseph A. Marutollo |

_____

## INTRODUCTION

1.   This is a civil rights wrongful discharge and discrimination action brought by Plaintiff John Loiacono in his individual capacity and on behalf of any other class of private sector workers (collectively Plaintiffs – individually and collectively) pursuant to 29 U.S.C. §660 Subsection 11(c)(1)&(2) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the Plaintiffs discharge by Defendants Allied Partners Management LLC (APM), 200 East 79th Street LLC (200E), Realty Advisory Board on Labor Relation, Inc. (RAB) and the Service Employees International Union Local 32BJ (SEIU-32BJ) (hereinafter collectively "Defendants") who conspired to deny Plaintiff his statutory and Constitutional right to object to taking the Covid-19 vaccine/immunization on religious grounds, which is a First Amendment Free Exercise and 14th Amendment substantive right protected by OSH Act under 29 U.S.C. §669 Subsection 20(a)(5) (collectively "Statutory & Constitutional Rights) for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2. This action is also brought pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act against Defendants as private sector employers who conspired and/or agreed under color of government municipal law passed by the City of New York to deprive Plaintiff of his statutory and Constitutional Rights to choose his own medical treatment as declared by the U.S. Supreme Court in the Jacobson v. Massachusetts, 197 U.S. 11, 26 (1905)[1] and in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990).[2] Private actors are treated as "state actors," when private actors either: 1) conspire with state actors, in this case to commit the crime of fraudulently concealment of Plaintiffs rights; or 2.) state compels private action through fines, or 3) perform actions that are exclusively state/government sovereign powers to deprive citizens of fundamental rights – essentially private actors serve as "sock-puppets" to do what the government knows it cannot get away with.

3. This action is also brought pursuant to Section 301 of the National Labor Relations Act, 29 USC §185 for the SEIU Local 32BJ's failure to represent Plaintiff by entering into an agreement with Co-Defendants that bargained away Plaintiffs Statutory & Constitutional Rights and said bargained agreement is not an authorized bargainable matter by the SEIU Local 32BJ pursuant to National Labor Relation Act.

4. Plaintiff also seeks punitive damages against Defendants, including Jaclyn Pagnotta, for their willful disregard of the rights of Plaintiff Loiacono by fraudulently concealing Plaintiffs OSHA right to refuse the Covid-19 vaccine and right to file a claim against Defendants with the OSHA Secretary within the 30 days as permitted under the OSH Act under 29 USC §660 Sec. 11(c)(2) and pursuant to Section 1993.  See *Reich v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187, 1190

---

[1] Held: That every person has "the inherent right of every freeman to care for his own body and health in such way as to him seems best…. liberty secured by the Constitution of the United States to every person within its jurisdiction."
[2] Cruzon: held –("we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)

(1st Cir. 1994) (Held, in summary that punitive damages are available under the OSH Act) Defendants collectively agreed and conspired to pressure Plaintiffs to take the illegal Covid-19 vaccine by threatening their jobs, telling them they don't care about the health of the general public for refusing the Covid-19 vaccine, and ultimately collectively agreeing to terminate their respective Plaintiffs for refusing the Covid-19 vaccine and Defendants have agreed to maintain a policy to not hire new employees who are unable to provide proof of Covid-19 vaccination.

## JURISDICTION AND VENUE

### A. Jurisdiction

5.  This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccine Orders, as well as original jurisdiction pursuant to Section 11(c)(2)[3] of the OSH Act (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief" for the wrongful discharge of employees in violation of OSH Act Section 11(c)(1), which includes wrongful discharge of an employee who exercises their right to refuse immunization/vaccines, medical treatments or medical exams on religious grounds pursuant to Section 20(a)(5) of the OSH Act and violations pursuant to Section 1983;

6.  Since this action deals with the violation of a CBA and seeks an interpretation thereof, subject matter jurisdiction is proper under § 301 of Labor Management Relations Act ("LMRA"). 29

---

[3] Prior decisions by the approximately 200 other federal courts, including decisions by the United States Court of Appeals for the Second Circuit, do no prohibit Plaintiffs claims under Section 11(c)(1) and (2) of the OSH Act because all of those cases involved claims for either: 1) personal injuries caused by an employer's violation of an OSHA safety standard or regulation promulgated by the OSHA Secretary; or 2) wrongful termination of an employee by an employer in retaliation for the employee reporting an employer's safety violation and none of the prior cases involved claims that an employer wrongly terminated an employee for exercising their OSHA congressionally enacted statutory right to refuse immunization, medical treatment or a medical exam on religious grounds pursuant to Section 20(a)(5) of the OSH Act at 29 U.S.C. ¶669, which statutory right was enacted to protect all employees fundamental First Amendment Free Exercise right to refuse or choose their own medical treatment based on their religious or belief practices.

U.S.C. § 185. Additionally, this action seeks recovery of costs and fees incurred due to the unfair labor practice committed by Local 150 in violation of § 8(b) of the National Labor Relations Act ("NLRA") 29 U.S.C. § 158(a)(3) and (b)(2).

7.   Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely common law fraudulent concealment claim.

8.   Alternatively, this Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations the First Amendment Free Exercise Clause and Fourteenth Amendment substantive Due Process clause as applied to private actors pursuant to Section 1983 who under color of law deprive citizens of their federal statutory or constitutional rights.

### B.  Venue

9.   The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, New York City and this case is properly brought in the Eastern District of New York under 28 U.S.C. §1391(b).

### C.  Exhaustion of Administrative Remedies

10.  Plaintiffs are not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section 11(c)(2) because the statue only states that an employee "may" file a complaint with the OSHA Secretary and does not contain any mandatory language for exhaustion of remedies with the Secretary.

11.  Plaintiffs adversely affected by union agreements that impinge on their rights secured by the Constitution are not required to exhaust administrative or intraunion remedies before suing in federal court. See *Seay v. McDonnel Douglas Corp.,* 427 F. 2d 996 (9th Cir. 1970),

4

## JURY DEMAND

13. Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. 38(b).

## PARTIES

### A. PLAINTIFFS

14. Plaintiff Loiacono lives in the Bronx and was an employee for many years of 200 East 79 Street LLE ("200 East") and who was involuntarily placed on indeterminate leave without pay (LWOP) and/or "constructively discharged" or "locked out" from his job[4] for exercising his fundamental right to refuse to submit to the New York City's ("City") Covid-19 Vaccine Order issued December 13, 2021 (hereinafter the "NYC Vaccine Order") (See Order attached as Exhibit 1) that required 200 East and its officers and employees, and affiliates, agents or contractual partners including Allied Partners Management LLC ("Allied"), Realty Advisory Board on Labor Relations, Inc. ("RAB") and SEIU Local 32BJ ("Union") (hereinafter collectively "Defendants") to lockout Plaintiff Loiacono from his job for exercising his right to object to taking the Covid-19 vaccine on religious grounds.

### B. DEFENDANTS

16. Defendant 200 East 79th Street, LLC ("200East"), a Section 203 domestic Limited Liability Company registered in the State of New York that owns and manages real estate in the City with

---

[4] Under New York law an unlawful "lock out" is defined as an employee who is denied access to their workplace which forces the employee to cease their work activity pursuant to *McGinnis v. Bankers Life Co., Des Moines Iowa*, 334 N.Y.S. 2nd 270 (N.Y. App. Div. 1972)

a process office service located at 13-15 West 54th Street, New York, New York 10019, who is the direct employer of Plaintiff.

17. Defendant Allied Partners Management LLC ("Allied") a Section 802 Foreign Limited Liability Company registered in the State of New York that manages real estate and in particular the real estate that is owned by 200 East that Plaintiff worked in the City with offices for service of process located at 770 Lexington Ave, 17th Fl. New York, New York 10065 and has a service contract with 200East regarding building management and/or security services.

18. Realty Advisory Board on Labor Relations, Inc., ("RAB"), a foreign non-for-profit corporation that provides labor relations services with service of process offices located at 12 East 41st Street, New York, New York 10017. RAB represents the labor relation interest of commercial and residential real estate owners, including specifically RAB has a contract with Allied and 200East to provide labor relations negotiations with Unions that represent employees of Allied and 200East.

