**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

 JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

                             Plaintiffs,

            v.

ALLIED PARTNERS, INC.; ALLIED PARTNERS
MANAGEMENT LLC,  ALLIED PARTNERS
RESIDENTIAL MANAGEMENT LLC, BOARD OF
MANAGERS OF 200 EAST 79TH STREET
CONDOMINIUM; SILVERSTEIN PROPERTIES, LLC;
BROOKFIELD CORPORATION; QATAR
INVESTMENT AUTHORITY ADVISORY (USA), INC.;
COMMONWEALTH PARTNERS, LLC; ROCKEFELLER
GROUP DEVELOPMENT CORPORATION;
ROCKEFELLER GROUP INC.; BRYANT PARK
CORPORATION; SABEY DATA CENTER
PROPERTIES, LLC; MOYNIHAN STATION
DEVELOPMENT CORPORATION; SERVICE
EMPLOYEES INTERNATIONAL UNION (SEIU),
LOCAL 32BJ AND TRINITY CHURCH,  AND D0ES 10-20

                        Defendants

**FIFTH AMENDED COMPLAINT**
(Proposed Class)

AND JURY DEMAND

INDEX: 25-cv-07828

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.............................................................................................1

JURISDICTION AND VENUE...........................................................................................3

EXHAUSTION OF ADMINISTRATIVE REMEDIES………………………………………..4

JURY DEMAND………………………………………………………………………………..4

PARTIES..............................................................................................................................5

FACTUAL ALLEGATIONS APPLICABLE TO NEW DEFENDANTS…...........................15

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION………………….17

FACTUAL ALLEGATIONS COMMON TO PLAINTIFF LOIACONO &

ALL PLAINTIFFS……………………………………………………………………………30

FIRST CAUSE OF ACTION – FEDERAL PREEMPTION UNDER OCCUPATIONAL
SAFETY AND HEALTH ACT (OSH ACT)……………………………………………….38

SECOND CAUSE OF ACTION – WRONGFUL DISCHARGE OSHA 29 U.S.C. §660
§11(C)(1)...........................................................................................................................40

THIRD CAUSE OF ACTION – 42 U.S.C. §1983 CONSPIRACY TO DEPRIVE RIGHTS &
ENFORCEMENT OF EXCLUSIVE POWER OF THE CITY
...........................................................................................................................................52

FOURTH CAUSE OF ACTION – COMMON CONSPIRACY TO FRAUDULENTLY
CONCEALMENT..............................................................................................................53

FIFTH CAUSE OF ACTION – UNFAIR LABOR PRACTICES.................................................57

CLASS ALLEGATIONS.....................................................................................................59

PRAYER FOR RELIEF......................................................................................................61

CERTIFICATE OF SERVICE..............................................................................................63

**TABLE OF AUTHORITIES**

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)..................................................................70

*Arizona v. United States*, 567 U.S. 387 (2012)...........................................................................47

*Building & Construction Trades Council v. Associated Builders & Contractors*,

507 U.S. 218 (1993), ………………………………………………………………………58

Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261 (1990)............................................54

Jacobson v. Massachusetts, 197 U.S. 11 (1905)..........................................................................53

Thomas v. Review Bd., 450 U.S. 707 (1981)................................................................................70

United States v. Alpers, 338 U.S. 680 (1950)...............................................................................52

Whirlpool Corp. v. Marshall, 445 U.S. 1 (1980)..........................................................................51

Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193 (2d Cir. 2005)...........................................9

Byng v. Delta Recovery Servs. LLC, No. 13 Civ. 2958, 2014 WL 2493779 (2d Cir. 2014)……54

Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30 (2d Cir. 1980).................................26

Donovan v. Occupational Safety & Health Rev. Comm'n, 713 F.2d 918 (2d Cir. 1983)……….51

Felder v. United States Tennis Association, No. 19-1094 (2d Cir. Mar. 7, 2022)………………..9

Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88 (1992)....................................................46

Livadas v. Bradshaw, 512 U.S. 107 (1994).................................................................................47

NLRB v. Local 32B-32J, 982 F.2d 845 (2d Cir. 1993)............................................................11, 68

Palmer v. Amazon.com, Inc., 498 F. Supp. 3d 359 (E.D.N.Y. 2020), aff'd 51 F.4th 491 (2d Cir. 2022)............................................................................................................................................47

Quirk v. Difiore, 582 F. Supp. 3d 109 (S.D.N.Y. 2022)...............................................................51

White v. DistroKid, LLC, 766 F. Supp. 3d 451 (S.D.N.Y. 2025).....................................49, 60, 67

Associated Gen. Contractors v. NLRB, 633 F.2d 766 (9th Cir. 1980)....................................11, 68

Bruette v. Humane Society of Ventura County, 294 F.3d 1205 (9th Cir. 2002)...........................58

Lee v. Katz, 276 F.3d 550 (9th Cir. 2002)...................................................................................58

United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539 (9th Cir. 1989)………58

Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)......................................................................54

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)......................................................54

## PRELIMINARY STATEMENT

1. This Fifth Amended Complaint is brought by Plaintiff John Loaicono, individually and on behalf of all similarly situated employees (hereinafter collectively Plaintiffs) to restate and replace the Complaint and all prior Amended Complaints to make necessary corrections to the prior pleadings and to refile certain supporting exhibits previously incorrectly filed, which are incorporated by this reference to support the allegations contained herein. This Fifth Amended Complaint relates back to the filing date of the Complaint.

2. This Fifth Amended Complaint specifically adds, upon information and belief, the following additional Defendants who are either property owners, managers, or developers, namely Silverstein Properties owners and/or managers of real property located at 3 World Trade Center, Brookfield Corporation and Qatar Investment Authority Advisory (USA), Inc. as owners and/or managers of the property located at 1 Manhattan West, CommonWealth Partners as owners and managers of the property located at 441 Ninth Avenue, Rockefeller Group as owners and managers of the property located at 1271 Avenue of the Americas, Bryant Park Corporation as owners and managers of the property located at 7 Bryant Park, Sabey Data Center Properties as owners and managers of the property located at 375 Pearl Street, Moynihan Station Development Corporation as owners and managers of the property Moynihan Center, and Trinity Church as owners and managers of the property located at 76 Trinity Place, all of which said Defendants were employers of the individuals similarly situated to Plaintiff Loiacono and as employers where represented by and through the Defendant Realty Advisory Board on Labor Relations, Inc (RAB) as Defendants labor-relations

representative in collectively bargained agreements with Service Employees International Union Local 32BJ as the employee union representative of the Plaintiffs (SEIU) as indicated in the Memorandum of Agreement (MOA) dated January 25, 2021, which is the subject of this action. See Exhibit 18g – MOA dated January 2021

3. Plaintiffs file this civil rights wrongful discharge and discrimination action against Defendant Employers including Plaintiff Loiacono's employer 200 East 79th Street Condominium, who directly or by and through their agents and/or managers, terminated Plaintiffs for exercising their inalienable fundamental right to refuse government and employer mandated medical treatments, including the Covid-19 vaccine medical treatment, protected under the federal Occupational Safety and Health Act ("OSH Act") at 29 U.S.C. §669 Subsection 20(a)(5)  and 29 U.S.C. §660 Subsection 11(c)(1)&(2) (hereinafter "Statutory & Constitutional Rights" or "Medical & Religious Freedoms or Sec. 20(a)(5) or Sec. 11(c)(1) &(2)), and the First Amendment Free Exercise Clause of Constitution of the United States. See Exhibit 1 – NYCDOH Vax Mandate Order

4. This action also seeks declaratory, injunctive, and monetary relief arising from Defendant Employers enforcement of the New York City Covid-19 Vaccine Mandate Order dated December 13, 2021 by NYC Department of Health Commissioner Dave A. Chokshi, MD, MSC (hereinafter "NYC Vax Mandate") that was preempted by the OSH Act 29 U.S.C. §667 Sec. 18(a) and was void and unenforceable as a matter of law.

5. Plaintiffs further allege claims under 42 U.S.C. §1983 wherein their Defendant Employers by and through their collective bargaining agent and/or representative Realty Advisory Board on Labor Relations, Inc. ("RAB") developed a scheme and conspired with Plaintiffs' employee labor union Defendant Service Employees International Union

Local 32BJ (SEUI) and conspired with the NYC Law Department Office of the Corporation Counsel to deprive, under "color of law," Plaintiffs of their Medical & Religious Freedoms by entering into certain MOAs between March 2020 and December 17, 2021, including specifically the MOA dated January 25, 2021 and December 17, 2021 (hereinafter collectively "MOAs"), wherein Defendants agreed to enforce the NYC Vax Mandating knowing that it was preempted by the OSH Act and illegal, but nevertheless, implemented a uniform COVID-19 vaccine condition of employment on Plaintiffs throughout New York City to allegedly prevent the transmission of the Covid-19 virus, which prevention activity is the exclusive legal responsibility of the NYCDOH, thereby participating in a citywide conspiracy to violate federal and constitutional law.

6. Throughout the term of the MOAs and the ensuing enforcement of the NYC Vax Mandate, Defendants acted jointly, as defined under New York common law conspiracy, to deprive Plaintiffs of their federally protected statutory and constitutional rights to refuse unwanted medical treatment on religious grounds, and to remain free from retaliatory termination for exercising those rights and Defendants fraudulently and refused to disclose to Plaintiffs of their OSH Act right to refuse the Covid-19 medical treatment as required by the Constitutional and the OSH Act.

## JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States, specifically, the Occupational Safety and Health Act ("OSH Act") express preemption clause at 29 U.S.C. §667 Sec. 18(a) ("Preemption Clause"), and 29 U.S.C. §660 Sec. 11(c)(2), along with and alternatively 42 U.S.C. § 1983. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3)–(4).

7.    The Court has supplemental jurisdiction over related state-law claims, including conspiracy for fraudulent by concealment, pursuant to 28 U.S.C. § 1367(a) because those claims derive from the same nucleus of operative facts.

8.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and multiple Defendants reside or conduct business here.

9.    This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and under the OSH Act 29 U.S.C. §669 Sec. 11(c)(2).

## B.    Exhaustion of Administrative Remedies

10.    Plaintiffs are not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section 11(c)(2) because the statue only states that an employee "may" file a complaint with the OSHA Secretary and does not contain any mandatory language for exhaustion of remedies with the OSHA Secretary.

11.    Plaintiffs adversely affected by union agreements that impinge on their rights secured by the Constitution are not required to exhaust administrative or intraunion remedies before suing in federal court. See *Seay v. McDonnel Douglas Corp.,* 427 F. 2d 996 (9th Cir. 1970).

## JURY DEMAND

12.    Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. 38(b).

## PARTIES

### A.  <u>Plaintiffs</u>

13.  John Loaicono is an individual residing in Bronx, New York who worked in the building services/operations sector at the 200 East 79 Street Condominium (Condo) within New York City and is a representative of a putative class of similarly situated employees who were suspended, excluded from the workplace, or terminated for refusing the COVID-19 vaccine on religious grounds.

