**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN LOIACONO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

ALLIED PARTNERS, INC.; ALLIED PARTNERS MANAGEMENT LLC,  ALLIED PARTNERS RESIDENTIAL MANAGEMENT LLC, REALTY ADVISORY BOARD OF LABOR RELATIONS, INC., BOARD OF MANAGERS OF 200 EAST 79TH STREET CONDOMINIUM; SILVERSTEIN PROPERTIES, LLC; BROOKFIELD CORPORATION; QATAR INVESTMENT AUTHORITY ADVISORY (USA), INC.; COMMONWEALTH PARTNERS, LLC; ROCKEFELLER GROUP DEVELOPMENT CORPORATION; ROCKEFELLER GROUP INC.; BRYANT PARK CORPORATION; SABEY DATA CENTER PROPERTIES, LLC; MOYNIHAN STATION DEVELOPMENT CORPORATION; SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU), LOCAL 32BJ AND TRINITY CHURCH,  AND D0ES 10-20

Defendants

**PROPOSED ORDER RE: RULE 11 SANCTIONS WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**INDEX: 25-cv-07828 (MKV)**

Upon consideration of Plaintiff's Motion for Rule 11 sanctions and upon proper notice to Defendants, this Court makes Orders based on the following findings of facts and conclusions of law contained in the record that includes Plaintiffs 5th Amended Complaint at ECF#84 and all exhibits attached thereto, Defendants Motion to Dismiss with Reply Motion ECF#93,#94, & #108, Plaintiff's Opposition Motion to Dismiss at ECF #103 along with any exhibits attached thereto and Plaintiff's Notice of Motion, Motion and Memorandum of Points and Authorities in Support of Plaintiffs Motion for Rulle 11 Sanctions ECF #109, and any response and reply by

Defendants and Plaintiff thereto, this Court makes the following findings of facts and conclusions of law based on the procedural background also summarized below.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint on January 18, 2025. Plaintiff filed an initial summons and an Amended Complaint on May 5, 2025 in the United State District Court for the Eastern District of New York. On June 13, and June 20th, respectively, certain Defendants filed letters requesting a conference on proposed motions to dismiss (ECF#s26 and #28). On July 24, 2025, Magistrate Judge Joseph A. Marutollo ordered discovery stayed in this matter pending Defendants' proposed motions to dismiss.

On August 26, 2025, Eastern District Judge Ann Donnelly conducted a pre-motion conference to address certain Defendants' proposed motions to dismiss. At the conference, Defendants also raised their desire to file motions for sanctions under F.R.Civ.P. 11  against Plaintiff and Plaintiff also requested to file a cross Motion for Rule 11 sanctions against Defendants having already served Defendants the requisite Rule 11 notice on April 23, 2025 and explained the basis during the hearing. Before the pre-motion conference, Plaintiff filed a Second, Third, and Fourth Amended Complaint, in order to, inter alia, correctly name certain Defendants and during the August 26, 2025 conference, Judge Donnelly determined that these amendments did not affect the substantive issues to be addressed in Defendants' motions to dismiss.  Judge Donnelly directed the parties to propose a motion briefing schedule on these motions, which the judge stated she had no authority to preclude any motions, and instructed Defendants to confer on whether to file a single motion to dismiss or separate motions to dismiss. The following day, Judge Donnelly issued an order to show cause to Plaintiff to address

the apparent lack of venue in the E.D.N.Y. After the parties submitted their positions on the venue issue, Judge Donnelly issued the order transferring the case to this Court.

After transfer of this case to this Southern District, this Court ordered the parties to file a case Status Report that was filed on October 6, 2025 at ECF#66, which included requests from Defendants to file a joint Motion to Dismiss and a request from Plaintiff to file a 5th Amended Complaint, along with a motion to convert Defendant's Motion to Dismiss to a Motion for Summary Judgment alleging that there were no facts in dispute in the case and Plaintiff requested to file a proposed Rule 11 motion against Defendants who had also requested to file a Rule 11 against Plaintiff but later withdrew.  This Court granted Plaintiff's request to file a 5th Amended Complaint that was filed on October 30, 2025 at ECF#84, denied Plaintiff's request to convert Defendants motion to a Motion for Summary Judgment without prejudice until after discovery was completed. Defendants were ordered to file their proposed Motion to Dismiss that was filed on November 13, 2025 at ECF#93 along with any Rule 11 motion.