19. SEIU Local 32BJ ("Union") is an employee union with union Headquarters located at 25 West 18 Street, New York, NY 1001. Plaintiff was a member of the Union who represented his employee interest with Allied and 200East regarding labor relation negotiations and claims.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. FACTS RELEVANT TO ALL CAUSES OF ACTION

20. In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 2

6

21. The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

22. Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018).

23. The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter OSHA Standards) See collectively 29 U.S.C. §652 Section 3(8) (Emphasis added).  See Exhibit 3- the entire OSH Act

24. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See United *Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

25. According to 29 U.S.C. §655 Sec. 6(a), the Secretary shall:

> "promulgate the standard which assures the greatest protection of the safety or health of the affected employees."

26.  Pursuant to 29 U.S. §652 Sec. 3 (5), Defendants are "employers" that engage in business affecting commerce who are mandated to comply with OSHA standards, rules and regulations and guides or rules pursuant to 29 U.S.C. §654(a).

27.  The OSH Act places a duty on all employers as regulated entities pursuant to General Duty Clause at 29 USC 654 Sec 5(a)(1), to provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

28.  The OSHA standards, rules and regulations instruct employers on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

29.  The basic safety principle of the OSHA General Duty Clause is to place on regulated entities (hereinafter "Regulated Employers") the duty to remove "hazards" from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death.

30.  Regulated Employers are mandated by the OSHA Act standards to only use safety "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations.

31.  Each employee of a Regulated Employer also has the duty according to 29 U.S.C. §654 Sec. 5(b) of the OSH Act, which state and include as follows:

> "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

30.  Employees are not mandated to comply with occupational safety and health standards or rules or regulations and orders that do not meet the minimum standards, safety methods, rules, regulations or orders approved by the OSHA Secretary.

31.  29 U.S.C. §654 Sec. 5(b) also expressly confers the right to any employee to object to any employer mandated rule, order and requirement that obligates an employee to comply with any

safety measure, method or medical treatment, like vaccines including the Covid-19 vaccine, that is not an OSHA approved or authorized standard, rule or regulation established to control recognized hazards in the workplace.

32. According to the OSHA Training Requirements in OSHA Standards manual, employers have a duty and responsibility to pay for training employees on the OSHA safety standards and regulations and they have a duty to inform employees of their OSH Act rights and responsibilities to "comply" with OSHA's standards, rules, regulations, guidelines or orders. See Exhibit 4

33. OSHA approved specific safety standards, and regulations to mitigate any and all "recognized airborne hazards" that cause serious injury or death that can appear in a workplace atmosphere that employers, under the General Duty Clause, are mandated to remove from the atmosphere or shield workers from exposure to and those standards, regulations and guidelines are generally referred to as the Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards);  See Exhibit 5

34. In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. See Exhibit 6 (Ventilation, In-door Air Quality collectively with the Respiratory Standards shall hereafter be referred to collectively as the "Respiratory Safety Method Standards")

32. These approved Respiratory Safety Method Standards have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global

Pandemic, See Exhibit 7 and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola.

33. On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19"). See Exhibit 8

34. According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.  See Exhibit 9

35. According to Dr. Peter McCullough, world renown medical physician, scientific researcher and Public Health PhD, the airborne virus that causes the Covid-19 infection that is recognized in the workplace is a workplace illness covered by the OSH Act because the Covid-19 airborne virus can be transmitted into the workplace atmosphere by any employee infected with the Covid-19 virus when the infected employee talks to co-workers or the general public as part of the employees daily job responsibilities and the employee  while talking and coughing or sneezing while talking in the workplace atmosphere emits the Covid-19 airborne hazard vapors, droplets or fluids into the atmosphere from the infected person and another employee or someone from the public inhales the airborne Covid-19 virus into their mouth or nose and through that exposure and inhalation of the airborne Covid-19 virus an infection can result in another employee or public person in the workplace. See Exhibit 10

36. All Defendants as Regulated Employers have a duty, pursuant to the OSHA General Duty Clause and the Respiratory Safety Method Standards, to remove any recognized airborne hazard, including the recognized airborne viral hazards that causes a Covid-19, emitted into the workplace atmosphere by infected employees or the public and, Defendants have a duty to prevent employee exposure – through their nose, mouth, hands, ears -  to any recognized airborne hazards in the workplace that can cause an serious injury or death, which hazardous airborne infectious diseases include, SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and the airborne Covid-19 virus. See Exhibit 11- OSHA Hygienist expert Bruce Miller, Affidavit

37. Federal courts have held that pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

38. The primary objective of the OSHA Respiratory Safety Method Standards is to instruct employers on their statutory duty to implement safety methods that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

39. The OSHA Respirator Safety Method Standards also mandate employers to provide "remote work from home" as an additional safety method that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

11

40.  For over two decades, OSHA has had "remote work" regulations, and "remote work" is an approved method for preventing employee exposure to workplace airborne hazards.  Exhibit 11

41.  On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines has not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. Exhibit 12

42.  The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards in general.[5]

43.  The OSHA Department of Labor Solicitor stated in their Response to an Emergency Petition brought by various private sector hospital employers (who were lobbying to mandate vaccines for hospital employees), that OSHA would not promulgate a new standard that would allow employers to mandate the Covid-19 vaccine to serve as a new method that employers can use to meet their duty under the General Duty Clause.   See Exhibit 13

44.  No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can immunizations or vaccines shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease. See Affidavits at Exhibit 10 and Exhibit 11

45.  According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the

---

[5] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19, that can cause serious injury or death as required to be an OSHA approved safety minimum safety method that protects employees in the workplace. (See <u>Exhibit 14</u> Dr. Montgomery Affidavit)

46. According to Dr. Montgomery and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

47. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

48. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

49. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

50. The  FDA does not provide approval of any vaccine for to be used to remove airborne hazards or to shield employees from exposure to airborne hazards, neither does the Center for Disease Control (CDC) claim that the Covid-19 vaccine is "safe and effective" automatically make the Covid-19 vaccine, an OSHA approved "safety method" that employers can use to prevent employee and the public exposure to any the recognized airborne hazard in the atmosphere of any private or public workplace.

51. The OSH Act does not authorize the OSHA Secretary nor Regulated Employers to prescribe the FDA "medical treatments" of a Covid-19 vaccine as a medical treatment to prevent the transfer or spread of a communicable disease, including Covid-19, and to eliminate or control recognized airborne workplace hazards.

52. It is a felony in New York for any unauthorized person or employer to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine to an employee. See New York Education Law §6520& §6521 and §6512.

53. The NYC Vaccine Order violates New York Education Law §6520& §6521 and §6512, which banns the prescribing of medical treatments, including the Covid-19 vaccine, by non-licensed medical professionals, including Defendants, not authorize to prescribe drugs and vaccines for the treatment of any disease.

54. Defendants mandate that Plaintiff Loiacono, and all employees provide proof of taking the Covid-19 vaccinations is an unauthorized prescribing of a medical treatment to mitigate or prevent in Defendants' workplace atmosphere the spread of the virus that causes a Covid-19 infection.

55. Vaccines/immunizations are not an OSHA authorized or approved workplace safety method that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

56. If a Regulated Employer desires to use a new and unapproved safety method to prevent employee exposure to any recognized airborne hazard in the workplace, the employer has to seek a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

57. None of the Defendants have applied for a variance from OSH Act to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

58. All Regulated Employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

59. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services (HHS) in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

60. Sometime after the World Health Organization publicly declared the existence of the Covid-19 hazardous virus a global Pandemic, which is a physical/biological agent that is a threat to the global health security, in 2021 the Secretary of HHS through the FDA authorized the use of various manufactured Covid-19 vaccines for human consumption under an "emergency use" authorization (EUA).

61. The FDA EUA allows the use of an unapproved medical product or an unapproved use of an approved medical product in emergencies to diagnose, treat, or prevent serious or life-threatening diseases when there is no alternative adequate and approved drug treatment for a hazardous physical agent and the public emergency poses a threat to national security.