14.  John Loaicono represents the interests of employees of all Defendants who are similarly situated wherein employees were terminated for exercising their Medical & Religious Freedoms pursuant to the scheme and conspiracy with NYC amongst the Defendants to terminate Plaintiffs pursuant to the various MOAs, which terms violated the OSH Act and the Constitution, including employees who worked for SEIU and RAB specifically not terminated pursuant to the MOAs but nevertheless terminated for exercising their Medical & Religious Freedom to object to the Covid-19 vaccine.

### B.  <u>Existing Defendants</u>

#### <u>200 East 79th Street Condominium (Condo Employer)</u>

15.  Defendant 200 East 79th Street Condominium is a building of individually owned residential condominium units located at 200 E 79th St, New York, NY 10075 that has granted power of attorney to its Condominium Board ("Condo Board"), which is made up of Residential Board and a Commercial Board, that can sue and be sued pursuant to the New York Condominium Act at N.Y. Real Property Law (RPL) Art. 9-B, §339- n. .

16. The Condo Board is not an incorporated legal entity and only represents the interest of the individual condominium owners through bylaws.

17. According to the Condo Board Bylaws at Section 2.3, the Condo Board may delegate the management of the Condo building and supervision and control of workers employed by the Condo, including hiring, supervising and firing of Condo employee, setting and creating Condo employee work schedules, supervising employee payroll processing or management, to a managing agent or manager along with other powers granted to the Condo Board as stated below:

> **2.3    Managing Agents and Managers**
>
> With respect to matters the determinations concerning which the Condominium Board is entitled to make, the Condominium Board may employ a managing agent and/or a manager at a compensation established by the Condominium Board to perform such duties and services as the Condominium Board shall authorize. The Condominium Board may delegate to such managing agent or manager other powers granted to the Condominium Board by these By-Laws, except the powers set forth in Subsections 2.2.2.1(b), (e), (g), (h), (1), (m), (n) and (o); 2.2.2.2(b), (e), (o), (p), (q) and (r); 2.2.2.3(b), (e), (f), (l), (m) and (n).

(See Declaration attached as <u>Exhibit 30</u> and Bylaws attached as <u>Exhibit 31</u> hereto and incorporate herein by this reference and relied upon to make establish the allegations in this complaint)

18.  The Condo through its Condo Board is the employer of Plaintiff John Loaicono. See <u>Exhibit 32</u> attached hereto and incorporated by this reference is the W-2 of Plaintiff naming the Condo (hereinafter "Condo Employer") as his employer which is relied upon in this Complaint to support Plaintiffs allegations.

19. Under information and belief, the Condo Employer designated via board resolution and/or contract with Allied Partners Management LLC, and/or Allied Partners, Inc., and/or Allied Partners Residential Management, LLC (collectively Allied) to provide direct management of the real property and common areas and to provide direct management and supervision of

the Condo's employees, which includes the hiring, Condo employee work schedules and supervising and directing the Condo employee training, promotion, discipline, scope of work, Allied was responsible for termination of Condo employees and job duty assignment of Condo employees along with the direct management and supervision of the Condo employee payroll processing and rates, and management and supervision of Condo employee records, wherein Allied is a joint-employer of the Condo's employees for purposes of joint liability. *Arculeo v. On-Site Sales & Mktg., LLC,* 17 425 F.3d 193, 198 (2d Cir. 2005) See also *Felder v. United States Tennis Association* (2nd Cir. No. 19-1094 Decided: March 7, 2022)

**<u>Allied</u>**

20. Allied Partners Management LLC ("Allied Management") is a Section 802 New York foreign limited liability company incorporated in Delaware that provides residential and commercial property management and land development.

21. Allied has an office for process service located at 770 Lexington Ave, 17th Fl. New York, New York 10065.

22. Defendant Allied Partners, Inc. ("AP") is a New York Domestic Corporation and the parent company of Allied Partners Management LLC that has a principal business address of 770 Lexington Ave, 17th Fl. New York, New York 10065.

23. Allied Partners Residential Management LLC (Allied Residential) a New York Domestic limited liability company is also a subsidiary, partner, agent or affiliated entity of Allied Partners, Inc. and Allied Partners Management LLC with principal address of 770 Lexington Ave, 17th Fl. New York, New York 10065.

24. Under information and belief, Allied Management, AP and Allied Residential (hereinafter "Allied Entities") are affiliated entities either as subsidiaries, partners, agents, joint ventures that operate jointly as project development managers or residential and commercial property managers or operators as a single unified entity.

25. Sometime after 2014, one or all of the Allied Entities was retained to serve as the Condo Employer Board Manager pursuant to the Condo Bylaws to be responsible for supervising and controlling Condo employees -including Plaintiff Loaicono- along with managing the Condo Employer building maintenance and managing regulatory compliance for the Condo.

26. Under information and belief, Allied Entities as the Condo Board Manager is responsible to provide direct management of the real property and common areas and to provide direct management and supervision of the Condo's employees, which includes the hiring, Condo employee work schedules and supervising and directing the Condo employee training, promotion, discipline, scope of work, Allied was responsible for termination of Condo employees and job duty assignment of Condo employees along with the direct management and supervision of the Condo employee payroll processing and rates, and management and supervision of Condo employee records, wherein Allied is a joint-employer of the Condo's employees for purposes of joint liability.

27. In addition to supervising the Condo's Employees, Allied contracts with various condominium boards to serve as a property managing agent or manager and the Allied Entity's website states that it provides specifically the following contracted services:

> "Our project management services include the maintenance of all building systems, refining and maintaining preventative maintenance programs, managing regulatory compliance, coordinating typical repairs and on-call emergency support."
>
> https://www.alliedpartners.com/allied-partners-more-than-a-residential-management-company/?utm_source=chatgpt.com

28. Under information and belief, Allied Entities was also specifically responsible for managing the Condo's "regulatory compliance" specifically compliance with all federal law including the OSH Act.

29. Under information and belief, the Allied Entities on behalf of the Condo Board enter into a membership agreement with the Realty Advisory Board of Labor Relations, Inc. ("RAB") for RAB to serve as the Condo Employer's agent responsible for negotiating collective bargaining agreements with Condo's employee through the employee union the Service Employees International Union Local 32BJ (SEIU).

**Realty Advisory Board of Labor Relations, Inc. (RAB)**

30. Realty Advisory Board on Labor Relations, Inc., ("RAB"), a foreign non-for-profit corporation that provides labor relations services with service of process offices located at 12 East 41st Street, New York, New York 10017.  RAB represents the labor relation interest of commercial and residential real estate owners, including specifically RAB has a contract with Allied and/or the  Condo Board Manager to provide labor relations negotiations with employee unions that represent employees of Allied as stated in full in the attached Exhibit 18(k) attached hereto and incorporated by this reference and relied upon to establish the allegations in this complaint.

31. In its company brochure on Page 3, RAB admits that in 1978 it "became a multi-employer association which bound its members to the terms and conditions of negotiated agreements, provided that the unions ….have full authority to negotiate a collective bargaining agreement without need for subsequent ratification…" and this admission is evidence of its agency authority to create legally enforceable obligations for its employer members, which makes

RAB also responsible for unfair labor practices contained in the MOA's that resulted in the termination of Plaintiffs for refusing to Covid-19 vaccine on religious grounds. See Exhibit 34, RAB Brochure and See *NLRB v. Local 32B-32J, 982 F.2d 845, 849-50 (2d Cir. 1993)*

32.     Under information and belief and based on the RAB Brochure page 1, RAB represents members in grievance proceedings arising from terminations of employees, including the terminations of Plaintiffs for refusing the Covid-19 vaccine, and, therefore, RAB assumes direct involvement in the enforcement of the MOAs based on the following statement in their brochure:

> "We advise and represent our members in administration of their collective bargaining agreements in matters concerning personnel and human resources. We negotiate labor agreements and represent our members in grievance arbitration." See Exhibit 34

33.     The RAB brochure on Page 5 states that RAB is directly responsible for the unlawful terms of the MOAs in this action because:

> "All agreements negotiated on an industry-wide basis must be approved by the [RAB] Board of Directors as well as by the effected division of the Board."

34.     Also, the RAB brochure indicates that "Howard Rothschild… serves as the President and CEO of RAB…" and "He is also an officer and trustee on the SEIU, Local 32BJ Funds and committee and is active in the funds governance" which means that RAB active governance role in the union-management relations.

35.     The above activities of RAB in the negotiation, binding and administration of the MOAs for its members, specifically its co-Defendant Employers named herein in the MOAs establishes RAB's joint liability for any unfair labor practices, specifically the illegal MOA provisions requiring termination of Plaintiffs under the Second Circuit decision in *NLRB v. Local 32B-*

*32J*, 982 F.2d 845 (2d Cir. 1993)[1] and the case *Associated Gen. Contractors v. NLRB*, 633 F.2d 766 (9th Cir. 1980)[2].

**SEIU Local 32BJ**

36.   SEIU Local 32BJ ("SEIU Union") is a labor union that represents the interest of employees with a  union Headquarters located at 25 West 18 Street, New York, NY 1001.  Plaintiff was a member of the SEIU Union who represented his employee interests in employment collective bargaining agreements with RAB as the representative of the Allied and the Condo Board regarding bargainable terms of his employment.

37.   Under information and belief, SEIU Local 32BJ represents the labor interests of over 300,000 employees in the United States.

38.   SEIU entered into a Collective Bargaining Agreement (CBA) with RAB who represents various real property employers throughout New York City, including RAB Employers as indicated in the MOA dated January 17, 2021. See Exhibit 18k - CBA

39.   SEIU is an equal contracting party to the CBA and the relevant MOAs.

40.   SEIU is the sole and exclusive collective bargaining representative of all employees covered by the CBA and "represents the employees in all matters of wage, hours, working conditions, and the handling of grievances", according to the CBA Art. I, § 1, p. 2. and § 2, p. 2

41.    The CBA states at *Art.* VI, § 7, p. 17 that: "The RAB and the [SEIU] Union shall be deemed parties to any arbitration under this Article," which said joint participation creates joint legal

---

[1] NLRV v. Local 23BJ SEIU – held that "Where a multi-employer association acts as the exclusive bargaining representative for its member employers, its acts are attributable to those employers, and it may itself be responsible for unfair labor practices." Id. at 849-50-Note: This case has not been overturned.
[2] *Associated General Contractors v. NLRB* – held that ""An association acting as the agent of its members in collective bargaining is responsible for its own unfair labor practices and those it authorizes or ratifies on behalf of its members." (Id. at 769–70.)

responsibility for the enforcement of the relevant MOA including terminations of employees pursuant.

42. The CBA further states in Art. XVI, §§ 1–2, pp. 30–31 that the SEIU "Union and the RAB shall be joint trustees of the Building Service 32BJ Benefit Funds... These Funds are jointly administered by representatives of the RAB and the Union," which said joint trusteeship creates joint liability for policies that violated federal law.