Plaintiff filed his Response to the Motion to Dismiss on December 4, 2024 at ECF#103 and Defendants filed their Joint Reply at ECF#108. This Order is based on Plaintiffs request for Rule 11 sanctions based on new allegations by Plaintiff of fraud on the Court by Defendants contained in Defendants Reply brief along with Plaintiff's prior allegations of fraud in Defendants Motion to Dismiss.

## II.  FINDINGS OF FACT

Based on the record in this case, this Court makes the following findings of facts that were  undisputed by Defendants in their Motion to Dismiss and Reply and for which this Court has discretion to take judicial notice under Federal Rules of Evidence Rule 201. This Court is

also free to consider "the full record in the case in order to select the appropriate sanction."

*Southern New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 145 (2nd Cir. 2010) (citing

*Diapulse Corp. of Am. v. Curtis Publ'g Co.*, 17 374 F.2d 442 (2d Cir. 1967)).

1. The Covid-19 virus is an airborne hazardous disease that can cause serious injury or death according to the World Health Organization (WHO), the Centers for Disease Control (CDC) and the Occupational and Safety Administration (OSHA) Dr. Peter McCullough, and Dr. Baxter Montgomery.  See Exhibits to 5th Amended Complaint, ECF#84-2, Bates #141-143, #158-165 & #293, ¶ J

2. The Covid-19 virus is transmitted from human to human through either the inhalation of very fine airborne respiratory droplets and aerosol particles containing the Covid-19 virus (e.g. through quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere of workplaces where employees who may be infected with the Covid-19 virus breath, speak, cough or sneeze in the workplace, or (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) through employees touching mucous membranes with hands that have been soiled with the virus from touching surfaces contaminated in the workplace with droplets containing the Covid-19 virus.  See Exhibit 8 attached to 5th Amendment Complaint at ECF #84-2, Bates #140-143, Exhibit 9, Bates #144-152 and Exhibit 10, Bates #160-162, ¶34, ¶37-43 and Exhibit 12, Bates #247-282.

3. In March 2020, when the World Health Organization and the CDC declared Covid-19 airborne hazard a pandemic, it became a recognizable airborne hazard in both

workplaces and public places where employees perform their work. See <u>Exhibit 8</u> attached to 5th Amendment Complaint at ECF #84-2, Bates#140-143

4. The Occupation Safety and Health Act of 1970 (OSH Act) is a federal workplace safety statute wherein the OSHA Secretary has exclusive power under 29 U.S.C. ¶655(b) of the OSH Act to set "a nationwide floor of minimally necessary safeguards" against workplace hazards defined in the OSH Act as occupational safety and health standards and methods (Minimum Safety Standards) that regulate private and public employers defined in the OHA Act at 29 USC §652 Sec. 3(5) ("Regulated Employers"), who are mandated to comply only with the Minimum Safety Standards to provide safe workplaces for employees and the general public who enter workplaces provided to the public as public accommodations. (collectively "workplaces"). See Amended Complaint, at Page 22, ¶ 66 and  29 U.S.C. § 654 Sec. 5(a) of the OSH Act; See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018) and Exhibit at ECF#84-1, Bates#23-59.

5. An occupational safety and health standard under the OSH Act is defined as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." See 29 U.S.C. §652 Section 3(8) of the OSH Act See ECF#84-1, Bates 232-59, and also 5th Amended Complaint at ¶64, Page 18

6. In 1971 the OSHA Secretary promulgated the nationwide minimum standards and methods at 29 C.F.R. 1910.134 et al. to prevent and reduce the transmission of any recognized airborne hazards in workplaces, including the Covid-19 airborne hazard,

through the use of personal protective equipment (PPE) that shields employees from exposure to the Covid-19 airborne viral pathogen in the workplace and through the use of various ventilation methods defined in the C.F.R. collectively called the "Respiratory Standards." See Exhibits to 5th Amended Compl. at ECF #84-1, Bates #119-130, Bates#133-136

7. The OSHA General Duty clause at 29 U.S.C. §654 Sec. 5(a) & (b) mandates all Regulated Employers to comply with and utilize only OSHA approved Minimum Safety Standards and methods to prevent the transmission of all workplace hazards, including specifically the Respiratory Standards for airborne hazards that include the Covid-19 airborne hazard. See 5th Amended Complaint at ECF#84-1 Bates#23-59 & Bases#131

8. Regulated Employers must seek a variance from the Secretary of OSHA pursuant to OSHA 29 U.S.C. §655 Sec. 6(b)(6) to use any safety method not listed as an OSHA approved standard or method, including unapproved methods not included in the Respiratory standards.