62. The OSH Act under 29 USC §669 Sec. 20(a) also provides the HHS Secretary in collaboration with the OSHA Secretary authority to conduct experiments and demonstrations to promulgate new occupational and safety regulations for employers to report on employee exposure to new

physical agents, like the Covid-19 hazardous airborne virus, and the HHS Secretary can authorize medical exams and tests to determine incidences of new occupational illnesses.

63. However, 29 USC §669 Sec. 20(a)(5) expressly grants employees the right to object to any OSHA, HHS or employer proposed mandated immunization/vaccine, medical treatment or medical exams based on religious grounds.

64. The OSH Act also under 29 USC §660 Sec. 11(c)(1) expressly bans employer wrongful discharge of employees who exercise their right to reject vaccines, medical treatments or medical exams on religious grounds, which right is protected under the OSH Act at Sec. 20(a)(5).

65. All Regulated Employers, including Defendants, must comply with the anti-discrimination and wrongful discharge clause under 29 USC §660 Sec. 11(c)(1) of the OSH Act, which bans employers from discharging employees who exercise any right under the OSH Act, which includes the employee right to object on religious grounds to any government mandated or private employer mandated vaccine, which right is protected under 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act (hereinafter the "Right to Object" ).

66. The Right to Object to vaccines is a statutory right in the OSH Act provided by Congress as a provision of Sec 20(a)(5) of the OSH Statute, and it is not a standard or regulation promulgated by the OSHA Secretary subject to administrative review if violated.

67. The plain language of the Right to Object to vaccines is in Sec. 20(a)(5) provides employees with an automatic exemption from any employer mandated vaccines wherein employees are not required to prove that he or she has a "sincerely held belief" nor does the plain language of Section 29(a)(5) give employers discretion to deny any employees exercise of their Right to Object to vaccines mandated by government or private employers.

68. Vaccines, in general, including the Covid-19 vaccine, are medical treatments that are funded by HHS through the Administration of Strategic Preparedness & Response (ASPR) designed to

16

support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics. See <u>Exhibit 15</u>

69. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  See <u>Exhibit 7</u>

70. Between 2009 and 2020, the City has never issued an Order mandating employers within the City to provide proof of employee vaccinations subject to fines for failure to do so.

71. Between 2009 and 2020, Defendants have never mandated any employee to provide proof of taking any vaccine on penalty of job loss for failure to do so, in order  to prevent the spread of any recognized airborne workplace hazard, which includes the period when the H1N1 virus was declared a "recognized" Global Pandemic, which could cause serious injury or death to any employee or public persons exposure to the recognized H1N1 airborne hazard.

72. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See <u>Exhibit 16</u>

73. The HHS/FDA EUA approval of the  Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

74. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make vaccines, in general, freely available to the general

public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See Exhibit 17

75. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment within any state, federal or municipal agency or for the private sector.

76. No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" to either remove recognized airborne hazards from the workplace atmosphere or to shield employees from exposure to any recognized airborne hazard in the workplace, including for the recognized airborne Covid-19 hazardous virus.

77. Neither immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not meet the OSH Act minimum safety standard for respiratory methods because vaccines are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccines shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See Exhibit 14 - Affidavit of Expert Dr. Baxter Montgomery

78. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to reject an employer vaccine mandate.

79. The OSH Act at 29 USC §660 Sec. 11(c)(1) expressly prohibits employers from discharging employees who exercise their right to reject employer mandated immunizations/vaccines, medical

18

treatments or medical exams on religious grounds, which right is provided under Section 20(a)(5) of the OSH Act.

## B. FACTS APPLICABLE TO PLAINTIFF LOIACONO CLAIMS AND SIMILARLY SITUATED PLAINTIFFS

80.     On June 23, 2022, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

81.     Notwithstanding the end of the state of emergency, on August 2, 2021, former New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

82.     On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers to require their employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. ("NYC Vaccine Order")See Exhibit 1

83.     The purpose of the NYCDOH Vaccine Order states as follows:

> "the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17109(b) of Administrative Code, the Department may adopt vaccination measures to effectively **prevent the spread of communicable diseases**;"

> "do hereby exercise the power of the Board of Health **to prevent, mitigate, control** and abate the current emergency"

84.     The NYC Vaccine Order required, in summary, that all employers located in the City to mandate that their employees provide proof of vaccination against Covid-19 by December 27, 2021 and if

an employee failed to provide proof of Covid-19 vaccination, the employer was required to "exclude from the workplace any worker".

85. The City's order to exclude workers who failed to provide proof of Covid-19 vaccination was an unauthorized employee "lock-out" from their jobs in violation of Plaintiffs and Regulated Employers Collective Bargaining Agreement (CBA).

86. An employer's violation of the NYC Vaccine Order was subject to a fine of not more than $1,000 dollars per violation per day per employ by the NYC Health Commissioner pursuant to the New York Health Code Chapter 22, Section 555.

87. On September 21 and 27, 2021, Plaintiff Loiacono received a work email from the Defendant 200East Board of Managers titled "Important Covid-19 Compliance" in summary requiring employees to where masks and that no masks were required on the 2nd Floor roof deck.

88. On or around October 14, 2021, SEIU Delegate Scott Cohen called Plaintiff Loiacono to verbally explain that a Covid-19 vaccination mandate could be implemented in the future and that there would be options available to him regarding his employment under the mandate. At no time during the call did Mr. Cohen disclose that the Union had entered into any previous agreements regarding any potential Covid-19 vaccine mandate.

89. Unbeknownst to Plaintiff Loiacono, on September 30, 2021 the Union Defendant and RAB Defendant  entered into an agreement on behalf of Plaintiff Loiacono's employer 200East that required all Defendant members of the RAB to either: 1) place all employees who do not provide proof of vaccination by the Defendant's determined deadline on leave without pay (LWOP) for a period of months until they get vaccinated or obtain a religious exemption, if the Defendant approves of the exemption, or 2) be "separated" from their jobs if the employee does not elect a voluntary LWOP, but the separation would not be deemed voluntary nor a termination for misconduct. See Exhibit 18

20

90. Sometime on or around December 22, 2021, Plaintiff's workplace builiding Resident Manager, Joe Saljanin (Saljanin) inform Plaintiff Loiacono verbally that he was mandated to be vaccinated by December 27, 2021 in order to continue to work due to the City's Vaccine Order that set the December 27, 2021 deadline.

91. Joe Saljanin told Plaintiff Loiacono to get vaccinated to "make my life easier."

92. On December 22, 2021, Plaintiff Loiacono asked Saljanin and Union Del. Cohen how to make a religious exemption request and he was told to make the request to 200East's HR Department.

93. On December 22, 2021, Allied and or 200East Board Member Bruce Gutkin asked Plaintiff Loiacono to leave the building to speak with him and told him to take the vaccine "for the greater good of society".

94. Allied and/or 200East Board President Alex Freedman asked Plaintiff about his hesitation about getting the vaccine and gave his personal experience with getting the vaccine to coerce Plaintiff Loiacono to take the Covid-19 vaccine.

95. On December 22, 2021, Plaintiff Loiacono requested via separate emails to Union Delegate Cohen and Saljanin instructions on how to submit a religious exemption request and Union Delegate Cohen responded on December 24, 2021 that the City's Vaccine Order was law and that he could be terminated if Plaintiff Loiacono did not provide proof of vaccination by December 27, 2021. See Exhibit 19

96. On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Allied Resident Manager Saljanin dated December 22, 2021 providing notice for the first time that under the New York City Department of Health Vaccine Order, Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 and that religious exemptions did not change the mandate and that religious exemptions would only be granted based on Allied policy that required employees first provide a religious exemption letter from a

religious institution on the organizations letterhead signed by the head of the religious institution. See Exhibit 20

97.     On Friday, December 24, 2021, Plaintiff Loiacono submitted via email to 200East's Jaclyn Pagnotta, VP of Human Resources and to the Union Delegate Scott a request for a religious exemption from the City's Vaccine Order enforced by 200East but the request was not on the letterhead of a religious institution because federal law does not require it in order for him to receive an exemption.