43. Art. XXI, p. 41 of the CBA also states that "All memoranda of agreement, side letters, or other modifications of this Agreement shall be signed by the Union and the RAB and shall be binding upon the parties," which is evidence that the MOAs signed by SEIU and RAB are jointly and severally liable as contracting parties to Plaintiffs.

### B. Newly Added Defendants

44. Defendant Silverstein Properties, LLC is a limited liability company registered in the State of New York that owns, manages, operates, and/or controls commercial property at or associated with that real property located at 3 World Trade Center in New York, New York, and employs or directs the employment of building service employees in this District and is listed as a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB and therefore, Silverstein Properties, LLC is also an employer member subject to the CBA at Exhibit 18(k).

45. Defendant Brookfield Corporation is a corporation that owns, manages, operates, invests in, and/or controls commercial property at or associated with that real property located at 1 Manhattan West in New York, New York, and employs or directs the employment of building service employees within this District and is a party to that Memorandum of

Agreement dated January 25, 2021 by and through its agent and/or representative RAB; and therefore, Brookfield Corporation is also an employer member subject to the CBA at Exhibit 18(k)..

46.   Defendant Qatar Investment Authority Advisory (USA), Inc. (Qatar) is a U.S. advisory entity affiliated with global investment activities that owns, invests in, manages, or controls interests associated with that real property located at 1 Manhattan West or related properties within this District and employs or directs the employment of building service workers through agents and contractors and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB and therefore, Qatar is also an employer member subject to the CBA at Exhibit 18(k)...

47.   Defendant CommonWealth Partners, LLC is a limited liability company that owns, manages, operates, and/or controls commercial property at or associated with that real property located at 441 Ninth Avenue in New York, New York, and employs or directs the employment of building service workers within this District and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, CommonWealth is also an employer member subject to the CBA at Exhibit 18(k)..

48.   Rockefeller Group Development Corporation is a corporation that owns, manages, operates, and/or controls commercial property in this District, including property at or associated with 1271 Avenue of the Americas, and employs or directs the employment of building service workers and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Rockerfeller

Group Development Corporation is also an employer member subject to the CBA at Exhibit 18(k)..

49.    Defendant Rockefeller Group Inc. is a corporation affiliated with Rockefeller Group Development Corporation that owns, manages, operates, and/or controls commercial property at or associated with that real property located at 1271 Avenue of the Americas in New York, New York, and employs or directs the employment of building service workers and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Rockerfeller Group, Inc. is also an employer member subject to the CBA at Exhibit 18(k)..

50.    Defendant Bryant Park Corporation is a not-for-profit or similar entity that manages, operates, maintains, or controls public/private space and related commercial property at or associated with that real property located at 7 Bryant Park in New York, New York, and employs or directs the employment of building service workers and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Bryant Park Corporation is also an employer member subject to the CBA at Exhibit 18(k)..

51.    Defendant Sabey Data Center Properties LLC is a limited liability company that owns, manages, operates, and/or controls commercial property at or associated with that real property located at 375 Pearl Street in New York, New York, and employs or directs the employment of building service workers and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Sabey Date Center Properties LLC is also an employer member subject to the CBA at Exhibit 18(k)..

52. Defendant Moynihan Station Development Corporation is a development entity that manages, operates, or controls property and facilities at or associated with that real property located at Moynihan Station in New York, New York, and employs or directs the employment of building service workers within this District and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Moynihand Station Development Corporation is also an employer member subject to the CBA at Exhibit 18(k)..

53. Defendant Trinity Church is a religious corporation or similar entity that owns, manages, operates, and/or controls property at or associated with that real property located at 76 Trinity Place in New York, New York, and employs or directs the employment of building service workers and is a party to that Memorandum of Agreement dated January 25, 2021 by and through its agent and/or representative RAB, and therefore, Trinity Church is also an employer member subject to the CBA at Exhibit 18(k)..

54. All newly added Defendants hereinafter shall be referred to as "RAB Employers".

## AGENCY, REPRESENTATION, AND AGREEMENT ALLEGATIONS FACTS APPLICABLE TO ALL NEWLY ADDED DEFENDANTS

55. At all relevant times, each newly added Defendant "RAB Employers" authorized and utilized the Realty Advisory Board on Labor Relations, Inc. ("RAB") as its labor-relations representative and bargaining agent under the CBA for purposes of collective bargaining with SEIU Local 32BJ regarding terms and conditions of employment for building service workers in New York City during the Covid-19 Pandemic.

56. On or about between March 2020 and December 17, 2021, SEIU Local 32BJ and RAB executed several Memorandums of Agreement ("MOAs") at Exhibit 18a-j, and

specifically entered into that certain MOA dated January 25, 2021 on behalf of the RAB Employers. Upon information and belief, each of the RAB Employers was represented by RAB in the negotiation and implementation of the MOAs and adopted or ratified its terms.

57.    Under information and belief, the MOA and related RAB/SEIU guidance established and implemented a uniform COVID-19 vaccination condition of employment for bargaining-unit employees, including policies authorizing exclusion from the workplace or termination for failure to provide proof of vaccination by stated deadlines, subject to limited and inconsistently applied accommodation processes.

58.    At all times material, each newly added Defendant acted through RAB as agent and through its own managers, contractors, or property-management affiliates to implement and enforce the MOA's vaccination requirements as workplace policy.

59.    The foregoing actions were undertaken in concert with other RAB-represented employers, and with knowledge that employees possessed federal statutory rights implicated by such policies, including rights protected by the OSH Act and the Constitution of the United States.

60.    The CBA between SEIU and the RAB Employers including the Condo Employer, attached and incorporated herein as Exhibit 18(k) states that:

> "Nothing herein contained shall be deemed to limit or diminish in any way …..any employee's right to institute proceedings pursuant to the provisions of State or Federal labor relations laws, or any statutes or rules which may be applicable." See Page 28, §4

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**A.  FACTS RELEVANT TO ALL CAUSES OF ACTION**

60.   All proceeding paragraphs are hereby restated and incorporated herein as if full stated.

61.   In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 2

62.   The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

63.   Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018).

64. The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter OSHA Standards) See collectively 29 U.S.C. §652 Section 3(8) (Emphasis added).  See Exhibit 3- the entire OSH Act

65. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See United *Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

66. According to 29 U.S.C. §655 Sec. 6(a), the Secretary shall:

> "promulgate the standard which assures the greatest protection of the safety or health of the affected employees."

67. Pursuant to 29 U.S. §652 Sec. 3 (5), Defendants are "employers" that engage in business affecting commerce who are mandated to comply with OSHA standards, rules and regulations and guides or orders pursuant to 29 U.S.C. §654(a).

68. The OSH Act places a duty on all employers as regulated entities pursuant to General Duty Clause at 29 USC 654 Sec 5(a)(1), to provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

69. The OSHA standards, rules and regulations instruct employers, including Defendants, on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

70. The basic safety principle of the OSHA General Duty Clause is to place on employers including all Defendants, as individual regulated employers, the duty to remove "hazards"

from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death.

71.    All Defendants are mandated by the OSHA Act standards to only use safety "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations.

72.    Each employee of Defendants also has the duty according to 29 U.S.C. §654 Sec. 5(b) of the OSH Act, which state and include as follows:

> "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

73.    Employees are not required to comply with occupational safety and health standards or rules or regulations and orders that do not meet the minimum standards, safety methods, rules, regulations or orders approved by the OSHA Secretary.

74.    29 U.S.C. §654 Sec. 5(b) also expressly confers the right to any employee to object to any employer mandated rule, order and requirement that obligates an employee to comply with any safety measure, method or medical treatment, like vaccines including the Covid-19 vaccine, that is not an OSHA approved or authorized standard, rule or regulation established to control recognized hazards in the workplace.

75.    According to the OSHA Training Requirements in OSHA Standards manual, employers have a duty and responsibility to pay for training employees on the OSHA safety standards and regulations and they have a duty to inform employees of their OSH Act rights and responsibilities to "comply" with OSHA's standards, rules, regulations, guidelines or orders. See Exhibit 4

76.    OSHA approved specific safety standards, and regulations to mitigate any and all "recognized airborne hazards" that cause serious injury or death that can appear in a workplace atmosphere that employers, under the General Duty Clause, are mandated to

remove from the atmosphere or shield workers from exposure to and those standards, regulations and guidelines are generally  referred to as the Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards);  See Exhibit 5

77.   In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. See Exhibit 6 (Ventilation, In-door Air Quality collectively with the Respiratory Standards shall hereafter be referred to collectively as the "Respiratory Safety Method Standards")

78.   These approved Respiratory Safety Method Standards have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic, See Exhibit 7 and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola.

79.   On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19"). See Exhibit 8

80.   According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids

carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.  See Exhibit 9

81. According to the sworn affidavit of Dr. Peter McCullough, a world-renowned medical physician, scientific researcher, and public-health expert, the airborne virus that causes COVID-19 constitutes a workplace illness within the meaning of the Occupational Safety and Health Act because the virus can be transmitted through the workplace atmosphere when an infected employee, in the course of performing normal job duties, speaks, coughs, or sneezes, thereby emitting airborne viral droplets or vapors that may be inhaled by co-workers or members of the public and result in infection. See Exhibit 10

82. All Defendants, as regulated employers, have a duty under the OSHA General Duty Clause and the applicable Respiratory Protection Standards to eliminate recognized airborne hazards—including the airborne viral agents that cause COVID-19—emitted into the workplace atmosphere by infected individuals, and to prevent employee exposure - through their nose, mouth, hands, eyes, and ears - to any such hazards capable of causing serious injury or death, including SARS, MRSA, Zika, pandemic influenza, measles, Ebola, and COVID-19. See Exhibit 11- OSHA Hygienist expert Bruce Miller, Aff. & See Exhibit 35

83. Federal courts have held that pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, Defendants and all employers have a non-

delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

84. The primary objective of the OSHA Respiratory Safety Method Standards is to instruct employers on their statutory duty to implement safety methods that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

85. The OSHA Respirator Safety Method Standards also mandate employers to provide "remote work from home" as an additional safety method that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 11, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

86. For at least a decade, OSHA has had "remote work" regulations, and "remote work" as an approved method for preventing employee exposure to workplace airborne hazards. Exhibit 11

87. On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines has not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. Exhibit 12

88.    The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards in general.[3]

89.    The OSHA Department of Labor Solicitor stated in its response to an Emergency Petition brought by various private sector hospital employers (who were lobbying to mandate vaccines for hospital employees), that OSHA would not promulgate a new standard that would allow employers to mandate employees to submit to taking the Covid-19 vaccine medical treatment as a substitute new safety method that employers could utilize to meet their duty to protect employees from airborne hazards, including the Covid-19 airborne hazard, in the workplace atmosphere as required under the General Duty Clause.   See Exhibit 13

90.    No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can immunizations or vaccines shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease. See Affidavits at Exhibit 10 and Exhibit 11

91.    According to the sworn affidavit of Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19,

---

[3] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

that can cause serious injury or death as required to be an OSHA approved safety minimum safety method that protects employees in the workplace.  (See Exhibit 14 Dr. Montgomery Affidavit)

92. According to sworn affidavit of Dr. Montgomery sworn affidavit and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

93. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

94. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse.  *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

95. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

96. The FDA does not have authority to aapprove the use of any vaccine by employers as an effective safety method to remove airborne hazards or to shield employees from exposure to airborne hazards as mandated under the OSH Act General Duty Clause.