9. Defendants are Regulated Employers under the OSH Act. See Transcript of VP of HR for Allied at ECF#84-4, Bates#570—#571, #577, #581-582, #587

10. The General Duty Clause at 29 USC 654 Sec. 5(b) of the OSH Act also mandates employees of Regulated Employers to only comply with OSHA approved standards and methods including the OSHA Respiratory standards and methods and does not mandate compliance with any unapproved methods. See ECF#84-1, Bates #

11. 29 U.S.C. §667 Sec. 18(a) of the OSH Act only permits states and their local governments to enact and enforce health and safety laws or regulations applicable to

risks associated with airborne hazards - like the Covid-19 virus - that can cause serious injury or death in Workplaces when there is no OSHA safety standard, method or regulation that covers the risk. See *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) ("Once OSHA has adopted a standard, a State may not adopt or enforce any occupational safety or health standard relating to the same issue."). See ECF#84-5, Bates#900-901

12. This Court judicially recognizes that City of New York (City) is governed by the New York State Plan as identified in Exhibit 4 attached to the Plaintiff's Motion for Rule 11 Sanction; and, therefore, the City is also mandated to comply with and only utilize OSH Act Respiratory minimum standards and methods to prevent the transmission of any airborne hazard as required under 29 U.S.C. §667 Sec. 18(a) & (b).

13. The OSH Act, in general, provides employees the right to object on religious grounds to any employer or government mandated immunization, medical treatment or medical examinations pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act.

14. The City's Department of Health under the City Charter at Chapter 22, Section 556(c)(2) has the exclusively responsibility to control and manage communicable disease affecting public health. See 5th Amendment Compl. Page 52, ¶238

15. On December 13, 2021, the City Department of Health former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers located within in the City limits to require their employees to submit to Covid-19 vaccination in order to enter their private employer Workplaces or be locked out of the workplace if the employee did not provide proof of Covid-19 vaccination. ("NYC Vaccine Order") See 5th Amended Complaint at ECF #84-12 Exhibit 1 Bates# 2-6

16. Based on the language contained in the City's Covid-19 Emergency Order, the requirement that private employers to mandate employees to obtain Covid-19 vaccination before entering the employers workplace was a workplace safety regulation "to prevent the communication of infectious diseases such as COVID-19, ….in accordance with Section 17109(b) of New York Administrative Code…."

17. The City's Covid-19 Order for vaccination of employees for the prevention of the transmission of Covid-19 airborne hazard mandate on private employers is not listed in the OSHA Respiratory Standards as an authorized workplace safety method for the purpose of preventing the transmission of any airborne communicable disease hazards, including the Covid-19 airborne virus.

18. According to the OSHA website listing for variance submissions and denials at https://www.osha.gov/variance-program, neither the City nor any of the Defendants obtained a variance from the OSHA Secretary to use the Covid-19 vaccine as a workplace safety method to prevent the transmission of the Covid-19 airborne hazard in Defendants workplaces.

19. The City threatened to fine Regulated Employers up to $1,000 per violation under Chapter 22 of New York City Charter, Section 555(b)(2) if private employers, including Defendants failed to enforce the Covid-19 Vaccine Mandate on their employees. See Exhibit 5 to Pl. Rule 11 Motion and Pl. 5th Amend Compl. ECF#84, Page 55, ¶231=232

20. Defendants entered into several Memorandums of Agreements (MOAs) dated July 12, 2021, September 30, 2021, December 17, 2021 for the purpose of creating an airborne infectious disease prevent plan that adopted the City's Covid-19 Vaccine

Mandate Order in order to mandate Defendants' employees to provide proof of Covid-19 vaccination or be locked out of their jobs. See ECF#84-3 Bates#356-362, #390-392 #400-407

21. On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Defendant Allied dated December 22, 2021 notifying him that under the New York City Department of Health Covid-19Vaccine Order, Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 or be placed on leave without pay. (Defendants Vaccine Mandate Memo) See Exhibit 20 at ECF #84-4, Bates#543

22. On December 24, 2021, Plaintiff notified Defendants Allied and 200 East 79th in writing that he objected on religious grounds to complying with the City's Covid-19 vaccine mandated Order. See ECF#84-4, Bates #544-547

23. On January 18, 2022, Defendant Allied on behalf of Defendant 200 East 79th placed Plaintiff on leave without pay and on April 27, 2022 he was terminated consistent with Defendants MOAs dated December 17, 2021 and September 30, 2021, which enforced the City's Order. See ECF#84-4, Bates#550-552