98.     On December 24, 2021, Plaintiff Loiacono received an automatic reply email from Ms. Pagnatta stating that she was out of the office until Tuesday, December 28, 2021.

99.     On or around December 28, 2021, the Resident Manager called Plaintiff Loiacono back to the building to give him a form from the New York City Legal Department with instructions from the City Legal Department regarding religious exemptions and when exemptions were granted that the Resident Manager required Plaintiff Loiacono to sign. See Exhibit 22

100.    On January 11, 2022, Plaintiff Loiacono spoke by telephone with Ms. Pagnotta wherein she explained that Plaintiff Loiacono was instructed to leave his job.

101.    Around January 18, 2022, Plaintiff Loiacono received a letter from Ms. Pagnotta at Allied stating that effective January 18, 2022, that Plaintiff Loiacono was placed on leave without pay and locked out of his job due to the New York City mandate and that Allied could not provide any other solution that would permit Plaintiff Loiacono to continue to work in the Allied building without providing provide that Plaintiff had taken the Covid-19 vaccine. See Exhibit 23

102.    Because Plaintiff Loiacono was locked out of his job, unable to work and his request for a religious exemption from the City Covid-19 mandate was denied, Loiacono applied for unemployment benefits because he was effectively discharged.

103. Defendant 200East objected to Plaintiff Loiacono's claim for unemployment benefits by reporting that he was terminated for "cause," which prevented him from receiving unemployment benefits despite the fact that 200East entered into an agreement with RAB that any employee locked out from their job for refusing to take the Covid-19 vaccine would not be terminated for cause so that said employees could receive unemployment benefits.

104. Allied and 200East continued the coercive tactics by terminating Plaintiff Loiacono's MetLife Insurance around March 2, 2022, which should have been maintained since he was on leave without pay and not yet terminated.

105. During the New York State Unemployment Benefit hearing on  July 15, 2022, Ms. Pagnatta VP for Allied admitted that Allied and/or 200East were responsible for complying with OSHA standards, regulations and statutory requirements and that Allied and 200East Board ignored the OSHA statutory requirements.  See Exhibit 24

106. In April 2020, near the start of the Covid-19 Pandemic, Ford Motor Corporation increased the manufacture of Powered Air Purifying Respirators (PAPR) to national distribution to employers to provide as OSHA approved safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne virus that causes the Covid-19 disease. See Exhibit 25

107. OSHA along with NIOSH and the CDC approved of PAPRs as a method to shield employees from recognized airborne hazards.   Exhibit 26

108. On April 18, 2022, Plaintiff Loiacono received an email from Allied stating that he was involuntarily placed on leave without pay ("LWOP") until April 21, 2022 and Defendants failed to provide Plaintiff with a PAPR so he could continue to work unvaccinated. See Exhibit 27

109. Under information and belief, other Allied employees were allowed to remain on their jobs in Defendants workplaces even after they objected to taking the Covid-19 vaccine, but Plaintiff was told to leave his workplace.

110. Sometime after October 2022, all Defendants failed to automatically reinstate Plaintiff Loiacono to his job after the Covid-19 Pandemic and New York City Covid state of emergency was declared over.

111. Plaintiff Loiacono is still on indeterminant leave without pay or discharged and has not been recalled or reinstated to his job.

112. Plaintiff Loiacono has suffered mental and emotional distress from the intentional wrongful discharge,  and discrimination and has been unable to sleep, concentrate and has suffered depression over the last four years trying to seek employment but having no success.

113. According to Federal public records published by FederalPay.org from data provided by the Small Business Administration as of June 30, 2023, Defendant Allied Partners Residential Management LLC received $1,435,500 in Covid-19 Pandemic Federal Paycheck Protection Program (PPP Funds) funds for the purpose of saving 103 jobs, yet Plaintiff Loiacono was locked out and terminated from his job for exercising his fundamental federal and constitutional right protected by the OSH Act.

114. Defendant Allied Partners Residential Management received additional Pandemic PPP Funds in the amount of $1,213,578 for the purpose of preserving 63 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

115. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,200 to preserve 25 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

116. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,345 to preserve 17 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his rights under the OSH Act and the Constitution.  See Exhibit 28

## FIRST CAUSE OF ACTION
**(Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1)&(2) & Federal Preemption)**

117. Plaintiffs realleges and incorporates by reference Paragraphs 1-121 of this Complaint as if fully set forth herein.

118. Defendants, and each of them, are "employers" as defined by 29 USC §652 Sec. 3 (5) of the OSH Act.

119. Defendants and each of them are agents or affiliates of the other through contracts entered into by each Defendant to provide services to the other Defendants.

120. Defendants are jointly liable for damages caused to Plaintiffs as a result of their affiliation and/or contract to provide services related to the employment of Plaintiffs.

121. Defendants knew that as a Regulated Employers that the OSH Act General Duty Clause under 29 USC §654(a)(2) only mandates Defendants to comply with OSHA authorized and approved workplace safety standards, methods, measures, rules, regulations or Orders and that Defendants were not required to comply with the NYC Covid-19 Vaccine Mandate Order because the City did not have authority to mandate employers to violate the OSH Act standards, methods or regulations.

122. Defendants knew that they had the right under 29 USC §654(a)(2) to object to and not comply with the NYC Covid-19 Vaccine Mandate Order because the City's order was not authorized by

25

the OSHA Secretary and the Order conflicted with the OSHA minimum standards, rules and regulations that governs how to control of recognized airborne hazards in the workplace.

123. Plaintiff Loiacono and similarly situated employees had the right under 29 USC §660 Sec. 11(c)(1) to be free to wrongful discharge by Defendants for exercising any right afforded by the OSH Act as set forth below:

> (1) **No person shall discharge or in any manner discriminate against any employee** .........**because of the exercise by such employee** on behalf of himself or others **of any right afforded by this Act.**  (Emphasis added)

124. The OSH Act expressly provides all employees with the right to object based on religious grounds to immunization, medical examinations and medical treatments as stated in 29 USC §669 Sec. 20(a)(5) below:

> **Nothing in this or any other provision of this Act** shall be deemed to authorize or require medical examination, immunization, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others.

125.  The OSHA General Duty Clause at 29 USC §654(b) also only authorizes employees to comply with approved and authorized standards, methods, orders, rules or mandated by employers or any government municipality that are "applicable to [the employees] own actions and conduct.

126. 29 USC §654(b) also provides an employee, including Plaintiff Loiacono, the right to object to unauthorized or unapproved standards, methods, rules or regulations mandated by employers and not approved by the OSHA Secretary.

127. On December 24, 2021, Defendants informed Plaintiff that he and all employees were mandated to take the Covid-19 vaccine due to the NYC Covid-19 Order.

128. On December 24, 2021, Plaintiff Loiacono informed Defendants via email that he objected to taking the Covid-19 vaccine based on religious grounds and requested an exemption so that he would not be discharged by being locked out of his job.

129.  On January 18, 2025, Defendants discharged Plaintiff Loiacono by telling him to leave his job post and by locking him out of his job and Defendants placed him on involuntary leave without pay, LWOP until April 21, 2025

130.  Defendants have not reinstated Plaintiff Loiacono to his job with backpay or any other compensation.

131.  Every employee has an express and/or implied "private right of action" pursuant to 29 USC §660 Sec. 11(c)(2) against any person, including a private or government employer, that causes an employee to be discharged for exercising an employee's rights under the OSH Act as stated below:

> (2) Any employee who **believes that he has been discharged or otherwise discriminated against** by any person in violation of this subsection **may**, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination….…..**In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.**

132.  Under information and belief, Defendants, let other employees remain in Defendants workplaces and keep working their jobs after other employees objected to taking the mandated Covid-19 vaccine, which amounted discrimination against Plaintiff Loiacono in violation of the OSH Act under 29 USC §669 Sec. 11(c)(1).