97.  The Center for Disease Control (CDC) claim that the Covid-19 vaccine is "safe and effective" does not automatically make the Covid-19 vaccine an OSHA approved "safety method" that employers can use to prevent the transmission of the airborne Covid-19 virus in the workplace atmosphere.

98.  The OSH Act does not authorize the OSHA Secretary nor any regulated employer to prescribe the FDA "medical treatment" of a Covid-19 vaccine as a medical treatment to prevent the transfer or spread of a communicable disease, including Covid-19, and neither can the Covid-19 vaccine medical treatment eliminate, or control recognized airborne hazards in the workplace.

99.  It is a felony in New York for any unauthorized person or employer to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine to an employee. See New York Education Law §6520& §6521 and §6512.

100.  The NYC Vaccine Order violates New York Education Law §6520& §6521 and §6512, which bans the prescribing of medical treatments, including the Covid-19 vaccine, by non-licensed medical professionals, including Defendants, not authorize to prescribe drugs and vaccines for the treatment of any disease.

101.  Defendants' mandate that Plaintiff Loiacono, and all employees provide proof of taking the Covid-19 vaccinations is an unauthorized prescribing of a medical treatment to mitigate or prevent in Defendants' workplace atmosphere the spread of the virus that causes a Covid-19 infection.

102.  Vaccines/immunizations are not an OSHA authorized or approved workplace safety method that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

103.   If a RAB Employer desired to use a new and unapproved safety method to prevent employee exposure to any recognized airborne hazard in the workplace, the employer could have sought a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

104.   None of the RAB Employers nor the Condo Employer have applied for a variance from OSH Act to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

105.   All RAB Employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

106.   Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services (HHS) in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

107.   In March 2020,the World Health Organization publicly declared the existence of the Covid-19 hazardous virus a global Pandemic, which is a physical/biological agent that is a threat to the global health security.

108.   Sometime in early 2021, the Secretary of HHS through the FDA authorized the use of various manufactured Covid-19 vaccines for human consumption under an "emergency use authorization" (EUA).

109.    The FDA EUA allows the use of an unapproved medical product or an unapproved use of an approved medical product in emergencies to diagnose, treat, or prevent serious or life-threatening diseases when there is no alternative adequate and approved drug treatment for a hazardous physical agent and the public emergency poses a threat to national security.

110.    The OSH Act under 29 USC §669 Sec. 20(a) also provides the HHS Secretary, in collaboration with the OSHA Secretary, authority to conduct experiments and demonstrations to promulgate new occupational and safety regulations for employers to report on employee exposure to new physical agents, including the Covid-19 hazardous airborne virus, and the HHS Secretary can authorize medical exams and tests to determine incidences of new occupational illnesses.

111.    However, 29 USC §669 Sec. 20(a)(5) expressly grants employees the right to object to any OSHA, HHS or employer proposed mandated immunization/vaccine, medical treatment or medical exams based on religious grounds.

112.    The OSH Act also under 29 USC §660 Sec. 11(c)(1) expressly bans employer wrongful discharge of employees who exercise their right to reject vaccines, medical treatments or medical exams on religious grounds, which right is protected under the OSH Act at Sec. 20(a)(5).

113.    All regulated employers, including all Defendants, must comply with the anti-discrimination and wrongful discharge clause under 29 USC §660 Sec. 11(c)(1) of the OSH Act, which bans employers from discharging employees who exercise any right under the OSH Act, which includes the employee right to object on religious grounds to any government mandated or private employer mandated vaccine, which right is protected under 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act or "Right to Object".

114. The Right to Object to vaccine medical treatments or any medical treatment is a statutory right in the OSH Act provided by Congress as a provision of Sec 20(a)(5), and it is not a standard or regulation promulgated by the OSHA Secretary subject to administrative review if violated.

116. The text of the Right to Object to vaccine medical treatments is in Sec. 20(a)(5) provides employees with an automatic exemption from any employer mandated vaccines wherein employees are not required to prove that he or she has a "sincerely held belief" nor does the plain language of Section 29(a)(5) give employers discretion to deny any employees exercise of their Right to Object to vaccines mandated by government or private employers.

117. Vaccine, in general, including the Covid-19 vaccine, are medical treatments that are funded by HHS through the Administration of Strategic Preparedness & Response (ASPR) designed to support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics. See Exhibit 15

118. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  See Exhibit 7

119. Between 2009 and 2020, the City has never issued an Order mandating employers within the City to provide proof of employee vaccinations subject to fines for failure to do so.

120. Between 2009 and 2020, Defendants have never mandated any employee to provide proof of taking any vaccine on penalty of job loss for failure to do so, in order  to prevent the spread of any recognized airborne workplace hazard, which includes the period when the H1N1 virus was declared a "recognized" Global Pandemic, which could cause serious

injury or death to any employee or public persons exposure to the recognized H1N1 airborne hazard.

121. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See Exhibit 16

122. The HHS/FDA EUA approval of the Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

123. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make vaccines, in general, freely available to the general public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See Exhibit 17

124. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment within any state, federal or municipal agency or for the private sector.

125. No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" to either remove recognized airborne hazards from the workplace atmosphere or to shield employees

from exposure to any recognized airborne hazard in the workplace, including for the recognized airborne Covid-19 hazardous virus.

126. Neither immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not meet the OSH Act minimum safety standard for respiratory methods because vaccines are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccines shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See Exhibit 14 - Affidavit of Expert Dr. Baxter Montgomery

127. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to reject an employer vaccine mandate.

128. The text of the OSH Act at 29 USC §660 Sec. 11(c)(1) states that all regulated employers are prohibited from discharging employees who exercise their Right to Object employer or government mandated immunizations/vaccines, medical treatments or medical exams on religious grounds, which right is provided under Section 20(a)(5) of the OSH Act.

## FACTUAL BACKGROUND COMMON TO All EMPLOYEE PLAINTIFFS WITH SPECIFIC FACTS APPLIABLE TO PLAINTIFF LOAICONO

129. On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers to require their employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. ("NYC Vaccine Order") See Exhibit 1

130. The purpose of the NYCDOH Vaccine Order states as follows:

> "the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17109(b) of
> Administrative Code, the Department may adopt vaccination measures to effectively **prevent the spread of communicable diseases**;"

> "do hereby exercise the power of the Board of Health **to prevent, mitigate, control** and abate the current emergency"

131. The NYC Vaccine Order required, in summary, that all employers located in the City to mandate that their employees provide proof of vaccination against Covid-19 by December 27, 2021 and if an employee failed to provide proof of Covid-19 vaccination, the employer was required to "exclude from the workplace any worker".

132. The City's order to exclude workers who failed to provide proof of Covid-19 vaccination was an unauthorized employee "lock-out" from their jobs in violation of Plaintiffs and RAB Employers Collective Bargaining Agreement (CBA).

133. An employer's violation of the NYC Vaccine Order was subject to a fine of not more than $1,000 dollars per violation per day per employ by the NYC Health Commissioner pursuant to the New York Health Code Chapter 22, Section 555.

134. Sometime in or about 2021, Defendants promulgated, adopted, or enforced as-condition-of-employment policy enforcing the NYC Vax Mandate that required private sectors employees to submit to COVID-19 vaccination as a prerequisite to continued work, and threatened suspension, exclusion, or termination for noncompliance.

135. SEIU and RAB employee Plaintiffs asserted religious objections to receiving the COVID-19 vaccine and sought to continue performing their job duties without medical intervention, while utilizing established workplace safety measures recognized under federal workplace-safety law.

136.    SEIU and RAB Covid-19 vaccine mandate policy, failed to disclose employees' federal rights relevant to medical refusal and anti-retaliation protections, and were implemented in a manner that conflicted with the federal statutory scheme governing occupational safety and health.

137.    As a direct and proximate result, SEIU and RAF employee Plaintiffs suffered adverse employment actions including suspension, exclusion from the workplace, constructive discharge, and termination, along with lost wages, benefits, and other damages for exercising their Right to Object the Covid-19 vaccine medical treatment.

138.    On September 21 and 27, 2021, Plaintiff Loiacono received a work email from the Defendant Condo Board Board of Managers titled "Important Covid-19 Compliance" in summary requiring employees to where masks and that no masks were required on the 2nd Floor roof deck.

139.    On or around October 14, 2021, SEIU Delegate Scott Cohen called Plaintiff Loiacono to verbally explain that a Covid-19 vaccination mandate could be implemented in the future and that there would be options available to him regarding his employment under the mandate. At no time during the call did Mr. Cohen disclose that the Union had entered into any previous agreements regarding any potential Covid-19 vaccine mandate.

140.    Unbeknownst to Plaintiff Loiacono, on September 30, 2021 the Union Defendant and RAB Defendant  entered into an agreement on behalf of Plaintiff Loiacono's employer Condo Board that required all Defendant members of the RAB to either: 1) place all employees who do not provide proof of vaccination by the Defendant's determined deadline on leave without pay (LWOP) for a period of months until they get vaccinated or obtain a religious exemption, if the Defendant approves of the exemption, or 2) be "separated" from their

jobs if the employee does not elect a voluntary LWOP, but the separation would not be deemed voluntary nor a termination for misconduct. See Exhibit 18(a)

141. Sometime on or around December 22, 2021, Plaintiff's workplace building Resident Manager, Joe Saljanin (Saljanin) inform Plaintiff Loiacono verbally that he was mandated to be vaccinated by December 27, 2021 in order to continue to work due to the City's Vaccine Order that set the December 27, 2021 deadline.

142. Joe Saljanin told Plaintiff Loiacono to get vaccinated to "make my life easier."

143. On December 22, 2021, Plaintiff Loiacono asked Saljanin and Union Del. Cohen how to make a religious exemption request and he was told to make the request to Condo Board's HR Department.

144. On December 22, 2021, Allied and or Condo Board Member Bruce Gutkin asked Plaintiff Loiacono to leave the building to speak with him and told him to take the vaccine "for the greater good of society".

145. Allied and/or Condo Board President Alex Freedman asked Plaintiff about his hesitation about getting the vaccine and gave his personal experience with getting the vaccine to coerce Plaintiff Loiacono to take the Covid-19 vaccine.