24. The several Allied entity Defendants received approximately $2 Million in federal Paycheck Protection Funds (PPP Funds) created to help small businesses to preserve approximate 193 jobs at Allied during the Covid-19 Pandemic, but instead Defendants terminated Plaintiff during the Pandemic. See 5th Amended Complaint at ECF#84, Page 38, ¶ 173 and See Exhibit 28, Bates #645 -646

25. On April 23, 2025, Plaintiff served Rule 11 notice on Defendants pursuant to Fed. R.Civ. Procedure Rule 11 warning Defendants not to submit to court the legal claim

that Plaintiff does not have a private right of action under the OSH Act and not to fraudulently represent the holding in *Donovan v. Occupational Safety & Health Review Commission*, 713 F.2d 918, 926 (2d Cir. 1983) as supporting that claim when nothing in that case nor the over 200 cases provided by Plaintiff ever held that Plaintiff OSH Act precluded Plaintiff's claim under the OSH Act at 29 U.S.C. § Sec. 11(c)(1) and 29 U.S.C. § Sec. 20(5). See 200 cases at ECF#84-5, Bates #835-881

26. Defendants filed several letter motions and their Motion to Dismiss and Reply motion including the noticed legal claims Plaintiff declared in the Rule 11 notice to Defendants was not supported by any case law.

27. Defendants Reply Motion filed on December 15, 2025 contained new statements of law and fact also not supported by the record or any case law, specifically that Plaintiff did not make a claim for Declaratory Relief which was untrue, that the Declaratory Relief Act does not provide a separate claim for Plaintiff based on the OSH Act 29 U.S.C. .

### III. STANDARD OF REVIEW

In the Second Circuit, a district court's decision to impose Rule 11 sanctions is reviewed under a deferential abuse-of-discretion standard, both as to whether a violation occurred and the nature of the sanction imposed (including non-monetary sanctions). In Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir. 2003) the Second Circuit stated: "We review a district court's decision to impose Rule 11 sanctions for abuse of discretion," which standard applies equally to the finding of a Rule 11 violation and to the selection of sanctions under Rule 11(c)(4).

When a party's Rule 11 violation or litigation misconduct eliminates any genuine dispute of material fact, or corrupts the adjudicative process, a district court may impose outcome-determinative, non-monetary sanctions, including dismissal, default judgment, or summary judgment, under Rule 11(c)(4) and the court's inherent powers. See *Southern New England Telephone Co. v. Global NAPs Inc*., 624 F.3d 123 (2d Cir. 2010) While the *Global* decision focused on rule 37 discovery sanctions, the courts holding regarding a district court's power to issue sanctions in general pursuant to the Federal Rules of Civil Procedure is applicable in this case, where the *Global* court held that a "district court has wide discretion to impose sanctions, including default judgment, under its inherent power when a party has acted in "willful" and in "bad faith" which in this case includes the blatant , vexatious, wanton, and oppressive" fraudulently legal claims by Defendants. See *Id.* at 144.

"District courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." Id. at 148

IV. **CONCLUSIONS OF LAW**

1. **Jurisdiction and Authority.**

   This Court has jurisdiction to impose sanctions pursuant to Federal Rule of Civil Procedure 11, Federal Rule of Civil Procedure 56, and the Court's inherent authority to protect the integrity of its proceedings and to deter abuse of the judicial process.

2. **Rule 11 Legal Standard.**

   Rule 11 imposes an objective standard of reasonableness on attorneys and parties appearing before the Court. A violation occurs where a filing advances legal contentions not warranted by existing law, misrepresents precedent or statutory text, or continues to

advocate such positions after receipt of a Rule 11 safe-harbor notice. Subjective intent or bad faith is not required to establish a Rule 11 violation.

3. **Completion of the Rule 11 Violation After Safe Harbor.**

Where a party is served with a filing-ready Rule 11 notice identifying specific legal defects and nevertheless refuses to withdraw, correct, or narrow the challenged positions, the Rule 11 violation is complete as a matter of law. Continued advocacy of the same or expanded arguments after notice constitutes sanctionable conduct.

4. **Misrepresentation of Law and Record.**

Knowingly misrepresenting statutory text, denying the existence of claims or relief plainly pleaded in the complaint, misstating the governing legal record, or selectively omitting controlling authority constitutes a violation of Rule 11(b)(2) and Rule 11(b)(3), and independently supports a finding of fraud on the court.

5. **Striking Sanctionable Filings.**

This Court has authority under Rule 11(c)(4), and its inherent powers to strike pleadings and motion papers that are legally insufficient as a matter of law, interposed for improper purposes, or infected by fraud. Where a filing cannot succeed under any circumstances and its continued presence prejudices the orderly administration of justice, striking the filing is appropriate and necessary.