133.  Defendants refusal to allow Plaintiff Loiacono to remain on his job unvaccinated after having had received written a request from Plaintiff Loiacono outlining  his  religious grounds and Defendants subsequent discharge of Plaintiff Loiacono by forcing him to leave his job post violated Plaintiffs two statutory rights in the OSH Act at 29 USC §660 Sec. 11(c)(1) and 29 USC §669 Sec. 20(a)(5)

134.  Due to Defendants violations of the above two statutory provisions of the OSH Act, Plaintiffs also have an implied right of action based on the US Supreme Court opinion in the *Whirlpool*

27

*Corp. v. Marshall*, 445 U.S. 1, (1980) because the Supreme Court interpreted Sec. 11(c)(1)&(2) to provide employees an implied right of action holding that "nothing in the [OSH] Act suggest that…. employees… must rely exclusively on the remedies expressly set forth in the Act" through the OSHA Secretary and that OSH Acts administrative remedies are not "exclusive."

135. The enforcement authority provided to the OSHA Secretary in Sections 8, 9, 10, and 11 of the OSH Act are exclusively for the investigation and sanctioning of employers for OSHA regulatory or standards violations and nothing else.

136.  Defendants' violations of Plaintiffs statutory rights to object to vaccines in Sec. 20(a)(5) and Sec.5(b) of the OSH Act are not regulatory violations subject to administrative review by the Secretary of OSHA.

137. The redress for Defendants violations of Plaintiffs statutory rights can only be accomplished through an implied private right of action consistent with the *Whirlpool* decision.

138. The holdings in *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F. 2d, 918, 926 (2nd Cir. 1983) and *Quirk v. Difiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) regarding the non-existence of a "private right of action" under the OSH Act do not apply to Plaintiffs rights and Defendants violations in this case because the holdings in *Donovan* and *Quirk*  along with the other 218 other similar cases, only apply to OSHA cases involving violations of OSHA standards, regulations rules or guidelines for which the OSHA Secretary has administrative authority to provide a remedy.

139. The *Donovan* and *Quirk* do not bar Plaintiffs express or implied private right of action because Plaintiffs rights in tis care are not regulatory rights promulgated by the OSHA Secretary and the OSHA Secretary does not have authority under the OSH Act to fine, sanction or sue for non-standard or regulations violations. See Exhibit  list of 218 cases involving only OSHA regulatory violations.

28

140. The United States district courts have jurisdiction to hear Plaintiffs OSHA claims under Sec. 11(c)(2) because the word "any" in the phrase "[i[n any such action" in the Sec. 20(c)(2) of the OSHA statute is plainly and liberally interpreted to include "any" action brought by an employee who has no remedy through the OSHA Secretaries administrative process and so that all rights provided an employee under Sec. 20(a)(5) and Sec. 5(b) of the OSH Act are not rendered meaningless and without enforcement according to the U.S. Supreme Court ruling in the case *United States v. Alpers*, 338 U.S. 680, 682, (1950).

## SECOND CAUSE OF ACTION
**Conspiracy Claim under 42 U.S.C. §1983 to Deprive Plaintiffs Rights Under OSH Act and the First Amendment Free Exercise Clause and Fourteenth Amendment Substantive Due Process Clause**

141. Plaintiffs realleges and incorporates by reference Paragraphs 1-142 of this Complaint as if fully set forth.

142. Plaintiffs right to object to the NYC Vaccine Order has been a fundamental substantive common law right of every U.S citizen since first recognized by the U.S. Supreme Court in 1905 in the case *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) when it was held that:

> "the inherent right of every freeman to care for his own body and health in such way as to him seems best…… the liberty secured by the Constitution of the United States to every person within its jurisdiction….." Jacobson at 26

143. The U.S. Supreme Court further recognized the fundamental right to refuse medical treatment in 1990 in the case *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (holding – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.")

144. Congress codified the *Jacobson* decision when it enacted 29 USC §669 Sec. 20(a)(5) of the OSH Act thereby giving all employees the right to object, on religious grounds, to employer, government or private sector mandated immunizations or vaccines, medical treatments and medical exams (hereinafter the Right to Medical Freedom) which religious grounds protected by the First Amendment Free Exercise clause and the 14th Amendment substantive due process clause referenced in both *Jacobson* and *Cruzan*.

145. To prevail on a cause of action under 42 U.S.C. §1983, a plaintiff must establish, by a preponderance of the evidence, that (1) defendant deprived Plaintiff of a right secured by the Constitution or the laws of the United States and (2) in doing so, the defendant acted under color of state law. See, e.g., Byng v. Delta Recovery Servs. LLC, No. 13 Civ. 2958, 2014 WL 2493779, at *1 (2d Cir. June 4, 2014) (citing West v. Atkins, 487 U.S. 42, 48 (1988).

146. "The conduct of private actors can be attributed to the State/or municipal government for § 1983 purposes if: "(1) the State compelled the conduct, …. or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed.Appx. 627, 629 (2d Cir. 2009).

147. Plaintiffs also specifically alleges a §1983 under a conspiracy claim, wherein Plaintiff can show that: (1) an agreement between a state actor and a private entity occurred; (2) that the agreement or act in concert caused a deprivation of or inflicted an unconstitutional injury; and (3) that an overt act was done in furtherance of that goal causing damages. See *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) citing Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y.1999); see, e.g., Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996) (setting forth elements)).

148. "[C]conspiracies are by their very nature secretive operations," and can be proven by circumstantial, rather than direct, evidence. *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994).

149. Malice may be inferred from a finding that defendants lacked probable cause to initiate criminal proceedings, which in this case Defendants as OSHA Regulated Entitles lacked "cause" to lock out and terminate Plaintiff in violation of Sec. 11(c)(1) of the OSH Act. See, e.g., *Maxwell v. City of New York,* 156 A.D.2d 28, 34–35, 554 N.Y.S.2d 502, 505–06 (1st Dep't 1990).

150. The issue of malice is a jury question." See *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir 1994)

### A. Section 1983 Conspiracy To Deprive

151. Defendants knew or should have known that the City's was not authorized to enforce the NYC Vaccine Order because the Order was preempted and precluded by the Federal OSH Act under 29 USC §667 Sec. 18(a) because OSHA already had established standards and methods – the Respiratory Standards and General Duty Clause to prevent the spread of any and all recognized airborne hazards, including the Covid-19 airborne hazard and Defendants knew that the NYC Order requiring Defendants to remove unvaccinated employees from the workplace directly violated OSHA and the First Amendment Free Exercise clause.

152. Despite this knowledge, Defendants SEIU and RAB on behalf of the other Defendants, entered into that certain agreement titled "Memorandum of Agreement" (MOA) dated September 20, 2021, wherein, the Defendants - and each of them individually and collectively - through their agents and affiliates agreed to mandate that Plaintiff and all other employees take the Covid-19 vaccination in violation of 29 USC 669 Sec. 20(a)(5). See Exhibit _____, MOU

153. The MOA states, in summary, that if Plaintiff Loiacono or any employee failed to take the Covid-19 vaccine that Defendants agreed to follow the instructions of the NYC Vaccine Order that instructed private employers to agree to "separate" Plaintiff and other employees from their jobs for failure to take the Covid-19 vaccine, which the Agreement declared was a separation for non-disciplinary purposes.

154. Defendants even used their employees and or board members, namely Resident Manager Mr. Saljanin, Alex Freedmand and Bruce Gutkin to threaten Plaintiff Loiacono to convince him to take the Covid-19 vaccine to "make life easier" for himself.

155. Defendants notice letter made clear that the Covid-19 vaccine Mandate Defendants were enforcing came from the City and that the Defendants enforcement was on behalf of the City's Vaccine Order demanding all employers to remove unvaccinated workers for the "good of the public."

156. Defendants further agreed through the written MOU to deprive Plaintiff Liocano of his right to report Defendants to the OSHA Secretary for violating his statutory rights by failing to disclose that he had the right to report Defendants to OSHA and instead Defendants directed Plaintiff to follow the process under Title VII and the Disability Act to request an accommodation that Plaintiff was never going to be granted.