146. On December 22, 2021, Plaintiff Loiacono requested via separate emails to Union Delegate Cohen and Saljanin instructions on how to submit a religious exemption request and Union Delegate Cohen responded on December 24, 2021 that the City's Vaccine Order was law and that he could be terminated if Plaintiff Loiacono did not provide proof of vaccination by December 27, 2021. See Exhibit 19

147. On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Allied Resident Manager Saljanin dated December 22, 2021 providing notice for the first time

that under the New York City Department of Health Vaccine Order, Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 and that religious exemptions did not change the mandate and that religious exemptions would only be granted based on Allied policy that required employees first provide a religious exemption letter from a religious institution on the organizations letterhead signed by the head of the religious institution. See Exhibit 20

148.   On around Friday, December 24, 2021, Plaintiff Loiacono submitted via email to Condo Board's Jaclyn Pagnotta, VP of Human Resources and to the Union Delegate Scott a request for a religious exemption from the City's Vaccine Order enforced by Condo Board but the request was not on the letterhead of a religious institution because federal law does not require it in order for him to receive an exemption. Exhibit 21

149.   On or around December 24, 2021, Plaintiff Loiacono received an automatic reply email from Ms. Pagnatta, Vice President of Human Resources for Allied stating that she was out of the office until Tuesday, December 28, 2021.

150.   On or around December 28, 2021, the Resident Manager called Plaintiff Loiacono back to the building to give him a form from the New York City Legal Department with instructions from the City Law Department regarding religious exemptions and when exemptions were granted that the Resident Manager required Plaintiff Loiacono to sign. See Exhibit 22

151.   On or around January 11, 2022, Plaintiff Loiacono spoke by telephone with Ms. Pagnotta wherein she explained that Plaintiff Loiacono was instructed to leave his job.

152.   Ms. Pagnotta's demand for Plaintiff to leave was by delegated authority from the Condo Board to Allied and its employees.

153.    Around January 18, 2022, Plaintiff Loiacono received a letter from Ms. Pagnotta at Allied stating that effective January 18, 2022, that Plaintiff Loiacono was placed on leave without pay and locked out of his job due to the New York City mandate and that Allied could not provide any other solution that would permit Plaintiff Loiacono to continue to work in the Allied building without providing provide that Plaintiff had taken the Covid-19 vaccine. See Exhibit 23

154.    Because Plaintiff Loiacono was locked out of his job, unable to work and his request for a religious exemption from the City Covid-19 mandate was denied, Loiacono applied for unemployment benefits because he was effectively discharged by Allied as the delegated manager of the Condo Board.

155.    The Condo Board never gave direct supervision, management or instruction to Plaintiff as an employee.

156.    Allied gave all instructions, supervision and created work time schedules for Plaintiff.

157.    Over the years of his employment with Condo Board, Plaintiff did not receive any direct correspondence from the Condo Board and Plaintiff Loaicono only received management and instruction from Allied.

158.    Defendant Condo Board objected to Plaintiff Loiacono's claim for unemployment benefits by reporting that he was terminated for "cause," which prevented him from receiving unemployment benefits despite the fact that Condo Board entered into an agreement with RAB that any employee locked out from their job for refusing to take the Covid-19 vaccine would not be terminated for cause so that said employees could receive unemployment benefits.

159. Allied and Condo Board continued the coercive tactics by terminating Plaintiff Loiacono's MetLife Insurance around March 2, 2022, which should have been maintained since he was on leave without pay and not yet terminated.

160. During the New York State Unemployment Benefit hearing on July 15, 2022, Ms. Pagnatta VP for Allied admitted that Allied and/or Condo Board were responsible for complying with OSHA standards, regulations and statutory requirements and that Allied and Condo Board ignored the OSHA statutory requirements. See Exhibit 24

161. In April 2020, near the start of the Covid-19 Pandemic, Ford Motor Corporation increased the manufacture of Powered Air Purifying Respirators (PAPR) to national distribution to employers to provide as OSHA approved safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne virus that causes the Covid-19 disease. See Exhibit 25

162. OSHA along with NIOSH and the CDC approved of PAPRs as a method to shield employees from recognized airborne hazards.   Exhibit 26

163. Allied did not purchase OSHA approved PAPR safety equipment to allow Plaintiff Loiacono to remain in his job and protect the public and other workers.

164. On April 18, 2022, Plaintiff Loiacono received an email from Allied stating that he was involuntarily placed on leave without pay ("LWOP") until April 21, 2022 and Defendants failed to provide Plaintiff with a PAPR so he could continue to work unvaccinated. See Exhibit 27

165. Under information and belief, other employees of Allied and/or Condo Employer were allowed to remain on their jobs in Defendants workplaces even after they objected to taking the Covid-19 vaccine, but Plaintiff was told to leave his workplace.

166.    Sometime after October 2022, all Defendants failed to automatically reinstate Plaintiff Loiacono to his job after the Covid-19 Pandemic and New York City Covid state of emergency was declared over.

167.    Defendants entered into Memorandum of Agreements that required Allied and the Condo Board to reinstate employees placed on leave without pay. See Exhibit 18(a) – (k) attached and incorporated by this reference and relied upon to support this allegation and all allegations herein.

168.    Unbeknownst to Plaintiffs, Cond Employer along with other RAB Employers entered into various Memorandum of Agreements between April 2020 and January 2022 that provided rights and benefits that were never disclosed to Plaintiffs, including the agreement to terminate Plaintiffs. See Exhibit 18(a)-(L)

169.    Plaintiff Loiacono and possibly other employee Plaintiffs, suffered mental and emotional distress from the intentional wrongful discharge,  and discrimination and has been unable to sleep, concentrate and has suffered depression over the last four years trying to seek employment but having no success.

170.    According to Federal public records published by FederalPay.org from data provided by the Small Business Administration as of June 30, 2023, Defendant Allied Partners Residential Management LLC received $1,435,500 in Covid-19 Pandemic Federal Paycheck Protection Program (PPP Funds) funds for the purpose of saving 103 jobs, yet Plaintiff Loiacono was locked out and terminated from his job for exercising his fundamental federal and constitutional right protected by the OSH Act.

171.    Defendant Allied Partners Residential Management received additional Pandemic PPP Funds in the amount of $1,213,578 for the purpose of preserving 63 jobs.

172. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,200 to preserve 25 jobs.

173. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,345 to preserve 17 jobs.  See Exhibit 28

174. While the Allied Entities received over $2 Million in federal PPF Funds, Plaintiffs jobs were not retained despite exercising their federal and constitutional Right to Object to the Covid-19 vaccine medical treatment.

## FIRST CAUSE OF ACTION

**(Federal Preemption Under Occupational Safety and Health Act, 29 U.S.C. § 667)**
**Against All Defendants**

175. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

176. Congress enacted the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 et seq., to establish a comprehensive federal scheme governing occupational health and safety. Section 18 of the Act (29 U.S.C. § 667) expressly preempts any state or local regulation of occupational safety or health issues where the Secretary of Labor has promulgated federal standards addressing the same subject matter.

177. Through regulations issued under 29 U.S.C. §§ 654–655 and § 669, the U.S. Department of Labor and the Occupational Safety and Health Administration ("OSHA") occupy the entire field of workplace health and safety, including the control of airborne infectious hazards. See *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) ("Once OSHA has adopted a standard, a State may not adopt or enforce any occupational safety or health standard relating to the same issue.").

178. Defendants' adoption and enforcement of the City and State COVID-19 vaccine mandates constitute a direct conflict with and are preempted by the OSHA Act Sec. 18(a). The NYC Vax Mandate regulates the same occupational-safety subject matter—protection from airborne biological hazards—already governed by OSHA standards, including 29 C.F.R. §§ 1910.132, 1910.134, and 1926.57.

179. The OSHA standards require employers to control workplace hazards through engineering controls, ventilation, and personal protective equipment, not by compelling employees to undergo a medical procedure. OSHA has never authorized compulsory vaccination as a means of hazard control.

180. By compelling vaccination as a condition of employment, Defendants attempted to exercise a regulatory power that federal law reserves exclusively to OSHA. See *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359 (E.D.N.Y. 2020), aff'd 51 F.4th 491 (2d Cir. 2022) (recognizing federal preemption over workplace-safety claims).

181. The City of New York and its Department of Health lacked authority to impose or delegate workplace vaccination requirements because neither had obtained a federally approved "state plan" under 29 U.S.C. § 667(b). Consequently, all Defendants' actions enforcing or cooperating in the vaccine mandates are void and unenforceable.

182. All Defendants' enforcement of preempted municipal and state regulations obstructed the accomplishment and execution of Congress's objectives under the OSH Act, thereby violating the Supremacy Clause of the U.S. Constitution. See *Arizona v. United States*, 567 U.S. 387 (2012); *Livadas v. Bradshaw*, 512 U.S. 107 (1994).

183. As a direct and proximate result of this unlawful preemption violation, Plaintiff and similarly situated employees sustained loss of employment, wages, benefits, and other injuries for which Defendants are jointly and severally liable.

**SECOND CAUSE OF ACTION**

**(Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1) For Violations Of §669 Section 20(a)5)**

184. Plaintiffs realleges and incorporates by reference all the proceedings paragraphs of this Complaint as if fully set forth herein and incorporates all exhibits by this reference as if full stated herein as necessary to establish the allegation of this cause of action. *See White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 455 (S.D.N.Y. 2025)

185. Defendants, and each of them, are "employers" as defined by 29 USC §652 Sec. 3 (5) of the OSH Act subject to all the duties of the Act.

186. Defendants SEIU and RAB are jointly liable for the damages caused by the termination of all employee Plaintiffs as a result of their joint control, ratification and operational participation as parties to the CBA and the MOAs that required the termination of all Plaintiffs in violation of the OSH Act and the Constitution.

187. Defendants knew that as a regulated employers that the OSH Act General Duty Clause under 29 USC §654(a)(2) only mandates Defendants to comply with OSHA authorized and approved workplace safety standards, methods, measures, rules, regulations or Orders and that Defendants were not required to comply with the NYC Covid-19 Vaccine Mandate Order because the City did not have authority to mandate employers to violate the OSH Act standards, methods or regulations.

188. All Defendants knew that they as regulated employers had the right under 29 USC §654(a)(2) to object to and not comply with the NYC Covid-19 Vaxx Mandate because the City's DOH order was not authorized by the OSHA Secretary and the Order conflicted with the OSHA minimum standards, rules and regulations that governs how to control of recognized airborne hazards in the workplace.

189. Plaintiff Loiacono and all similarly situated employee Plaintiffs had the right under 29 USC §660 Sec. 11(c)(1) to be free to wrongful discharge by Defendants for exercising any right afforded by the OSH Act as set forth below:

> (1)    No person shall discharge or in any manner discriminate against any employee ………because of the exercise by such employee on behalf of himself or others of any right afforded by this Act. (Emphasis added)

190. The OSH Act expressly provides all employees with the right to object based on religious grounds to immunization, medical examinations and medical treatments as stated in 29 USC §669 Sec. 20(a)(5) below:

> Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object thereto on religious grounds, except where such is necessary for the protection of the health or safety of others.