6. **Conversion to Rule 56 as a Sanction.**

When a party's sanctionable conduct eliminates any genuine dispute of material fact and leaves only legally foreclosed defenses or arguments, the Court may convert the dispositive posture to one governed by Federal Rule of Civil Procedure 56 in order to resolve the action on the undisputed record.

7. **Summary Judgment as a Non-Monetary Sanction.**

   Rule 11(c)(4) expressly authorizes non-monetary sanctions limited to what suffices to deter repetition of the misconduct. Where fraud permeates a dispositive filing, no genuine issue of material fact exists, and continued litigation would reward abusive conduct, entry of summary judgment constitutes a proportionate and appropriate sanction.

8. **Fraud on the Court.**

   Fraud on the court occurs where a party engages in a deliberate scheme to corrupt the judicial process, including by knowingly advancing false legal theories, concealing controlling law, or inviting the Court to rely on tainted or non-binding authority while withholding material facts. Such conduct warrants the Court's strongest remedial and deterrent measures.

9. **No Requirement of Lesser Sanctions.**

   The Court is not required to exhaust lesser sanctions before imposing dispositive relief where the overall record demonstrates willful, repeated, or egregious misconduct that undermines the integrity of the proceedings.

10. **Application of Law to the Undisputed Record; Declaratory and Injunctive Relief**

    Based on the undisputed record, Defendants knowingly persisted in legally unsupported and misleading arguments after Rule 11 safe-harbor notice, misrepresented statutory text and precedent, denied facts and claims plainly established in the pleadings, and advanced new fraudulent contentions in their Reply filing as detailed in the subsection below. These violations eliminated any genuine dispute of material fact and rendered Defendants' dispositive posture legally untenable.

a.  As a matter of law, and based on the undisputed Findings of Fact, Defendants advanced the following legally unsupported claims and misrepresentations, each of which lacks any warrant in existing law or the record:

  i.  **No Declaratory Relief Pleaded.** Defendants' assertion that Plaintiff failed to plead declaratory relief is false. The Fifth Amended Complaint expressly pleads declaratory relief under 28 U.S.C. §§ 2201–2202 and seeks adjudication of rights under the Occupational Safety and Health Act ("OSH Act"), establishing an actual and ripe controversy suitable for declaratory judgment.

  ii.  **No "Record" on Rule 12.** Defendants' claim that there is "no record" for the Court to consider is legally incorrect. The pleadings, exhibits attached thereto, matters subject to judicial notice, and Defendants' own Memoranda of Agreement ("MOAs") constitute the operative record for Rule 12 and Rule 56 purposes.

  iii.  **No Individual Right Under OSHA § 20(a)(5).** Defendants' contention that OSHA § 20(a)(5), 29 U.S.C. § 669(a)(5), confers no individual right to object to medical examination, immunization, or treatment is contrary to the statute's plain text, which provides that "nothing in the Act shall be deemed to authorize or require such measures for those who object on religious grounds."

  iv.  **Secretary-Only Limitation.** Defendants' claim that § 20(a)(5) limits only the Secretary of Health and Human Services is unsupported by the

statutory text, which contains no such limitation and operates as a substantive prohibition applicable to the Act's operation in workplaces.

v. **No Coercion.** Defendants' assertion that the challenged conduct was non-coercive is contradicted by the undisputed facts showing lockout, loss of wages, and termination pursuant to MOAs enforcing the NYC Vaccine Mandate.

vi. **Preemption Denied.** Defendants' denial of OSH Act preemption ignores 29 U.S.C. § 667(a) and controlling authority holding that, once OSHA has adopted a standard addressing a workplace hazard, state and local governments may not adopt or enforce a different occupational safety and health standard on the same issue absent a federally approved plan or variance.

vii. **No Private Right of Action.** Defendants' claim that Plaintiff lacks any private right of action under OSH Act §§ 11(c)(1) and 20(a)(5) misstates the law as applied to the rights asserted here and is unsupported by the cases cited by Defendants, which do not address the statutory rights at issue.