157. Defendants knew that they were not going to allow Plaintiff Loiacono to remain in his job unvaccinated, but Defendants gave Plaintiff a letter from the NYC General Counsel See Exhibit ____,  informing him that he could seek resolution under those federal laws that were not applicable, but not under OSH Act which was applicable to Plaintiffs case.

158. Defendants failed to "advise" Plaintiff of his OSHA right to refuse the Covid-19 vaccine and Defendants refused to "advise" Plaintiff of his OSHA right to also make a claim for

159. Defendants, therefore, agreed, cooperated, participated, and conspired to enforce the City's illegal Vaccine Mandate that Defendants knew or should have known were invalid.

160. While the City was acting under color of city law, Defendants enforced an invalid illegal law amounts to conspiracy with the City to deprive Plaintiffs of their right to object to the Covid-19 vaccine and right to remain in their jobs unvaccinated protected by the OSH Act and First Amendment Free Exercise Clause and the 14th Amendment substantive due process clauses.

32

161.  Defendants knew that they are not a licensed physicians with the power to prescribe medical treatments and Defendants knew that it is a crime to practice medicine, which includes the "treating or prescribing" of regulated drugs, without a license and that mandating Plaintiff or any employee to take the medical treatment of a Covid-19 vaccine to retain their job is the act of prescribing a medical treatment which is a crime punishable as a felony under Education Law §6512.

162.  Defendants acting jointly with the City to deprive Plaintiffs of their rights based on the sworn testimony of Dr. McCullough, Dr. Montgomery and Expert Bruce Miller, that explains that all vaccines, including the Covid-19 vaccine, are never medically necessary to prevent or mitigate the spread of any airborne communicable hazard in the workplace and therefore, neither the City nor Defendants had the right to compel compliance with the Covid-10 mandatory vaccination.

163.  The Covid-19 vaccine could never meet the City's public policy objective of slowing the rates of Covid-19 infections because the Covid-19 vaccine cannot prevent the transmission of the disease because vaccines cannot shield employees from exposure to the airborne hazard in the workplace and neither can the vaccine remove the Covid-airborne virus from the atmosphere in the workplace.

164.  Defendants knew or should have known that the Covid-19 vaccine did not meet the OSHA Respiratory standard method that requires workplace safety methods to either remove an airborne hazard from the air or shield workers and the public from exposure to any airborne hazard in the workplace.

165.  Under information and belief, Defendants the Union, RABLR, Ms. Pagnatta, Howard Rothschild, Hector Figueroa, Eric Hadar and Alex Freedman knew or should have known that: 1.) the Vaccine Orders were preempted by the OSH Act; 2) the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was

33

an unauthorized safety method; 3) Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations.

166. Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act standards, regulations and statutory rights for employees under Section 20(a)(5) and knew the OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid-19 vaccine – pursuant to Section 20(a)(5) of the act.

167. Defendants failure to reinstate Plaintiffs into their jobs or similar job since the City's Vaccine Order was repealed and continued denial of other employment benefits constitutes willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed against all Defendants and individual Defendants joint and severally.

**B. Section 1983 Coercion**

168. Defendants' termination of Plaintiffs was exclusively due to the "coercive power" of City's NYC Vaccine Orders because the City's Order came with the threat of costly monetary fines if Defendants refused to comply with the Order to remove unvaccinated employee from Defendants workplace.(

169. Chapter 22 of New York City Charter, Section 555(b)(2) gives the City's Health Commissioner the authority to fine Defendants up to $1,000 a day for failing to remove every unvaccinated employee from Defendants workplace.

170. The City's coercive power also caused Defendants to enter into the illegal MOA, which violated the National Labor Relation Act ban on negotiating the civil rights of employees, in order to comply with the NYC Vaccine Order.

171. Defendants knew or should have know that MOA's approval of the remove of Plaintiffs from their jobs because Plaintiffs objected to taking the Covid-19 vaccine on religious grounds violated the

34

NLRA and yet Defendants entered into the illegal agreement just to comply with the City Vaccine Orders.

172.  Defendants were willful participants in joint and significant activity with the City by enforcing the illegal NYC Vaccine Order to also avoid huge fines from the City. See *Bruette v. Human Society of Ventura County*, 294 F.3rd 1205 (9th Cir. 2002), see *Lee v. Katz*, 276 F3d 550,554 (9th Cir. 2002) and see *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)

173.  The City and Defendants had a "meeting of the minds" to violate Plaintiffs OSH Act rights along with Plaintiffs rights under the First Amendment Free Exercise and Fourteenth substantive due process clause which provide Plaintiffs the right to be to refuse and choose Plaintiffs own medical treatment. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F2d 1539, 1546-47 (9th Cir. 1989)

174.  As are result of Defendants agreement to enforce the City's Vaccine Orders all Plaintiffs were locked out of all jobs in the City as Plaintiffs could not find any job in the City because of this conspiracy to coerce Plaintiffs to take the Covid-19 vaccine.

   **C.  Section 1983 Enforcement of Exclusive Power of the City**

175.  The New York City Charter at Chapter 22, Section 556(c)(2) provides the City Department of Health (DOH) with exclusive power and responsibility to control, monitor, supervise services regarding communicable diseases within the City, specifically requiring the City's DOH to "control .. communicable.. disease hazardous to the life and health ……effecting public health. See Exhibit _____ Article – Federal and State Isolation and Quarantine Authority

176.  The NYC Vaccine Order of December 13, 2021 expressly declares that the City has exclusive authority to "control" communicable diseases for public health as follows:

"**NOW THEREFORE,** …. .finding that …..it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency…."

177.  The NYC Vaccine Order was a public function of the City under the City's law.

178.  Defendants cooperation with -  through the MOA - and enforcement of the NYC Vaccine Order caused Defendants to operate under color of the law of the City to violate Plaintiff OSHA and Constitutional right to object to the City's Covid-19 vaccine mandate on religious grounds and to remain on Plaintiffs jobs unvaccinated. See *Blum v. Yaretsky*, 457 U.S. 991 (1982)

179.  Defendants enforcement of the NYC Vaccine Order was an exercise of the sovereign power of the City that is attributable to Defendants as "state action" that deprived Plaintiffs of their federal and constitutional rights.

## THIRD CAUSE OF ACTION
### Common Law Fraudulent Concealment

180.  Plaintiffs realleges and incorporates by reference Paragraphs 1-182 of this Complaint as if fully set forth herein.

181.  Without waiving the validity of Plaintiffs other claims, Plaintiff makes a claim for fraudulent concealment claim under New York law for Defendants concealment of Plaintiff's right to refuse the Covid-19 vaccine without fear of discharge and Defendants failure to disclose and concealment of Plaintiffs "optional right" to report Defendants discharge for exercising his right to refuse the Covid-19 vaccine to the OSHA Secretary within the 30 day period contained in Sec. 11(c)(2) so that the Secretary could have, at minimum, filed an injunction, to stop Defendants discharge of Plaintiff and those similarly situated.

182.  The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure

to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages, which can be proved by circumstantial evidence.

183. Each Defendant has a duty and are mandated under OSHA  29 CFR §1904.35(b)(1)(iii) to inform their employees of all their rights under the OSH Act, including specifically the right to be free from discrimination and retaliation for exercising their rights provided under 29 U.S.C. §660 Section 11(c)(1), including specifically Plaintiffs right to object to vaccines under OSH Act 29 USC §669 Section 20(a)(5) and 29 USC §654(b).

184. Plaintiffs and specifically, Plaintiff Loiacono was never informed while working for Defendants, trained or told by Defendants or by Defendants employees, agents, contractors on human resource director that he had a right under the OSH Act 29 USC §660 Sec. 11(c)(1) and (2) to be free from discrimination and wrongful discharge and that Plaintiffs had a right to object to any immunization or vaccine, including the Covid-19 vaccine or object to any medical treatment or medical exam that includes Covid-19 testing that was provided by the OSH Act at 29 USC §669 Sec. 20(a)(5).