191. The OSHA General Duty Clause at 29 USC §654(b) also only authorizes employees to comply with approved and authorized standards, methods, orders, rules or mandated by employers or any government municipality that are "applicable to [the employees] own actions and conduct.

192. 29 USC §654(b) also provides an employee, including Plaintiff Loiacono, the right to object to unauthorized or unapproved standards, methods, rules or regulations mandated by employers and not approved by the OSHA Secretary.

193.   On or around December 24, 2021, Defendants informed Plaintiff that he and all employees were mandated to take the Covid-19 vaccine due to the NYC Covid-19 Order.

194.   On or around December 24, 2021, Plaintiff Loiacono informed Defendants via email that he objected to taking the Covid-19 vaccine based on religious grounds and requested an exemption so that he would not be discharged by being locked out of his job.

195.   On or around January 18, 2025, Defendant Allied, pursuant to the agreement made with RAB and SEUI on behalf of the Condo Board on September 30, 2021 attached as Exhibit 18(a),  discharged Plaintiff Loiacono by telling him to leave his job post and by locking him out of his job and Defendants placed him on involuntary leave without pay until April 21, 2025. See Exhibit 23

196.   Defendants have not reinstated Plaintiff Loiacono to his job with backpay or any other compensation.

197.   Every employee has an express and/or implied "private right of action" pursuant to 29 USC §660 Sec. 11(c)(2) against any person, including a private or government employer, that causes an employee to be discharged for exercising an employee's rights under the OSH Act as stated below:

> (2) Any employee who <u>believes that he has been discharged or otherwise discriminated against</u> by any person in violation of this subsection <u>may</u>, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination…..….<u>In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.</u>

198.   Under information and belief, Defendants, let other employees remain in Defendants workplaces and keep working their jobs after other employees objected to taking the mandated Covid-19 vaccine, which amounted discrimination against Plaintiff Loiacono in violation of the OSH Act under 29 USC §669 Sec. 11(c)(1).

199. Defendants refusal to allow Plaintiff Loiacono to remain on his job unvaccinated after having had received written a request from Plaintiff Loiacono outlining his religious grounds and Defendants subsequent discharge of Plaintiff Loiacono by forcing him to leave his job post violated Plaintiffs two statutory rights in the OSH Act at 29 USC §660 Sec. 11(c)(1) and 29 USC §669 Sec. 20(a)(5)

200. Due to Defendants violations of the above two statutory provisions of the OSH Act, Plaintiffs also have an implied right of action based on the US Supreme Court opinion in the *Whirlpool Corp. v. Marshall*, 445 U.S. 1, (1980) because the Supreme Court interpreted Sec. 11(c)(1)&(2) to provide employees an implied right of action holding that "nothing in the [OSH] Act suggest that…. employees… must rely exclusively on the remedies expressly set forth in the Act" through the OSHA Secretary and that OSH Acts administrative remedies are not "exclusive."

201. The enforcement authority provided to the OSHA Secretary in Sections 8, 9, 10, and 11 of the OSH Act are exclusively for the investigation and sanctioning of employers for OSHA regulatory or standards violations and nothing else.

202. Defendants' violations of Plaintiffs statutory rights to object to vaccines in Sec. 20(a)(5) and Sec.5(b) of the OSH Act are not regulatory violations subject to administrative review by the Secretary of OSHA.

203. The redress for Defendants violations of Plaintiffs statutory rights can only be accomplished through either an express or implied private right of action consistent with the *Whirlpool* decision under Sec. 11(c)(2).

204. The holdings in *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F. 2d, 918, 926 (2nd Cir. 1983) and *Quirk v. Difiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022)

regarding the non-existence of a "private right of action" under the OSH Act do not apply to Plaintiffs rights and Defendants violations in this case because the holdings in *Donovan* and *Quirk*  along with the other 218 other similar cases, only apply to OSHA cases involving violations of OSHA standards, regulations rules or guidelines for which the OSHA Secretary has administrative authority to provide a remedy.

205.    The *Donovan* and *Quirk* holdings do not bar Plaintiffs express or implied private right of action because Plaintiffs right to refuse unwanted medical treatment is under the OSH Act is not a regulatory right promulgated by the OSHA Secretary and the OSHA Secretary does not have authority under the OSH Act to fine, sanction or sue for non-standard or regulations violations. See Exhibit 32 list of 218 cases involving only OSHA regulatory violations.

206.    The United States district courts have jurisdiction to hear Plaintiffs OSHA claims under Sec. 11(c)(2 because the word "any" in the phrase "[i[n any such action" in the Sec. 20(c)(2) of the OSHA statute is plainly and liberally interpreted to include "any" action brought by an employee who has no remedy through the OSHA Secretaries administrative process and so that all rights provided an employee under Sec. 20(a)(5) and Sec. 5(b) of the OSH Act are not rendered meaningless and without enforcement according to the U.S. Supreme Court ruling in the case *United States v. Alpers*, 338 U.S. 680, 682, (1950).

**THIRD CAUSE OF ACTION**
**Conspiracy Claim under 42 U.S.C. §1983 to Deprive Plaintiffs Rights Under OSH Act**
**and the First Amendment Free Exercise Clause and Fourteenth Amendment**
**Substantive Due Process Clause**

207. Plaintiffs realleges and incorporates by reference all proceeding paragraphs in this Complaint as if fully set forth and all exhibits attached hereinto are incorporated by this reference and relied upon to support every allegation in this complaint. See White v. DistroKid, LLC, 766 F. Supp. 3d 451, 455 (S.D.N.Y. 2025)[4]

208. Plaintiffs right to object to the NYC Vaccine Order has been a fundamental substantive common law right of every U.S citizen since first recognized by the U.S. Supreme Court in 1905 in the case *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) when it was held that:

> "the inherent right of every freeman to care for his own body and health in such way as to him seems best…… the liberty secured by the Constitution of the United States to every person within its jurisdiction….." Jacobson at 26

209. The U.S. Supreme Court further recognized the fundamental right to refuse medical treatment in 1990 in the case *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (holding – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.")

210. Congress codified the *Jacobson* decision when it enacted 29 USC §669 Sec. 20(a)(5) of the OSH Act thereby giving all employees the right to object, on religious grounds, to

---

[4] White v. DistroKid, LLC (held: "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.")  See also Documents are integral to the complaint if the "plaintiff has actual notice" of the information contained in the documents and has "relied upon these documents in framing the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)

employer, government or private sector mandated immunizations or vaccines, medical treatments and medical exams (hereinafter the Right to Medical Freedom) which religious grounds protected by the First Amendment Free Exercise clause and the 14th Amendment substantive due process clause referenced in both *Jacobson* and *Cruzan*.

211. To prevail on a cause of action under 42 U.S.C. §1983, a plaintiff must establish, by a preponderance of the evidence, that (1) defendant deprived Plaintiff of a right secured by the Constitution or the laws of the United States and (2) in doing so, the defendant acted under color of state law. See, e.g., Byng v. Delta Recovery Servs. LLC, No. 13 Civ. 2958, 2014 WL 2493779, at *1 (2d Cir. June 4, 2014) (citing West v. Atkins, 487 U.S. 42, 48 (1988).

212. "The conduct of private actors can be attributed to the State/or municipal government for § 1983 purposes if: "(1) the State compelled the conduct, …. or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed.Appx. 627, 629 (2d Cir. 2009).

213. Plaintiffs also specifically alleges a §1983 under a conspiracy claim, wherein Plaintiff can show that: (1) an agreement between a state actor and a private entity occurred; (2) that the agreement or act in concert caused a deprivation of or inflicted an unconstitutional injury; and (3) that an overt act was done in furtherance of that goal causing damages. See *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) citing Carson v. Lewis, 35 F.Supp.2d 250, 271 (E.D.N.Y.1999); see, e.g., Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.1997) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996)

214. The agreement by and between the Defendants to deprive Plaintiff of his right to refuse the unwanted Covid-19 vaccine medical treatment and the right to remain on his job unvaccinated pursuant to the OSH Act Sections 11(c)1 and Section 20(a)(5) is expressly stated in the attached Memorandum of Agreements incorporated herein and relied upon to support this allegation Exhibit 18(a)-(L)

**A. Section 1983 Conspiracy To Deprive**

215. Defendants knew or should have known that the City's was not authorized to enforce the NYC Vaccine Order because the Order was preempted and precluded by the Federal OSH Act under 29 USC §667 Sec. 18(a) because OSHA already had established standards and methods – the Respiratory Standards and General Duty Clause to prevent the spread of any and all recognized airborne hazards, including the Covid-19 airborne hazard and Defendants knew that the NYC Order requiring Defendants to remove unvaccinated employees from the workplace directly violated OSHA and the First Amendment Free Exercise clause.

216. Despite this knowledge, Defendants SEIU and RAB on behalf of the RAB Employers, entered into that certain agreement titled "Memorandum of Agreement" (MOA) dated September 20, 2021 and December 2021, wherein, the RAB Employers - and each of them individually and collectively - through their agents and affiliates agreed to mandate that Plaintiffs take the Covid-19 vaccination in violation of 29 USC 669 Sec. 20(a)(5). See Exhibit 18(a)-(L) MOAs

217. The MOA states, in summary, that if Plaintiff Loiacono or any employee failed to take the Covid-19 vaccine that Defendants agreed to follow the instructions of the NYC Vax

manage that instructed private employers to agree to "separate" Plaintiff and other employees from their jobs for failure to take the Covid-19 vaccine, which the Agreement declared was a separation for non-disciplinary purposes.

218. Condo Employer used its other employees and/or board members, namely Resident Manager Mr. Saljanin, Alex Freedmand and Bruce Gutkin to threaten Plaintiff Loiacono to convince him to take the Covid-19 vaccine to "make life easier" for himself.

219. Defendants notice letter to Plaintiffs made clear that RAB Employers, and specifically Condo Employer, was enforcing the NYC Vax Mandate and that the Defendants enforcement was on behalf of the City's Vaccine Order demanding all employers to remove unvaccinated workers for the "good of the public."

220. RAB Employers knowledge that the NYC Vax Mandate was preempted and that the NYC Vax Mandate that required unvaccinated employees on religious grounds to be removed from the RAB Employers building expressly violated Sec. 20(a)(5) and Sec. 11(c)(1) of the OSH Act, yet, the RAB Employers nevertheless removed Plaintiffs by terminating them.

221. RAB Employers written MOAs that states in summary, that the RAB Employers will terminate unvaccinated employees pursuant to the NYC Vax Mandate and subsequent termination of those employee Plaintiffs was an overt act in furtherance of the NYC illegal Vax Mandate that the NYC Legal Department encouraged in its guidelines that constitutes a "conspiracy" or agreement accepted by the RAB Employers to deprive Plaintiffs of their Right to Object the vaccine medical treatment on religious grounds.