11. **Necessity of Dispositive Relief.**

Under Rule 11(c)(4), Rule 56, and the Court's inherent authority, deterrence, judicial integrity, and the interests of justice require striking Defendants' sanctionable filings, converting the posture to summary judgment, and entering judgment and declaratory relief in Plaintiff's favor as a matter of law.

a. **Declaratory Relief Properly Pleaded and Required.**

Declaratory relief was properly pleaded and is required to resolve the concrete and immediate controversy concerning (i) the scope of employees' statutory and constitutional rights to refuse medical treatment on religious grounds in the workplace, (ii) the preemptive effect of the OSH Act on local workplace safety mandates, and (iii) the legality of Defendants' enforcement of the NYC Vaccine Mandate through MOAs and terminations.

b. **Constitutional Rights and Statutory Protection**.

As a matter of law, all employees possess a constitutional right under the Free Exercise Clause and the substantive component of the Due Process Clause to refuse unwanted medical treatment. Those constitutional rights are made inalienable in the workplace and afforded heightened statutory protection by Congress through the OSH Act at 29 U.S.C. § 669(a)(5) (OSH Act § 20(a)(5)) and 29 U.S.C. § 660(c) (OSH Act § 11(c)(1)). These provisions were enacted by Congress, not promulgated by the Secretary of OSHA, and the Secretary has no authority to fine, sanction, or enforce employer compliance with §§ 11(c)(1) and 20(a)(5) through administrative penalties.

c. **Private Right of Action and Available Remedies**.

As a matter of law, Plaintiff has a private right of action under OSH Act §§ 11(c)(1) and 20(a)(5) to vindicate the statutory and constitutional rights violated here. This Court has authority to award injunctive relief, including reinstatement of all employees terminated pursuant to the MOAs identified at ECF No. 84-3 (Bates#402-404), and to enjoin Defendants and all regulated employers from

terminating employees who exercise rights protected by § 20(a)(5) in the future. The Court further has authority to award back pay and to order that the measure of compensatory and punitive damages be determined by a jury at a damages trial.

d. **OSH Act Preemption and Variance Requirement.**

As a matter of law, the NYC Vaccine Mandate constituted a workplace safety standard regulating an occupational hazard and therefore violated the OSH Act's preemption clause, 29 U.S.C. § 667(a), because it addressed the same subject matter covered by OSHA's respiratory standards and was imposed without seeking or obtaining a variance under 29 U.S.C. § 655(b)(6)(A). The Mandate's enforcement through employer MOAs and terminations was therefore unlawful.

e. **Conclusion.**

Applying these conclusions of law to the undisputed facts, Defendants' dispositive position is legally foreclosed. Declaratory and injunctive relief are warranted as a matter of law; summary judgment in Plaintiff's favor is appropriate; and damages issues shall proceed to a jury.

12. **MOAs Establish Civil Conspiracy**

The Court concludes, as a matter of law, that the Memoranda of Agreement ("MOAs") executed between Defendants constitute competent evidence of a civil conspiracy to deprive Plaintiff—and all similarly situated employees subject to those MOAs—of their constitutional and statutory rights, including the right to refuse unwanted medical treatment protected by the OSH Act § 20(a)(5), enforced through § 11(c), 42 U.S.C. § 1983, and common-law conspiracy principles.

a. The MOAs evidence:

(1) an agreement among Defendants;

(2) a shared objective to enforce a preempted municipal vaccine mandate; and

(3) overt acts taken in furtherance of that objective resulting in termination and deprivation of federal rights.See *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

13. **Defendants Were State Actors as a Matter of Law**

The Court concludes that Defendants were state actors as a matter of law for purposes of § 1983 liability. Defendants enforced a municipal public-health order through coercion, threat of fines, and mandatory compliance, thereby acting under color of state law.

a. Defendants further assumed a function that is traditionally and exclusively reserved to the State—the prevention and control of communicable disease—without lawful authority, rendering their conduct attributable to the State under both the coercion and public-function tests.

b. Accordingly, Defendants' enforcement of the City's preempted vaccine mandate constitutes state action subjecting them to liability under § 1983.

See *Blum v. Yaretsky*, 457 U.S. 991, 1004–11 (1982); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982); *West v. Atkins*, 487 U.S. 42, 54–56 (1988).

## V. JOINT AND SEVERAL LIABILITY OF DEFENDANTS AND COUNSEL

The Court finds, as a matter of law, that the Rule 11 violations and fraud on the Court identified herein were not isolated clerical errors or inadvertent misstatements, but were the

product of collective, coordinated advocacy decisions made by Defendants and their respective counsel of record. Each Defendant expressly adopted, authorized, and benefited from the legally unsupported arguments and factual misrepresentations advanced in Defendants' Motion to Dismiss and Joint Reply, and each counsel of record signed, submitted, or later advocated those filings within the meaning of Federal Rule of Civil Procedure 11(b).