185. Defendants by and through their employees, agents or partners, Joclyn Pagnotta head of Human Resources, Resident Manager Saljanin and Union Delegate Scott Cohen (collectively Defendants Employees) all had a duty under the OSHA Act to disclose to Plaintiffs their right to object to the NYC Covid-19 vaccine and each time Plaintiff Loiacono spoke to Ms. Pagnaotta, or Mr. Saljanin or Mr. Cohen by email, phone or in person not one of them disclosed to Plaintiff that he had a right to object on religious grounds the Covid-19 vaccine, that Plaintiffs had a right to remain on his job unvaccinated and that Plaintiffs had an "optional right" to report to the OSHA Secretary Defendants wrongful discharge and discrimination set forth above.

186. While the OSHA Secretary does not have full authority to fine and sue Defendants under the Secretaries powers in the OSH Act because Plaintiffs rights under Sec. 20(a)(5) are not a regulation

37

or rule promulgated by the Secretary, the OSH Act under 29 USC §660 Sec. 11(c)(2) provides the Secretary with at minimum injunctive power as stated below:

> "Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection **may**…. file a complaint with the Secretary……the Secretary….. shall bring an action in any appropriate United sates district court against any such person….to restrain violations of paragraph (1)….."

187. Plaintiffs right to report Defendants wrongful discharge and discrimination is an "optional right" because Sec. 11(c)(2) above only states that an employee "may file" a complaint with the Secretary which is not mandatory.

188. Because Plaintiffs did not know that they had the "optional right" to report the discharge to the Secretary because Defendants never disclosed - as was their duty – to Plaintiffs that they had the right.

189. Each Defendants Employee wrongly told Plaintiff Loiacono  - either via email or verbally  -that he had to submit a Title VII or Disability Act request for religious accommodation letter explaining in detail his religious practice of refusing the Covid-19 and requiring a clergy letter before he could exercise his right to refuse the Covid-19 vaccine and remain in his job unvaccinated.

190.  Defendants and Defendants Employees, and each of them, knew or should have known that Plaintiff had an OSH Act right to refuse the Covid-19 vaccine and that Plaintiff Loiacono had no duty to submit a specific request for an "religious accommodation" under VII in order to exercise his right to object on religious grounds the Covid-19 vaccine and to exercise his right to remain on his job unvaccinated and their failure to disclosed was a fraudulent concealment.

191. Defendants and Defendants Employees further concealed Plaintiffs rights under OSHA by delivering to Plaintiff a letter from the NYC General Counsel explaining that he had to go through a Title VII process and that the Defendants had the right to refuse any accommodation.

192. Defendants Pagnatto in the January 18, 2021 letter misrepresented to Plaintiff that Defendants had the right to discharge him by removing him from his workplace based on Title VII standards which was false.

193. Because Defendants willfully refused to disclose to Plaintiffs and Plaintiff Loiacono that they had a right to object to the Covid-19 on religious grounds and that they had the right to remain at his workplace unvaccinated and that Plaintiffs had a right to report any discrimination and wrongful discharge to the OSHA Secretary, Plaintiffs and Plaintiffs Loiacono failed to report Defendants to the OSHA Secretary for their violations of his right to "know" their OSHA rights within the 30 day period stated in the OSH Act at 29 USC §660 Sec. 11(c)(2).

194. Plaintiff Loiacono reasonably relied on Defendants Employees instruction to submit a "religious accommodation" request, and as a result of relying on that process, Plaintiffs did not know and he failed to exercise his "option" to submit a claim to the OSHA Secretary within 30 days of his wrongful discharge and denial of his right to object to the Covid-19 vaccine to obtain any remedy the Secretary could have provided.

195. Defendants failure to disclose Plaintiffs' OSHA rights resulted in Defendants refusal to grant Plaintiffs both their rights under Sec. 20(a)(5) and Section 11(c)(1) which includes the "optional right" to report and be free from discrimination and discharge.

196. Defendants omission was intentional and a blatant disregard for Plaintiffs' rights giving rise to punitive damages for said fraudulent acts because the duty to disclose was statutory for which Defendants are strictly liable.

197. Defendants willful refusal to disclose to Plaintiffs their right to report Defendants wrongful and discriminatory discharge deprived Plaintiff of their "optional right" to at minimum obtain an injunction through the Secretary who could have "restrained" Defendants wrongful discharge of Plaintiffs in violation of Sec. 11(c)(1) and Sec. 20(a)(5).

198. Because Defendants and its employees concealed Plaintiffs OHSA rights listed above, Defendants have caused Plaintiff to be discharged and locked out of his job without "cause" for over three years, because Plaintiffs did not know that they could have reported Defendants to the Secretary of OSHA who could have filed sooner an action to restrain Defendants from locking Plaintiffs out of their jobs.

199. Due to the willful concealment of Plaintiffs OSHA rights that Defendants have a non-delegable duty to comply with, Plaintiffs were not able to mitigate their own damages and Plaintiffs suffered a four year lock out from their jobs, which was far longer than what the Secretary could have obtained but for Defendants failure to disclose Plaintiffs their right to report.

200. The fact that Defendants supplied Plaintiffs with the letter from the NYC General Counsel representing that the Title VII law applied to Plaintiffs OSHA rights is evidence that Defendants willfully concealed Plaintiffs OSHA right to report to the OSHA secretary and is evidence of Defendants wrongful discharge and discrimination.

201. But for Defendants failure to disclose Plaintiffs right to file a claim with the OSHA Secretary within 30 days of Defendants decision to discharge Plaintiff on January 18, 2021, Plaintiff would have filed a claim and the Secretary could have at least stopped the long-term discharge and Plaintiff could have been reinstated sooner than later and could have avoided the longer term losses.

202. Plaintiff, therefore, has to rely on the implied private right of action also provided under 29 USC §660 Sec. 11(c)(2) that allows Plaintiff to file this complaint for Defendants discharge and discrimination.

203. Common law fraud has a 4-year statute of limitations which all Plaintiffs claims meet the statute of limitations period.

### FOURTH CAUSE OF ACTION
**Unfair Labor Practices**

204. Plaintiffs realleges and incorporates by reference Paragraphs 1-202 of this Complaint as if fully set forth herein.

205. As a direct and proximate result of the conduct of UNION, its officers, agents and employees hereinabove set forth, the Union engaged in unfair labor practice of discrimination in violation of 29 USC §158(a)(3) and (b)(2)  by entering into an agreement with Defendants that violated the federal OSH Act at 29 USC §660 Sec. 11(c)(1) by denying Plaintiffs their fundamental First Amendment, 14th Amendment and federal OSH Act right to object to taking the Covid-19 vaccine as provided under 29 USC §669 Sec. 20(a)(5) of the OSH Act.

206.  The Union also conspired and agreed to the discriminatory acts of Defendants when it agreed to allow some employees to receive an exemption and not Plaintiff Loiacono who was denied his right to object to the Covid-19 vaccine protected by the Constitutional and the OSH Act.

207. The Union conspiracy to discriminate also violated the NLRA because it is an unfair labor practice to negotiate away the fundamental and federal protected rights of employee members of the Union.

208.  By reason of the foregoing, Plaintiff is entitled to a permanent injunction enjoining UNION, its officers, agents and employees from violating Section 158(a)(3) & (b)(2) of the NLRA now or in the future and declare the all agreements between Defendants and the Union regarding the discriminatory acts are declared void and invalid along with other relief outlined in the prayer for relief.

### CLASS ALLEGATIONS

209. Plaintiffs realleges and incorporates by reference Paragraphs 1-167 of this Complaint as if fully set forth herein.

210. Class representative Plaintiff Loiacono, seeks class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of himself and all private sector employees who worked or works for employers within the City similarly situated (hereinafter the "Class")

211. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

212. The Class claims raise numerous common questions of fact or law, including, but not limited to:

    a.    Whether the Vaccine Orders are preempted by the OSH Act because the Vaccine Order specifically violates the OSHA minimum standard for preventing exposure to airborne communicable diseases;

    b.    Whether the wrongful discharge and/or lockout of Plaintiffs for refusing to take the Covid-19 vaccine based on religious and non-religious grounds violates the OSH Act, Title VII, the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

207. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy because there are no material issues of fact in dispute and only issues of law predominate the claims. There is no dispute that all Defendants terminated and/or locked out their respective Plaintiffs employees due to their unvaccinated status based on religious and/or non-religious grounds in violation of the OSH Act and Section 1983.