222. Defendant Condo Employer knew that it was not going to allow Plaintiff Loiacono to remain in his job unvaccinated, but Defendants gave Plaintiff a letter from the NYC Law

Department See <u>Exhibit 22</u>,  informing him that he could seek resolution under those federal laws that were not applicable, but Condo Employer failed to disclose to Loiacono his right to refuse under Sec. 20(a)(5) in cooperation with the NYC Law Department.

223. All Defendants failed to "advise" Plaintiffs of their OSHA right to refuse the Covid-19 vaccine under Sec. 20(a)(5) but instead cooperated with the NYC Law Department in fraudulently representing that the Title VII federal law applied by giving to Plaintiff Loiacono and other employees the NYC Law Department memo that contained false information about the Plaintiffs rights under federal law.

224. All Defendants, therefore, agreed, cooperated, participated, and conspired to enforce the City's illegal Covid-19 Vaccine Mandate that Defendants knew or should have known was invalid and preempted by the federal OSH Act..

225. While the City was acting under color of city law, Defendants enforcement of invalid illegal NYC Vax mandate amounted to a conspiracy with the City to deprive Plaintiffs of their right to object to the Covid-19 vaccine and right to remain in their jobs unvaccinated protected by the OSH Act and First Amendment Free Exercise Clause and the 14th Amendment substantive due process clauses.

226. Defendants knew that they were not licensed physicians with the power to prescribe medical treatments and Defendants knew that it is a crime to practice medicine, which includes the "treating or prescribing" of regulated drugs, without a license and that mandating Plaintiffs or any employee to take the medical treatment of a Covid-19 vaccine to retain their job is the act of prescribing a medical treatment which is a crime punishable as a felony under Education Law §6512.

227. Defendants acting jointly with the City to deprive Plaintiffs of their rights based on the sworn testimony of Dr. McCullough, Dr. Montgomery and Expert Bruce Miller, that explains that all vaccines, including the Covid-19 vaccine, are never medically necessary to prevent or mitigate the spread of any airborne communicable hazard in the workplace and therefore, neither the City nor Defendants had the right to compel compliance with the Covid-10 mandatory vaccination.

228. Defendants knew or should have known that the Covid-19 vaccine could never meet the City's public policy objective of slowing the rates of Covid-19 infections because the Covid-19 vaccine cannot prevent the transmission of the disease because vaccines cannot shield employees from exposure to the airborne hazard in the workplace and neither can the vaccine remove the Covid-airborne virus from the atmosphere in the workplace.

229. Defendants knew or should have known that the Covid-19 vaccine did not meet the OSHA Respiratory standard method that requires workplace safety methods to either remove an airborne hazard from the air or shield workers and the public from exposure to any airborne hazard in the workplace.

230. Under information and belief, Defendants the Union, RABLR, Ms. Pagnatta, Howard Rothschild, Hector Figueroa, Eric Hadar and Alex Freedman knew or should have known that: 1.) the Vaccine Orders were preempted by the OSH Act; 2) the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method; 3) Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations.

231. Defendants' failure to reinstate Plaintiffs into their jobs or similar job since the City's Vaccine Order was repealed and continued denial of other employment benefits constitutes

willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed against all Defendants and individual Defendants joint and severally.

**B. Section 1983 Coercion**

232. Defendants' termination of Plaintiffs was exclusively due to the "coercive power" of City's NYC Vaccine Orders because the City's Order came with the threat of costly monetary fines if Defendants refused to comply with the Order to remove unvaccinated employee from Defendants workplace.

233. Chapter 22 of New York City Charter, Section 555(b)(2) gives the City's Health Commissioner the authority to fine Defendants up to $1,000 a day for failing to remove every unvaccinated employee from Defendants workplace.

234. The City's coercive power also caused Defendants to enter into the illegal MOA, which violated the National Labor Relation Act ban on negotiating the civil rights of employees, in order to comply with the NYC Vaccine Order.

235. Defendants knew or should have know that MOA's approval of the remove of Plaintiffs from their jobs because Plaintiffs objected to taking the Covid-19 vaccine on religious grounds violated the NLRA and yet Defendants entered into the illegal agreement just to comply with the City Vaccine Orders.

236. Defendants were willful participants in joint and significant activity with the City by enforcing the illegal NYC Vaccine Order to also avoid huge fines from the City. See *Bruette v. Human Society of Ventura County*, 294 F.3rd 1205 (9th Cir. 2002), see *Lee v. Katz*, 276 F3d 550,554 (9th Cir. 2002) and see *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)

237. The City and Defendants had a "meeting of the minds" to violate Plaintiffs OSH Act rights along with Plaintiffs rights under the First Amendment Free Exercise and Fourteenth substantive due process clause which provide Plaintiffs the right to be to refuse and choose Plaintiffs own medical treatment. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F2d 1539, 1546-47 (9th Cir. 1989)

238. As are result of Defendants agreement to enforce the City's Vaccine Orders all Plaintiffs were locked out of all jobs in the City as Plaintiffs could not find any job in the City because of this conspiracy to coerce Plaintiffs to take the Covid-19 vaccine.

### C. Section 1983 Enforcement of Exclusive Power of the City

239. The New York City Charter at Chapter 22, Section 556(c)(2) provides the City Department of Health (DOH) with exclusive power and responsibility to control, monitor, supervise services regarding communicable diseases within the City, specifically requiring the City's DOH to "control .. communicable.. disease hazardous to the life and health ……effecting public health.

240. The NYC Vaccine Order of December 13, 2021 expressly declares that the City has exclusive authority to "control" communicable diseases for public health as follows:

> **"NOW THEREFORE,** …. .finding that …..it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency…."

241. The NYC Vaccine Order was a public function of the City under the City's law.

242. Defendants cooperation with - through the MOA - and enforcement of the NYC Vaccine Order caused Defendants to operate under color of the law of the City to violate Plaintiff OSHA and Constitutional right to object to the City's Covid-19 vaccine mandate on

religious grounds and to remain on Plaintiffs jobs unvaccinated. See *Blum v. Yaretsky*, 457 U.S. 991 (1982)

243. Defendants' enforcement of the NYC Vaccine Order was an exercise of the sovereign power of the City that is attributable to Defendants as "state action" that deprived Plaintiffs of their federal and constitutional rights.

**FOURTH CAUSE OF ACTION**
**Common Law Conspiracy for Fraudulent Concealment of Civil Right**

244. Plaintiffs realleges and incorporates by reference Paragraphs 1-142 of this Complaint as if fully set forth and all exhibits attached hereinto are incorporated by this reference and relied upon to support every allegation in this complaint. See White v. DistroKid, LLC, 766 F. Supp. 3d 451, 455 (S.D.N.Y. 2025)[5]

245. Without waiving the validity of Plaintiffs other claims, Plaintiff makes a claim for conspiracy for fraudulent concealment claim under New York law for Defendants concealment of Plaintiff's right to refuse the Covid-19 vaccine without fear of discharge and Defendants failure to disclose and concealment of Plaintiffs "optional right" to report Defendants discharge for exercising his right to refuse the Covid-19 vaccine to the OSHA Secretary within the 30 day period contained in Sec. 11(c)(2) so that the Secretary could have, at minimum, filed an injunction, to stop Defendants discharge of Plaintiff and those similarly situated.

246. The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such

---

[5] White v. DistroKid, LLC (held: "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.") See also Documents are integral to the complaint if the "plaintiff has actual notice" of the information contained in the documents and has "relied upon these documents in framing the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)

disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages, which can be proved by circumstantial evidence.

247. Each Defendant has a duty and are mandated under OSHA  29 CFR §1904.35(b)(1)(iii) to inform their employees of all their rights under the OSH Act, including specifically the right to be free from discrimination and retaliation for exercising their rights provided under 29 U.S.C. §660 Section 11(c)(1), including specifically Plaintiffs right to object to vaccines under OSH Act 29 USC §669 Section 20(a)(5) and 29 USC §654(b).

248. Plaintiffs and specifically, Plaintiff Loiacono was never informed while working for Defendants, neither were the Plaintiffs trained or told by Defendants or by Defendants employees, agents, contractors on human resource director that Plaintiffs had a right under the OSH Act 29 USC §660 Sec. 11(c)(1) and (2) to be free from discrimination and wrongful discharge and that Plaintiffs had a right to object to any immunization or vaccine, including the Covid-19 vaccine or object to any medical treatment or medical exam that includes Covid-19 testing that was provided by the OSH Act at 29 USC §669 Sec. 20(a)(5).

249. All Defendants while acting "under color of law" as state actors had a duty to disclose Plaintiffs of their federal and constitutional rights before depriving them of their rights under the Due Process clause of the 14th Amendment.

250. Defendants by and through their employees, agents or partners, Joclyn Pagnotta head of Human Resources, Resident Manager Saljanin and Union Delegate Scott Cohen (collectively Defendants Employees) all had a duty under the OSHA Act to disclose to Plaintiffs their right to object to the NYC Covid-19 vaccine and each time Plaintiff Loiacono spoke to Ms. Pagnaotta, or Mr. Saljanin or Mr. Cohen by email, phone or in person not one of them disclosed to Plaintiff that he had a right to object on religious

grounds the Covid-19 vaccine, that Plaintiffs had a right to remain on his job unvaccinated and that Plaintiffs had an "optional right" to report to the OSHA Secretary Defendants wrongful discharge and discrimination set forth above.

251. Allied wrongly told Plaintiff Loiacono - either via email or verbally -that he had to submit a Title VII or Disability Act request for religious accommodation letter explaining in detail his religious practice of refusing the Covid-19 and requiring a clergy letter before he could exercise his right to refuse the Covid-19 vaccine and remain in his job unvaccinated.

252. Allied also delivered to Plaintiff Loiacono the NYC Law Department letter that fraudulently represented Plaintiffs federal rights under Title VII and thereby failed to disclose Plaintiff Loiacono rights under the OSH Act before termination.

253. Defendant Allied delivery to Plaintiff Loiacono with a copy of the New York City Law Department letter attached and incorporated herein as Exhibit 22 was for the purpose of misleading leading Plaintiff to believe that he was required to submit an explanation of his religious beliefs in order to obtain an religious exemption and leading Plaintiff Loiacono to believe that Allied on behalf of Condo Employer had the right to terminate him.

254. All RAB Employers and other Defendants who delivered the NYC Law Department letter to their employees also misrepresented to their employee Plaintiffs their federal rights and failed to disclose their OSH Act Sec. 20(a)(5) Right to Object.

255. The above act amounts to fraudulent concealment of Plaintiffs rights.

256. Defendants agreed with, collaborated and enforced the false information given in the NYC Law Department memorandum for the purpose of fraudulently concealing Plaintiffs OSHA Act Right to Object on religious grounds.