Accordingly, pursuant to Federal Rule of Civil Procedure 11(c)(1) and (c)(4) and the Court's inherent authority, the Court finds that Defendants and their counsel are jointly and severally liable for the sanctions imposed herein, including attorneys' fees and costs, because the violations arose from a unified litigation strategy and because allocation of fault among Defendants and counsel would be impracticable and contrary to the deterrent purposes of Rule Without limiting the foregoing, the Court makes the following additional findings:

1. **Counsel for Allied Partners–Affiliated Defendants**

   Counsel of record for Allied Partners, Inc., Allied Partners Management LLC, and Allied Partners Residential Management LLC actively advanced and re-advanced the legally unsupported contentions concerning the absence of a private right of action under OSH Act §§ 11(c)(1) and 20(a)(5), misrepresented the statutory text of § 20(a)(5), and denied the existence of claims and relief plainly pleaded in the Fifth Amended Complaint.

2. **Counsel for Realty Advisory Board of Labor Relations, Inc.**

   Counsel of record adopted and relied upon the same misstatements of law and fact in the Joint Motion to Dismiss and Reply, including mischaracterizations of preemption under 29 U.S.C. § 667(a) and the legal status of the NYC Vaccine Mandate as a workplace safety standard.

3. **Counsel for SEIU Local 32BJ**

Counsel of record joined and advocated the challenged filings and failed to withdraw or correct the identified misrepresentations after service of the Rule 11 safe-harbor notice, thereby engaging in continued advocacy of sanctionable positions.

4. **Collective Responsibility**

Each counsel group had an independent obligation to conduct a reasonable inquiry into the law and the record and to refrain from presenting or later advocating contentions foreclosed by statute, precedent, and the undisputed factual record. Their failure to do so renders each Defendant and each counsel of record responsible for the full measure of sanctions imposed.

5. **Sanctions Allocation Clause (Highly Recommended for Appeal-Proofing)**

The Court expressly finds that joint-and-several liability is necessary to (i) ensure effective deterrence, (ii) prevent shifting of responsibility among Defendants and counsel, and (iii) avoid rewarding coordinated misconduct. Defendants and their counsel may resolve contribution or allocation issues among themselves, but such matters shall not delay or diminish Plaintiff's recovery of sanctioned amounts.

## VI. Class Certification and Order to Show Cause

a. **Classwide Issues Established as a Matter of Law.**

Based on the Court's Findings of Fact and Conclusions of Law, the claims asserted by Plaintiff present common questions of law and fact arising from uniform policies, Memoranda of Agreement, and enforcement mechanisms adopted and implemented by Defendants, including the imposition of the NYC Vaccine Mandate as a workplace safety standard and the termination or lockout of employees who exercised rights protected

under the Constitution and the Occupational Safety and Health Act. Liability issues are susceptible to classwide resolution, and adjudication on a representative basis will promote judicial economy and consistency of outcomes.

b. **Authority to Proceed by Order to Show Cause.**

This Court has authority to address class certification pursuant to Federal Rule of Civil Procedure 23 on its own initiative or upon motion, including by directing the parties to brief certification issues by order to show cause where the record demonstrates the existence of potentially certifiable class claims.

c. **Order to Show Cause**.

Accordingly, Defendants are hereby ORDERED TO SHOW CAUSE, within fifteen (15) days of the date of this Order, why Plaintiff should not be awarded class certification under Federal Rule of Civil Procedure 23, including certification under Rule 23(b)(2) for declaratory and injunctive relief and any other applicable subsection of Rule 23.

d. **Plaintiff's Response.**

Plaintiff shall file a response within fifteen (15) days after Defendants' submission addressing class definition, Rule 23(a) requirements, Rule 23(b) applicability, and appropriate classwide relief.

e. **Determination on the Papers**.

Upon completion of this briefing, the Court will decide the issue of class certification on the papers without oral argument, unless the Court determines that further proceedings are necessary.

**VI    Referral to the New York State Bar**

The Court concludes as a matter of law that the conduct underlying its finding of fraud on the

court raises substantial questions of professional responsibility warranting that this Order to be

served on the New York State Bar as required by the Code of Conduct for United States Judges,

Canon 3(b)(6)  See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *Schlaifer Nance &

Co. v. Estate of Warhol*, 194 F.3d 323, 336–38 (2d Cir. 1999).