208.   The claims of the named Plaintiff are typical of the claims of the class in that the named Plaintiffs and class members claim that their right refuse to comply with the Covid-19 Vaccine Order or Covid-19 vaccine mandated enforced by Defendants and subsequent termination or lock out of their jobs was willful or a reckless disregard for their rights protected by federal and constitutional law warrantying punitive damages against the Defendants jointly and severally.

209.   The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

210.   Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as class members and there is no need to a review of the individual facts or circumstances around each Plaintiffs job and the facts regarding each Plaintiffs termination or lock-out because the conclusions of law are determinative for each cause of action and not the facts surrounding the terminations or lockouts.

**PRAYER FOR RELIEF**

211.   Plaintiff Loiacono individually and for those similarly situated claims the following relief:

   a.   Permanent injunction against Defendants precluding future discharge of any employees who objects to any employer or government mandated immunization, medical treatment or medical exam pursuant to 29 USC §669 Sec. 20(a)(5) of the OSH Act;

   b.   reinstatement to Plaintiffs jobs with title and seniority;

   c.   backpay from the date Plaintiffs were either formally terminated in writing or permanently locked out of their jobs with interest;

   d.   compensatory damages;

   e.   punitive damages to be determined by a jury;

43

f.  loss payments into any retirement fund since Plaintiffs were either formally terminated or

permanently locked out of their jobs;

g.  reinstatement of loss time into retirement calculation;

h.  expungement of discipline codes from each employee's personnel file and records;

i.  mental and emotional distress damages;

j.  punitive damages;

k.   interest on any compensation pursuant to applicable law;

l.  attorney fees and costs; and

m.  any other remedies allowed by law

Dated: April 18, 2025                              Respectfully submitted,

                                                   By: /s/ *Jo Saint-George*
                                                   Jo Saint-George, Esq.
                                                   4435 E. Chandler Blvd, Suite 200
                                                   Phoenix, Arizona 85048
                                                   Phone: (602)326-8663
                                                   Email: jo@woc4equaljustice.org


                                                   Law Office of
                                                   Tricia S. Lindsay, PC
                                                   531 E. Lincoln Ave., Ste. 5B
                                                   Mount Vernon, NY 10552


                                                   **Mailing Address:**
                                                   P.O. Box 88
                                                   White Plains, NY 10602
                                                   Phone: (347) 386-4604
                                                   (347) 349-5433
                                                   Email: Tricialindsaylaw@gmail.com
                                                          attorney@tricialindsaylaw.com
                                                          www.tricialindsaylaw.com


                                                   *Counsel for Plaintiffs*

# EXHIBIT C

Second Amended Complaint – ECF #36

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOHN LOIACONO, individually and on behalf of similarly situated individuals,

               Plaintiffs,

      v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST 79TH STREET LLC CONDOMINIUM, REALTY ADVISORY BOARD ON LABOR RELATIONS, INC., SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU) LOCAL 32BJ, AND DOES 1-20

               Defendants

**SECOND AMENDED COMPLAINT**
**(Fed. R. Civ. P. 15 – Name-Correction Amendment**

**Case No.: 25-cv-00330-AMD-CHK**
Hon. Ann M. Donnelly, U.S.D.J. (AMD)
Hon. Clay H. Kaminsky, U.S.M.J. (CHK)

Plaintiff John Loiacono, individually and on behalf of similarly situated individuals, by and through undersigned counsel, respectfully submits this Second Amended Complaint. This amendment is made solely to correct the name of one defendant—from "200 EAST 79TH STREET LLC" to "200 EAST 79TH STREET CONDOMINIUM"—and to make conforming changes to the caption and party allegations. All other allegations, claims for relief, and prayers for relief remain substantively identical to those asserted in the original Complaint filed at ECF No. 16 on May 5, 2025, and are re-pleaded herein.

This amendment is permitted under Federal Rule of Civil Procedure 15. No defendant has served a responsive pleading. In the alternative, leave to amend is freely given under Rule 15(a)(2). The correction of the defendant's name relates back under Rule 15(c)(1)(C) because the newly named defendant received notice of the action within the Rule 4(m) period and knew or should have known that the action would have been brought against it because the co-defendant Allied Partners Management LLC, who has been

property served is an agent of Defendant 200 East 79th Street Condominium but for a mistake concerning the proper party's identity.

## JURISDICTION AND VENUE

The Court has subject-matter jurisdiction and venue is proper as alleged in the original Complaint, which allegations are repeated and re-alleged here in full.

## PARTIES

1. Plaintiff John Loiacono is an individual and was at all relevant times employed in this District.

2. Defendant Allied Partners Management, LLC is, and at all relevant times was, an employer of Plaintiff within the meaning of applicable law.

3. Defendant 200 East 79th Street Condominium (formerly misnamed as "200 East 79th Street LLC") is, and at all relevant times was, an entity involved in the ownership, operation, management, and/or control of the premises and employment at issue. It is sued in its correct name by this amendment. Service and notice of the action have been effected through its agent Allied Partners Management, LLC such that it will not be prejudiced by this correction.

4. Defendant Realty Advisory Board on Labor Relations, Inc. is a labor-relations association and acted as alleged in the original Complaint.

5. Defendant Service Employees International Union Local 32BJ is a labor organization and acted as alleged in the original Complaint.

6. DOES 1–20 are persons and entities whose identities are presently unknown and will be substituted as discovery reveals their roles.

**FACTUAL ALLEGATIONS AND CLAIMS FOR RELIEF**

Plaintiff repeats, realleges, and incorporates by reference each and every factual allegation and claim for relief set forth in the original Complaint (ECF No. 16) as though fully set forth herein, except that all references to "200 East 79th Street LLC" are replaced with "200 East 79th Street Condominium."

**PRAYER FOR RELIEF**

Plaintiff seeks all relief demanded in the original Complaint, including compensatory and punitive damages, declaratory relief, a permanent injunction, attorneys' fees and costs where authorized, and any other relief the Court deems just and proper, with the corrected defendant name applied throughout.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 11, 2025                                 Respectfully submitted,

/s/ *Jo Saint-George, Esq.*

Jo Saint-George, Esq.
Women of Color For Equal Justice
4435 E. Chandler Blvd, Suite 200
Phoenix, Arizona 85048
Phone: (602)326-8663
Email: jo@woc4equaljustice.org

Tricia S. Lindsay, PC
531 E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552
Mailing Address:
P.O. Box 88
White Plains, NY 10602
Phone: (347) 386-4604
(347) 349-5433
Tricialindsaylaw@gmail.com
attorney@tricialindsaylaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a copy of this SECOND AMENDED COMPLAINT was: ( X ) e-mailed and e-filed (X ) mailed (   ) faxed (   ) hand delivered to the person(s) listed below on:


ALLIED PARTNERS MANAGEMENT, LLC
770 Lexington Avenue, 17th Floor
New York, New York, 10065
Authorized Agent

Daniel Ryan Axelrod
Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith
7 World Trade Center
Ste Floor 11
New York, NY 10007
Phone: (212)232-1300
daniel.axelrod@lewisbrisbois.com
Peter.Shapiro@lewisbrisbois.com

Attorney of Record for:
Realty Advisory Board on Labor Relations, Inc.
*Defendant*


Geoffrey Leonard
Lyle Douglas Rowen
SEIU Local 32BJ
Office of the General Counsel
25 W18th Street
New York, NY 10011
Phone: (212)388-2131
          (212)388-3452
gleonard@seiu32bj.org
lrowen@seiu32bj.org
Attorney of Record for:
Service Employees International Union (SEIU) Local 32 BJ
*Defendant*


Dated: August 11, 2025                    /s/ *Jo Saint-George, Esq.*
                                                  Jo Saint-George, Esq.