257. Nowhere in the MOAs signed by the Defendants wherein Defendants conspired to terminate unvaccinated Plaintiffs did Defendants agree to notify Plaintiffs of their right to refuse the Covid-19 vaccine medical treatment pursuant to Sec. 20(a)(5) of the OSHA Act.

258. Defendants acting under "color of law" agreed to conceal Plaintiffs right to refuse the mandated Covid-19 vaccine medical treatment protected under Sec. 20(a)(5) of the OSH Act by only disclosing the NYC Law Department memorandum which only disclosed inapplicable Title VII rights.

259. Defendants Pagnatto in the January 18, 2021 letter misrepresented to Plaintiff that Defendants had the right to discharge him by removing him from his workplace based on Title VII standards which was false.

260. Plaintiff Loiacono and other Plaintiffs who received the NYC Law Department letter reasonably relied on Defendants Employees instruction to submit a "religious accommodation" request, and as a result of relying on that process, Plaintiffs were deprived of their rights under the OSH Act.

261. Defendant's omissions described above was intentional and a blatant disregard for Plaintiffs' rights giving rise to punitive damages for said fraudulent acts because the duty to disclose was statutory for which Defendants are strictly liable.

262. The fact that Defendants supplied Plaintiffs with the letter from the NYC Law Department representing that the Title VII law applied to Plaintiffs OSHA rights is evidence that Defendants willfully concealed Plaintiffs OSHA rights and is evidence of Defendants wrongful discharge and discrimination.

263. Plaintiff, therefore, has to rely on the implied private right of action also provided under 29 USC §660 Sec. 11(c)(2) that allows Plaintiff to file this complaint for Defendants discharge and discrimination.

264. Defendants also concealed that they entered into the MOAs attached and incorporated by this reference in Exhibit 18(a) –(L), and specifically the MOA at Exhibit 18(a) dated September 30, 2021, Exhibit 18(k) dated 12/17/2021 and Exhibit 18(h) dated January 25, 2021 regarding layoffs, which all MOA's involved agreements by the Defendants to deprive Plaintiff of his rights under the OSH Act including his right to refuse to take the unwanted Covid-19 vaccine medical treatment and the right to remain at his job unvaccinated with the appropriate OSHA authorized safety equipment.

265. Common law fraud has a 4-year statute of limitations which all Plaintiffs claims meet the statute of limitations period.

## FIFTH CAUSE OF ACTION
### Unfair Labor Practices

266. Plaintiffs realleges and incorporates all proceeding paragraphs of this Complaint as if fully set forth and all exhibits attached hereinto are incorporated by this reference and relied upon to support every allegation in this complaint. See White v. DistroKid, LLC, 766 F. Supp. 3d 451, 455 (S.D.N.Y. 2025)

267. As a direct and proximate result of the conduct of RAB and SEIU, its officers, agents and employees hereinabove set forth, SEIU and RAB engaged in unfair labor practice of wrongful discharge and discrimination in violation of 29 USC §158(a)(3) and (b)(2) and NLRA § 8(b)(1)(A), (2) by entering into an agreement with Defendants that violated the federal OSH Act at 29 USC §660 Sec. 11(c)(1) by denying Plaintiffs their fundamental

First Amendment, 14th Amendment and federal OSH Act right to object to taking the Covid-19 vaccine as provided under 29 USC §669 Sec. 20(a)(5) of the OSH Act. See NLRB v. Local 32B-32J (2d Cir. 1993)

268. The SEIU and RAB also conspired and agreed to the wrongful discharge and discriminatory terminations employee Plaintiffs by the RAB employers when the RAB employers agreed pursuant to the MOAs contained in Exhibit 18(a)-(L) to terminate unvaccinated employees due to religious reasons in violation of the OSH Act and the Constitution.

269. SEIU, RAB and RAB Employers conspiracy or MOAs to wrongly discharge Plaintiffs and/or discriminate also violated the NLRA because it is an unfair labor practice to negotiate away the fundamental and federal protected rights of employee members of the Union through the MOAs entered into contained in Exhibits 18(a)-(L) attached hereto and incorporated by this reference.

270. By reason of the foregoing, Plaintiff is entitled to a permanent injunction enjoining UNION, its officers, agents and employees from violating Section 158(a)(3) & (b)(2) of the NLRA now or in the future and declare the all agreements between Defendants and the Union regarding the discriminatory acts are declared void and invalid along with other relief outlined in the prayer for relief.

271. Defendants agreed pursuant to the 2018-2022 Resident Managers Agreement attached as Exhibit 18(k) that Plaintiff shall have the right to pursue and institute proceedings provided under any applicable statute including the OSH Act, as set forth below:

> "Nothing herein contained shall be deemed to limit or diminish in any way …….any employee's right to institute proceedings pursuant to the provisions of State or Federal labor relations laws, or any statutes or rules which may be applicable." Article VIII, Section 4, page 28

272.    Defendants have a duty to disclose to Plaintiff his rights under Article VIII, Section 4 of the above referenced Agreement.

273.    Defendants failure to disclose his right to pursue his OSHA and First Amendment Free Exercise rights outside of the collective bargaining arbitration process is a breach of Defendants fiduciary and contractual duty to Plaintiff and violates the federal National Labor Relation Act §8(d), 20 U.S.C. §158(d).

274.    The Supreme Court held in *Alexander v. Gardner -Denver Co*, 415 US 36 (1974) held that an employee does not forfeit independent statutory rights, which includes his OSH Act rights, just because of a union collective bargaining agreement exists.

275.    The Supreme Court also held in *Emporium Capwll v. Western Addition Community Org.* 420 US 50 (1975) that a union's authority does not extend to waiving individual statutory or constitutional rights of employees.

276.    The Supreme Court in Thomas v. Review Bd, 450 US 707 (1981) also held that religious exercise is an individual matter that cannot be subordinated to collective decisions.

277.    SEIU and RAB and RAB Employers MOAs at Exhibit 18(a)-(L) deprived Plaintiffs of their rights under the OSH Act and the First Amendment Free Exercise Clause, which was also a breach of the SEIU's duty to Plaintiffs to comply with federal law and the terms of the agreement at Exhibit 18(k) amounts to unfair labor practices and a violation of Plaintiffs statutory and fundamental rights.

## CLASS ALLEGATIONS

278.    Plaintiffs realleges and incorporates by reference Paragraphs 1-227 of this Complaint as if fully set forth and all exhibits attached hereinto are incorporated by this reference and relied upon to support every allegation in this complaint. See White v. DistroKid, LLC, 766 F. Supp. 3d 451, 455 (S.D.N.Y. 2025)[6]

279.    Class representative Plaintiff Loiacono, seeks class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of himself and all private sector employees who worked or works for employers within the City similarly situated (hereinafter the "Class")

280.    The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

281.    The Class claims raise common questions of fact or law, including, but not limited to:

a.    Whether the Vaccine Orders are preempted by the OSH Act because the Vaccine Order specifically violates the OSHA minimum standard for preventing exposure to airborne communicable diseases;

b.    Whether the wrongful discharge and/or lockout of Plaintiffs for refusing to take the Covid-19 vaccine based on religious and non-religious grounds violates the OSH Act, Title VII, the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

---

[6] White v. DistroKid, LLC (held: "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.")  See also Documents are integral to the complaint if the "plaintiff has actual notice" of the information contained in the documents and has "relied upon these documents in framing the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)

232. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy because there are no material issues of fact in dispute and only issues of law predominate the claims. There is no dispute that all Defendants terminated and/or locked out their respective Plaintiffs employees due to their unvaccinated status based on religious and/or non-religious grounds in violation of the OSH Act and Section 1983.

233. The claims of the named Plaintiff are typical of the claims of the class in that the named Plaintiffs and class members claim that their right refuse to comply with the Covid-19 Vaccine Order or Covid-19 vaccine mandated enforced by Defendants and subsequent termination or lock out of their jobs was willful or a reckless disregard for their rights protected by federal and constitutional law warrantying punitive damages against the Defendants jointly and severally.

234. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

235. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as class members and there is no need to a review of the individual facts or circumstances around each Plaintiffs job and the facts regarding each Plaintiffs termination or lock-out because the conclusions of law are determinative for each cause of action and not the facts surrounding the terminations or lockouts.

**PRAYER FOR RELIEF**

236.  Plaintiff Loiacono individually and for those similarly situated claims the following relief:

   a.  Permanent injunction against Defendants precluding future discharge of any employees who objects to any employer or government mandated immunization, medical treatment or medical exam pursuant to 29 USC §669 Sec. 20(a)(5) of the OSH Act;

   b.  reinstatement to Plaintiffs jobs with title and seniority;

   c.  backpay from the date Plaintiffs were either formally terminated in writing or permanently locked out of their jobs with interest;

   d.  compensatory damages;

   e.  punitive damages to be determined by a jury;

   f.  loss payments into any retirement fund since Plaintiffs were either formally terminated or permanently locked out of their jobs;

   g.  reinstatement of loss time into retirement calculation;

   h.  expungement of discipline codes from each employee's personnel file and records;

   i.  mental and emotional distress damages;

   j.  punitive damages;

   k.   interest on any compensation pursuant to applicable law;

   l.  attorney fees and costs; and

   m.  any other remedies allowed by law

Dated: October 22, 2025

Respectfully submitted,

By: /s/ *Jo Saint-George*

Jo Saint-George, Esq.
4435 E. Chandler Blvd, Suite 200
Phoenix, Arizona 85048
Phone: (602)326-8663
Email: jo(at)woc4equaljustice.org

Law Office of
Tricia S. Lindsay, PC
531 E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552
Email: Tricialindsaylaw(at)gmail.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of this FIFTH AMENDED COMPLAINT AND EXHIBITS was: (

X  ) e-mailed and e-filed (X  ) mailed (    ) faxed (    ) hand delivered to the person(s) listed

below on:

Michael Scott Hanan
Gordon & Rees, LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Phone: 212-269-5500
mhanan@grsm.com
**Attorney of Record for**:
*Allied Partners Management LLC*
*Allied Residential Management LLC*
*Allied Partners, Inc.*
*200 East 79th Street LLC. Condominium*

Daniel Ryan Axelrod
Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith
7 World Trade Center
Ste Floor 11
New York, NY 10007
Phone: (212)232-1300
daniel.axelrod@lewisbrisbois.com
Peter.Shapiro@lewisbrisbois.com
**Attorney of Record for:**
Realty Advisory Board on Labor Relations, Inc.
*Defendant*

Geoffrey Leonard
Lyle Douglas Rowen
SEIU Local 32BJ
Office of the General Counsel
25 W18th Street
New York, NY 10011
Phone: (212)388-2131 or  (212)388-3452
gleonard@seiu32bj.org
lrowen@seiu32bj.org
**Attorney of Record for:**
Service Employees International Union (SEIU) Local 32 BJ
*Defendant*

Dated: October 22, 2025                          /s/ *Jo Saint-George, Esq.*