**VII    Referral to the U.S. Department of Justice**

The Court further concludes as a matter of law that the record contains evidence

sufficient to warrant review for potential criminal liability arising from Defendants' coordinated

conduct, including conspiracy and knowing deprivation of Plaintiffs federally protected rights,

while the Allied Defendants received approximately $2 Million in federal Pandemic Paycheck

Protection Funding to preserve approximately 150 jobs and yet terminated Plaintiff. See 5th

Amend. Compl. Page 38, ¶170-173 and ECF#84-5, Bates#644-646  This Order shall be referred

to the U.S. Department of Justice for investigation as required under Code of Conduct for United

States Judges, Canon 3(b)(6). *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

**VIII    ORDERS**

ORDERED that Plaintiff's Motion is GRANTED as follows:

Accordingly, it is hereby ORDERED that:

1. **Rule 11 Sanctions Granted.** Plaintiff's Motion for Rule 11 Sanctions is GRANTED.

2. **Striking of Reply.** Defendants' Joint Reply to Plaintiff's Opposition to Defendants' Joint
   Motion to Dismiss (ECF 108) is STRICKEN IN ITS ENTIRETY and shall be deemed a
   nullity for all purposes.

3. **Conversion to Rule 56**. Pursuant to Rule 11(c)(4) and the Court's inherent authority, the Court CONVERTS the dispositive posture to Federal Rule of Civil Procedure 56 for purposes of sanctions and disposition.

4. **Summary Judgment as a Sanction**. Based on the undisputed record and as a non-monetary sanction necessary to deter repetition and restore the integrity of these proceedings, SUMMARY JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANTS.

5. **Declaratory Relief.** Plaintiff is awarded appropriate declaratory relief consistent with the Court's findings of fact and conclusions of law.

6. **Attorneys' Fees and Costs Awarded**. Pursuant to Rule 11(c)(4) and the Court's inherent authority, Defendants and their counsel are JOINTLY AND SEVERALLY LIABLE for Plaintiff's reasonable attorneys' fees and costs incurred as a direct result of Defendants' sanctionable conduct, including fees incurred in (a) responding to the Motion to Dismiss and Reply, (b) preparing and litigating the Rule 11 motion, and (c) seeking fees.

7. **Fee Application Procedure**.

a. **Motion Deadline**. Plaintiff shall file a Motion for Attorneys' Fees and Costs within 21 days of this Order.

b. **Required Showing**. The fee motion shall include:

i. A memorandum applying the lodestar method (reasonable hourly rates × reasonable hours), supported by contemporaneous time records;

ii. Declarations establishing the prevailing market rates in this District for comparable work and the reasonableness of counsel's rates;

iii. A causation nexus identifying fees and costs reasonably attributable to Defendants'

Rule 11 violations;

iv. Any requested enhancements or reductions with supporting authority; and

v. A proposed order.

c. **Opposition and Reply**. Defendants may file a response within 14 days after service of the fee motion; Plaintiff may reply within 7 days thereafter.

d. Standard. The Court will award fees and costs limited to what suffices to deter repetition and supported by the record, with explicit findings to facilitate appellate review.

8.  **Preclusion**. Defendants are PRECLUDED from re-asserting the arguments contained in ECF#108 in this action without prior leave of Court.

9.  **Reservation of Authority**. The Court RETAINS JURISDICTION to impose additional sanctions, including further non-monetary or monetary relief, should Defendants engage in additional sanctionable conduct.

10. **Fraud on the Court Established.** The Court expressly finds that Defendants, acting individually and in concert, engaged in conduct constituting fraud on the court. This finding forms an independent, sufficient, and alternative basis for the sanctions imposed herein and for the Court's exercise of its inherent authority. Defendants' misrepresentations of controlling law, concealment of governing federal statutory rights, submission of legally false arguments with knowledge of their falsity, and coordinated litigation conduct designed to obstruct the judicial process constitute a deliberate scheme to corrupt the adjudicative function of this Court. The Court's finding of fraud on the court is final for purposes of this Order.

11. **Retained Jurisdiction.** The Court expressly retains continuing jurisdiction to impose additional relief, sanctions, or remedial measures should further or continuing fraudulent conduct be established, whether in this action or related proceedings.

12. **Referral to New York State Bar.** The Court **ORDERS** that this Order, together with the relevant record, be referred to the New York State Bar disciplinary authorities for investigation and further action consistent with this Court's findings.

13. **Referral to U.S. Department of Justice.**  the Court ORDERS that this matter be referred to the U.S. Department of Justice for such investigation and action as it deems appropriate based on this Order. See *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

14. All other relief requested is reserved pending further order of the Court.


SO ORDERED.

Dated: _____


_____

MARY KAY VYSKOCIL

United States District Judge Southern District